UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

STEVEN L. CREA,

         *Defendant.*

Case No. 17-cr-089 (CS)

**Reply Memorandum In Support Of Motion For Judicial Recusal**

**Preliminary Statement**

    The defendant's motion for judicial recusal resulted from receiving the Court's Order of August 28, 2018, (Document 401), in which the Court stated that after reviewing a motion filed by the defense containing reference to AUSA David Kelley,

> That reference triggered a memory on my part that during my time in the Organized Crime Unit of the United States Attorney's Office, which lasted from about fall of 1989 to the middle of 1991, I was responsible for an investigation that involved alleged members of the Lucchese Family of La Cosa Nostra, which investigation was handed off to AUSA David Kelley upon my departure.

The investigation which the Court previously led became an indicted case at some point thereafter, *United States v. Anthony Baratta, et al.*, No. 92-Cr-529. This revelation led to additional disclosures and filings by the parties on the issue of recusal in this case. The Court has issued several Orders in connection with this matter granting limited disclosures about the Court's *ex parte* communications with the prosecution on this subject, the time in which the Court handled the *Baratta* investigation as the lead prosecutor, the general nature of the files contained therein, and if any of the defendants in this matter were named in the records contained in those files when the Court handled the case. *See* ECF Nos. 411, 471.

    The prosecution also filed opposition papers in response to the defenses motion for recusal. ECF No. 468. The prosecution largely misadvises the Court that the law requires the

defense to proffer facts showing "such a high degree of favoritism or antagonism as to make fair judgment impossible."[1] ECF No. 468 at 1. Further, it seeks the Court's reliance on the mistaken premise that the "motion ha[s] nothing to do with this Court, its conduct of this litigation, or anything in the Court's background that would reasonably bear on the Court's impartiality" and "the defendant's arguments for recusal are premised on inferences that are "remote, contingent, indirect or speculative." *Id.*

While the government cited, at numerous points within its opposition memorandum, the case of *United States v. Liteky,* 510 U.S. 540 (1994), as authority for a test of the level of favoritism or antagonism to be determined in this recusal motion, that is not the issue here. The facts and basis of recusal explored in the *Liteky* case are precisely **not** what this case is about. The factual bases for the recusal motions presented in *Liteky* were,

> The first motion was based on rulings and statements this same judge made, which allegedly displayed impatience, disregard, animosity toward the defense, during and after petitioner Bourgeois' 1983 bench trial on similar charges. The second motion was founded on the judge's admonishment of Bourgeois' counsel and co-defendants in front of the jury at the 1991 trial.

*Id* at 540.

The lower court judge in the *Liteky* case had sat at a bench trial and then on a jury trial of the petitioning defendants. The Court then discussed in great detail the concept of "extra judicial source" for the basis for recusal as it held that,

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.,* 384 U.S. at 583. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion) they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved.

---

[1] Under § 455(a), a much lesser showing is required, as a judge must recuse himself where his "impartiality might reasonably be questioned.

The Court is well aware of the facts underlying the present motion for recusal, which are based upon the Court having previously served as an Assistant United States Attorney on related investigations and against the same charged enterprise, and with prior access to information accusing several defendants with committing criminal acts in connection with that same enterprise. This Court's knowledge has nothing to do with the facts contemplated in *Liteky*. These misstatements of fact and law warrant little discussion, as they are easily refuted by defendant's initial moving papers. Rather, this reply shall serve to address the facts that warrant consideration.[2]

### The Court's Recusal Is Required Under 28 U.S.C. § 455 (a)[3]

According to the prosecution's evidentiary charts, which were admitted at trials in other cases, Anthony Baratta held a position on a three-member panel that was alleged to be upper hierarchy of the Lucchese family in 1991, at the exact time this Court led its investigation of the same and continuing enterprise currently charged, that is, the Lucchese LCN. Of significance, the prosecution's evidentiary charts alleged that Steven L. Crea was also a member of the three-member panel that included Baratta, rendering it almost a certainty that any investigation into Baratta, in which he was a lead "target" would certainly include mention of Crea. It is also no coincidence that the prosecution's opposition papers fail to address the prosecution's chart

---

[2] While the prosecution takes issue with an expert affidavit being filed in connection with the defendant's motion, ECF No. 468, at p. 7, 10, it is noteworthy to mention that the discussion contained in the affidavit was "adopted in its entirety" by counsel and "[was] not restated" for practical reasons, like not having the court reread the same points twice. Therefore, the record, as more accurately represented, allows the Court to accept the discussion set forth in the affidavit as an expert submission, or as the arguments of counsel that were explicitly adopted in support of the motion for recusal.

[3] It is the court's independent duty to also examine whether recusal is warrant under 28 U.S.C. § 455 (b)

identified in the defendant's moving papers, or the indisputable factual overlap between Baratta and Crea during the relevant timeframe.

Furthermore, while the prosecution dedicates little effort to address the evidence contained in the *Barratta* case that identifies Crea and several codefendants charged in this case, it acknowledges FBI criminal investigation reports in the *Barratta* investigative file that do identify alleged criminal activities of Baratta along with Steven L. Crea, Dominick Truscello and Joseph Dinapoli. In this regard, however, the prosecution summarily claims that this Court probably had no knowledge about Crea in connection with the investigation, because it has found no reports in the file that identify Crea dated at a time before the District Court transferred the investigation to AUSA Kelly. Of course, this implies that those reports would be the only source of information available to the lead investigator, and fails to appreciate that Crea was under investigation by the southern district during this exact timeframe. *See infra* (explaining that other prosecutors from the Southern District previously admitted, "There was one investigation open in 1991 that [w]as [ ]closed as of 2002)".

'.

Nonetheless, the prosecution does admit that there are FBI reports identifying the alleged criminal activities of the two co-defendants of Crea charged in this case, which are dated when this Court actually led the investigation. While the prosecution speculates that it *believes* the district court probably never had knowledge of those reports, it does not offer any reason why that would be the case. In fact, the idea that the lead investigator would shield herself from FBI reports identifying the criminal activities of Baratta, which just happen to also identify activities of these co-defendants, is an absurd suggestion when the investigation was of the "Lucchese Family" enterprise and Baratta was the key "target" of the investigation. Of course, the

4

prosecution's suggestion crumbles when considering its current allegations that Crea and his two co-defendants are longstanding members of the same enterprise investigated in *Baratta*, which again, according to the government remains the same continuing "Lucchese Family" enterprise that is has alleged here. Notwithstanding the prosecution's *belief* as to what may have occurred, the only critical point is that this Court has stated that it does not remember anything about the case.[4] Therefore, there is no basis to support the prosecution's *belief* that the *Baratta* investigation is an attenuated matter, nor can it guarantee that other documents filed and information presented at trial will not later create more cause warranting recusal. In fact, other discovery provided by the government dates back to the early '90s and trial prosecutes have already identified an overlap of several alleged co-conspirators (i.e., Vittorio Amuso, etc.) that were investigated by the Court in *Baratta* in which the trial prosecution also intend to introduce evidence about in Crea's trial.[5]

What is most troubling about this case, and which further indicates that recusal is warranted, is that neither the Court nor the defendants can rely on the prosecution to be fully transparent in disclosing facts material to the issues being litigated before this Court. During the pendency of this reply motion, and in fact received only today as a result of an independent request for the production of archived transcripts that the defense thought may bear relevance to this issue, it was discovered that the United States Attorney Office (S.D.N.Y.) previously admitted that there were multiple prior investigations of Steven L. Crea and Dominick Truscello

---

[4] While not dispositive, the court should acknowledge the practical effect about this structural legal issue, in that it could very well lead to additional litigation if the judge's memory is again jogged and it will already likely require extensive resources on both sides if the court continues to sit. Based strictly on the undersigned's experience, it would be highly unlikely that subsequent investigation and litigation would not occur on this issue if this case were ever to reach adversarial post-conviction litigation.

[5] Under § 455(b)(1) recusal is also required if the sitting court has "personal knowledge of disputed evidentiary facts concerning the proceeding."

conducted by prosecutors in the S.D.N.Y. and one that was opened in 1991. *See*, Tr. at 5-7, *United States v. Crea*, et al., 02-cr-845 (S.D.N.Y., September 20, 2002). Obviously, the office's knowledge of Steven L. Crea and the investigation it opened in 1991 against him, along with its leadership chart of 1991 identifying him and Barratta, did not just mysteriously appear nor was it an issue not known to the prosecution before this Court's inquiry. Rather, the potential for conflict was always known to the office, including that there were investigations of Crea and his codefendants during the time in which this Court still led the Organized Crime Unit, or resulting from the work (i.e., *Baratta*, etc.) performed by this Court in Organized Crime Unit immediately preceding 1991.

Defendant does not suggest, however, this is an indictment of the integrity of the entire office. Point in fact, the last time this issue arose, trial prosecutors were fully transparent with the Court at the outset of its assignment, and it disclosed to the Honorable Denise L. Cote (U.S.D.J., S.D.N.Y.) all of the operative facts at initial proceedings to ensure that the Court could make a timely and full investigation into any potential and similar conflicts it has held in relation to those now discussed.

Of significance, with even less information and no factual overlap between its work in the United States Attorney's Office (S.D.N.Y.) and that case involving Crea and his codefendant Dom Truscello, the Court immediately decided to recuse itself from the case due to a potential appearance of impartiality. In that case, Judge Cote found recusal was warranted even though her work as a prosecutor was "unrelated" to Crea's case, and there, like here, she had "no personal recollection of ever hearing Mr. Crea's or Mr. Truscello's name before." Exhibit A, Tr. at 9. Judge Cote explained, "It's not saying I didn't hear it, I just have no personal recollection at all, no memory or recollection." *Id.*

Preceding that decision, the prosecutors voluntarily disclosed to Judge Cote the following facts:

> **MR. KIM:** Your Honor, there is one issue that your Honor had asked us to look into at the last conference, that was whether this investigation was ongoing or active at the time your Honor was the Chief of the Criminal Division of our office.
>
> I have confirmed that this investigation that resulted in the indictment before your Honor was commenced long after your Honor's tenure at our office. There was, however, I have run checks under the names of the defendants through our offices records to provide your Honor with a full disclosure of what may have been in our office. We have learned that there was one investigation of Steven Crea and Dominic Truscello, that arguably could be related to the subject matter that is part of this indictment, that was commenced December 14th of 1994, so that also post dates your Honor's tenure at our office.
>
> There is, however, there was however one other investigation, that came up under the name Steven Crea. It didn't involve, to the best of our knowledge, anything to do with the conduct in this indictment, but was an investigation that had been opened of that defendant but was closed, was subsequently closed and that is also true for Dominic Truscello. So, the short answer is --
>
> **THE COURT:** I am not sure I understand what you just said with respect to the last investigation that was opened and closed. Are you saying that was also after January of '94?
>
> **MR. KIM:** No, your Honor. There was one investigation open in 1991 that has been closed, which is unrelated to these charges before your Honor. So the common factor is it was an investigation of this defendant, but unrelated to the conduct charged in this indictment. That is true for both defendants, your Honor.
>
> **THE COURT:** Okay. Mr. Kim, just so I understand the facts, when you say that's true for both these defendants, what are you saying? There is one investigation?
>
> **MR. KIM:** There is one investigation of Steven Crea that was opened and closed, unrelated to your Honor, that preceded January 1994. There are other investigations again, I believe three investigations of Dominic Truscello, again unrelated to this case that was opened and closed and that also predated your Honor's departure from the office. Again, those were unrelated to this indictment.

*Id.* at 5-7.

Based on the above facts alone, the Court decided that recusal was warranted, and there was "no reason for me to keep a case if there is any appearance in any way that it would prejudice anyone." *Id.* at 8. In a rather short but detailed analysis, Judge Cote explained,

> Let me go into more detail as to what lines I have drawn in the past and applied,

and obviously if counsel wish an opportunity to address these issues, they should do so promptly and we will set a schedule for that, that is address them in further detail. Because it is important that you know who your judge is, because it's going to effect scheduling issues.

I left the office, I was in the office for the first time, I believe, April of '77 until, I think, January of '85, and then I returned to the office in December of '91 and left in January of '94.

If there was an investigation of one of these defendants that is the basis for this criminal indictment I would recuse myself. If there was an investigation open in the office--well, I should say, I am sorry. I have to start again.

I was never in the Organized Crime Unit during my first period in the office. I was a line assistant and at some point a Deputy Chief of the Criminal Division. I have never had to parse out what would require my recusal from that first period of time in the office because nothing has ever gone back that far.

With respect to the second period of time in the office, I was Chief of the Criminal Division, and as I described last time, I would recuse myself and have recused myself if there was any investigation in the office, civil or criminal, during the time I was there as Chief of the Criminal Division, that was active during that period of time that relates to this indictment or this prosecution.

Now, it sounds like, based on what the government is representing, that anything that would have been there during that '91 to '94 period closed, and that this indictment stems from a different and separate investigation. However, if the government at this trial plans to use evidence developed from that earlier investigation, I believe I would also recuse myself.

There are plenty of judges in this courthouse. There is plenty of work for all of us. There is no reason for me to keep a case if there is any appearance in any way that it would prejudice anyone. I am also sensitive to the fact that the defendants don't have a right to learn about the substance of earlier closed investigations and would not necessarily have a right to learn about that.

I think that the government and the defense counsel should discuss these matters in the first instance, and if there is a need based on those discussions to further pursue these issues before me, we can talk about how that is appropriate. It may be in the first instance that the government is going to have to make an ex parte submission to me, and I will make a judgment based on that, and that may resolve the issue. It may be that we need to do more than that, but we will take this one step at a time. But I would like this resolved sooner rather than later so that if this case is going to be reassigned, some other judge can set the schedule for you.

I should tell you, and I think it is clear from my comments, just to make it explicit, I have no personal recollection of ever hearing Mr. Crea's or Mr. Truscello's name before. It's not saying I didn't hear it, I just have no personal recollection at all, no memory or recollection.

Secondly, it sounds like those prior investigations that may have spanned the critical period between '91 and '94 never resulted in official charging instruments,

because the defendants would know about it if it did and I expect the government would have mentioned it if they did.

I don't think I am going to say more at this point. I don't think there is a need for me to say more about what lines I might draw, because I just don't know what the facts are.

*Id.* at 8-9.

As Judge Cote's decision for recusal illustrates, this motion is a serious one and does not reflect the type of "Hail Mary" request by a defendant seeking to engage in "judge-shopping" as suggested by the prosecution's opposition papers. In fact the prosecution's repeated suggestions on that score undermines the integrity of the Court, and implies its desire to resolve this issue without a full exploration of what exists in *Baratta* and other investigations preceding and leading therefrom. Of course, Crea did not create this legal issue, the Court volunteered this information about *Baratta*, which the prosecution should have alerted the Court about long ago,[6] and no prior request for recusal was made by Crea before this information was revealed.

In these circumstances, there are only two interests that must be weighed, neither of which includes the prosecution's *beliefs* or its suggestion that the Court's prior time and consideration on the case should militate in favor of not recusing. The prosecution's suggestion on this score actually militates in favor of recusal. While the prosecution claims this as such, it leaves out that this Court had not previously sat on Crea's request for bail, it has not decided any of his still unfiled pretrial motions, and the trial is not set to occur until March 2019.[7]

---

[6] Conveniently, the prosecution does not answer if it was previously aware of this Court's prior role as a prosecutor in investigations related to the charged enterprise.

[7] The prosecution only furthers the impression discussed in Crea's moving papers, that a observer might question if the prosecution is forum shopping, as it continues to implicitly deploy the improper idea, that the Courts in White Plains have some type of vested interest in sitting on this case. *See also* ECF No. 6 (prosecution arguing that one of the reasons a change of venue should not occur is because "[w]hile much of the investigation is not yet public, judges in the White Plains Courthouse have already devoted considerable energy to the case, having reviewed multiple warrant applications and other requests for investigative orders.").

As a matter of law, the court must consider the interest of the public to maintain a judiciary that is independent from the prosecution and the need to preserve the judiciary's integrity and appearance of fairness. *See, e.g.,* 28 U.S.C. § 455(a); *Offutt v. United States*, 384 U.S. 11, 14 (1954)). In addition, the Court must consider the defendant's constitutional right to a fair trial which encompasses a fair tribunal. Even the appearance of partiality is a factor in these matters. *See, e.g., Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980) ("We have employed the same principle in a variety of settings, demonstrating the powerful and independent constitutional interest in fair adjudicative procedure.").

Indeed, the requirement of neutrality "safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision making process." *Marshall*, 446 U.S. at 251; *see also Offutt v. United States*, 348 U.S. 11, 14 (1954). And the guiding consideration, "is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 870 (1988).

Little weight must also be afforded to the prosecution's misplaced reliance on *United States v. Sanchez*, 623 Fed. Appx. 35, 42 (2d Cir. 2015) (summary order). In *Sanchez*, the issue of recusal was reviewed for the first time on appeal, as there was "no recusal motion [ ] made below." The Second Circuit's "review [was] limited to plain error," and its review was limited only to U.S.C. § 455(b)(3). Indeed, the Government exploited this fact in that proceeding, noting "[i]n order to show plain error, Sanchez must show that Judge Seibel's participation in the disposition of the case was an obvious or clear error and that it affected his substantial rights." Gov't Brief at 62-63, *United States v. Sanchez*, 13-3979 (Docket No. 171) (2d Cir., 4/13/2015).

The prosecution not only relied on the fact that Sanchez failed to raise the matter below, but also on Sanchez's failure to allege any connection whatsoever between the Court's prior role in prosecuting other members of the Latin Kings and his case to warrant recusal under § 455(b)(3):

> To begin with, Sanchez did not alert Judge Seibel to any potential conflict and, to date, Sanchez has not presented any evidence that Judge Seibel participated in this case in any fashion when she was at the U.S. Attorney's Office. In the absence of any evidence that Judge Seibel directly participated in this matter or expressed an opinion concerning its merits, there is no basis for this Court to find that Judge Seibel committed plain error in failing to recuse herself sua sponte.
>
> ***
>
> In pressing a contrary conclusion, Sanchez argues that Judge Seibel had "involvement in Latin King prosecutions during her previous employment with the United States Attorney's Office." (Sanchez Br. 45). But the only basis for this claim Sanchez cites is the notation in this Court's summary order in *United States v. Rivera*, 60 F. App'x 854 (2003), that then-Assistant United States Attorney Seibel was "on the brief" for the United States. (Sanchez Br. 46). The Newburgh Latin Kings prosecuted in the present case, however, were not involved at all in *Rivera*, which involved members of a Latin Kings gang in Yonkers, New York. These facts fall thus far short of showing the requisite "direct[ ] participat[ion]" by Judge Seibel in the present prosecution of the Newburgh Latin Kings. The attenuated relationship between that prosecution and the present one provides no basis for a finding of plain error here.

Gov't Brief at 62-63, *United States v. Sanchez*, 13-3979 (Docket No. 171) (2d Cir., 4/13/2015).

Unlike *Sanchez,* recusal is sought here under largely based under § 28 U.S.C. 455 (a) and there are numerous facts, which do not depend on speculation as to what relationship exists between the matters being discussed. Further, unlike *Sanchez*, here there are numerous specific reasons militating in favor of recusal, including, but not limited to: (1) what prosecutors told to Judge Cote about its prior investigations into Crea and Truscello, (2) that Judge Cote, in deciding to recuse herself, observed that her lack of knowledge and participation in those investigations were irrelevant to the appearance of fairness; (3) FBI reports identifying criminal activity of Crea and two other co-defendants in the *Baratta* file, an investigation that was led by this Court; (4) evidentiary charts created by the prosecution identifying Crea and Baratta as leaders of the charged enterprise in 1991; (5) investigations into the enterprise and certain charged defendants

11

(including unindicted co-conspirators) during times in which this Court held a leadership role in the Organized Crime Unit, and /or investigations that later resulted therefrom; (6) an overlap of eight years between the conduct charged in this case and this Court's tenure in the United States Attorney's Office in White Plains, including service as Deputy Chief; and (7) the Court's admission in its *ex parte* email communications with trial prosecutors that the circumstances might actually require its recusal.

In the end, the most appropriate and well-reasoned guide for determining recusal issues of this nature are those long expressed and followed by other sitting Courts in this very district, which have dealt with this same exact issue. As fully detailed above, Judge Cote has always followed a "bright line rule," taking no chances when there is an overlap between her prior work as a prosecutor and the cases she presides on. This was done not just in Crea's prior case, but also in other matters before her court. And it was not the chosen course because Judge Cote had knowledge of the defendants or worked on the investigations at hand, but because the court has an absolute duty to protect the "appearance of the court" and the constitutional rights of the defendant to a fair tribunal.

In regard to the court's required sensitivity to those interests, in the matter of *United States v. Louis Vallario, et al*, 02 Cr. 743 (DLC), (Exhibit "B"), Judge Cote best explained:

> THE COURT: I am asking these questions because I was in the U.S. Attorney's office for the Southern District of New York between December of '91 and January of '94 and **I will not preside over any case that was active in the office during the time that I was in the office, whether it was in the civil or criminal division, whether or not I have personal knowledge of the case.**
> (Emphasis supplied)

Tr. 5.

It should be reiterated that there is a balance between the duty to decide a case and the duty to disqualify. Before 1974, the court of appeals applied a judicial gloss to § 455 that created

a duty to sit, whereby judges resolved close questions against disqualification. *See Laird v. Tatum*, 409 U.S. 824, 837 (1972). However, the 1974 amendments to § 455 shifted the balance by requiring disqualification whenever a judge's impartiality might reasonably be questioned, and the legislative history made clear that in revising the statute, Congress sought to end the duty to sit. *See, e.g., Judicial Disqualification: An Analysis of Federal Law* (2nd Ed. Federal Judicial Center 2010). Close questions should be decided in favor of disqualification.

In apparent compliance with the legislative amendment, Judge Cote will not preside over any case that was active in her office during the time she was there, both for criminal and civil cases, and whether or not she had personal knowledge of the case. *See Exhibits* A-B. It is also for this reason that this Court *sua sponte* raised this recusal issue, and that the defense must insist on granting recusal given these facts, which clearly establish that this Court's impartiality might be questioned from the perspective of a reasonable person.

WHEREFORE, it is respectfully requested that based upon the foregoing, that the Court disqualify itself from this proceeding in which the Court's impartiality might reasonably be questioned.

Dated: October 17, 2018

Robert Franklin, Esq.
ROBERT S. FRANKLIN, P.A.
2465 Mercer Avenue, Suite 301
West Palm Beach, FL 33401
(561) 775-7000
rfranklinlaw@gmail.com