

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 18, 2018

**BY ECF & HAND DELIVERY**
Honorable Cathy Seibel
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

      Re:   *United States* v. *Steven Crea Sr.*, 17 Cr. 89 (CS)

Dear Judge Seibel:

      The Government respectfully writes to set forth its position concerning potential conflicts arising from defense counsel Anthony DiPietro's prior representation of defendant Paul Cassano, a/k/a "Paulie Roastbeef," and his present representation, in the same matter, of Steven Crea Sr., a/k/a "Steven L. Crea," (hereinafter, "Crea"). For the reasons set forth below, the Government requests that the Court hold a hearing before further proceedings in this case so that the Court can determine whether Crea wishes to waive any objections to or conflicts arising from Mr. DiPietro's prior representation of Cassano.

      A.   *United States v. Steven Crea Sr.*

      On March 5, 2017, a grand jury in this District returned Indictment 17 Cr. 89, charging Christopher Londonio and Terrance Caldwell in multiple counts, including participating in a conspiracy to commit racketeering, murder in aid of racketeering, conspiracy to distribute controlled substances, and firearms offenses. On May 24, 2017, a Superseding Indictment (S1 17 Cr. 89) was filed that charged Crea, among others, with multiple counts including conspiracy to commit racketeering, murder in aid of racketeering, attempted murder in aid of racketeering and firearms offenses. On September 13, 2017, the S3 Indictment was returned, but contained no substantive changes as to Crea. The trial against Crea and the other defendants charged with murder offenses is scheduled for March 2019.

      Count Five of the S3 Indictment charged Crea, his son Steven Crea Jr. (a/k/a "Steven D. Crea") (hereinafter, "Crea Jr."), Cassano, and Vincent Bruno with the attempted murder of a Bonanno Crime Family Associate in or about late 2012. Cassano and Bruno have both pleaded guilty to charges encompassing the incident charged in Count Five. The charges against Crea and Crea Jr. are pending.

Hon. Cathy Seibel
October 15, 2018
Page 2 of 6

Since his indictment in this case, Crea has been represented by a number of different attorneys. He was initially represented by Paul A. Victor, Esq. He subsequently retained Howard Greenberg, Esq., Jeffrey Lichtman, Esq. and Jeffrey Einhorn, Esq., and, most recently, Robert Franklin, Esq. and Valentin Rodriguez, Esq. Earlier during the pendency of the case, Franklin and Rodriguez represented Crea Jr. At a *Curcio* hearing, both Crea and Crea Jr. waived any potential conflicts of interest arising from Franklin and Rodriguez's prior representation of Crea Jr.

The Government recently learned that Anthony DiPietro, Esq. has now joined Crea's defense team as well. The scope of Mr. DiPietro's representation of Crea, however, is unclear. The Government learned of Mr. DiPietro's addition to Crea's defense team after attempting to serve a trial subpoena for Cassano to testify at the trial against co-defendants Joseph Datello, Carmine Garcia, and Vincent Bruno, previously scheduled for October 1, 2018. When the Government served the subpoena on Mr. DiPietro and Mr. Mari, counsel of record for Cassano, Mr. DiPietro responded by email, in sum and substance, that he no longer represented DiPietro and was "providing assistance to Robert Franklin and Val Rodriguez in their representation of Steven L. Crea." To date, Mr. DiPietro has not filed a notice of appearance on Crea's behalf, nor withdrawn as counsel of record for Cassano.

The Government has conferred with Matthew Mari, Esq., counsel for Paul Cassano, regarding Cassano's position on Mr. DiPietro's representation of Crea. The Government advised Mr. Mari of the potential conflict, including the possibility that Cassano may be called as a witness at the trial of Crea and his co-defendants. After consultation with his client, Mr. Mari reported to the Government that Cassano does not object to Mr. DiPietro's representation of Crea and consents to the use of any confidential information he imparted to Mr. DiPietro in Mr. DiPietro's representation of Crea.

  **B.**  **Discussion**

    1.  **The *Curcio* Inquiry**

The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation. See United States v. Cain, 671 F.3d 271, 293 (2d Cir. 2012). To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to initiate an inquiry to determine the precise nature of the conflict. United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). Because the Sixth Amendment guarantees not only the right to an attorney of undivided loyalty but also, with certain exceptions, to an attorney of one's own choosing, where those rights conflict the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation. Cain, 671 F.3d at 293 (citing Curcio, 694 F.2d at 24-25). Nonetheless, because the Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," Wheat v. United States, 486 U.S.

Hon. Cathy Seibel
October 15, 2018
Page 3 of 6

153, 160 (1988), "there exists a narrow class of so-called per se conflicts that are not susceptible to waiver." Cain, 671 F.3d at 293.

In conducting an inquiry regarding a conflict, a court must first "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." Levy, 25 F.3d at 153. As the Second Circuit recently explained,

> In satisfying its inquiry obligation, the district court may rely on the representations of counsel as to his interest in the case and how any potential conflict might be cured. If the court is satisfied at the inquiry stage that there is no actual conflict or potential for one to develop, its duty ceases. Where the court determines that an actual or potential conflict exists but that it would not fundamentally impair the lawyer's representation, the district court should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in Curcio. Finally, if the initial inquiry establishes that the conflict is such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation, the district court must immediately disqualify him.

Cain, 671 F.3d at 293-94.

The Second Circuit has emphasized that the class of cases in which an attorney conflict is truly unwaivable is a "very narrow" one, United States v. Perez, 325 F.3d 115, 126 (2d Cir. 2003). Nonetheless, because the rights of the defendant and the need to maintain the appearance of fairness demand that any necessary inquiry into possible conflicts of interest occur "sooner rather than later," Rogers, 209 F.3d at 146, the district court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163.

As noted, where the district court concludes that an actual or potential conflict exists but that the conflict is not "such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," Cain, 672 F.3d at 294, the conflict is said to be waivable. Conflicts "such as attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." United States v. Perez, 325 F.3d 115, 127. But, because a defendant who chooses to waive his right to conflict-free counsel gives up important rights -- and, in certain cases, may be required to "abandon a particular defense or line of questioning," id. -- the Second Circuit has prescribed in detail what procedures must be followed in a Curcio proceeding to effectuate the waiver:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

Perez, 325 F.3d at 127.

### 2. The Conflict

Under New York's Rules of Professional Conduct, a lawyer has certain duties with respect to confidentiality and conflicts of interest that continue even after his representation of a client has ceased. Absent a waiver by the former client, a lawyer is prohibited from representing another person in "the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." N.Y. Rules of Prof'l Cond. 1.9(a). Moreover, "a lawyer who has previously represented a client in a matter," is prohibited from "us[ing] confidential information of the former client . . . to the disadvantage of the former client, exepct as [the Rules of Professional Responsibility] would permit or require with respect to a current client." N.Y. Rules of Prof'l Cond. 1.9(c)(1).

There can be no dispute that a potential conflict of interest exists in this case. If, for example, Mr. DiPietro learned information through their representation of Cassano that, while detrimental to Cassano, might give rise to a fruitful defense for Crea, his obligation to advocate diligently on behalf of Crea pursuant to Rule of Professional Conduct 1.3(a) would conflict with his ongoing duty of confidentiality to his former client Cassano under Rule 1.9. And perhaps more critically, if Cassano were subpoenaed to testify at the trial of Crea and his co-defendants, Mr. DiPietro would be precluded from using any information he learned during his representation of Cassano to cross-examine him. Thus, there is a real possibility that the "potential" conflict of interest here transforms into an "actual" one.

Nonetheless, the conflict is likely waiveable. While the district court has broad authority to find a conflict unwaivable "given the difficulties . . . [and] the uncertainties involved where the conflict has yet to fully materialize," it remains the case that "the class of cases in which an attorney conflict is truly unwaivable is a very narrow one." Cain, 671 F.3d at 294. Indeed, the Second Circuit has emphasized that, without more, even an attorney's *simultaneous* representation of two or more defendants charged in the same case does not give rise to an unwaivable conflict. Perez, 325 F.3d at 127.

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to

> what he must forgo; he can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel. In the multiple representation situation, the defendant can be advised by independent counsel of the dangers of such matters as one defendant's cooperating with the government, and make a knowing and intelligent decision that he wishes to continue to be represented by his attorney despite the attorney's representation of another accused.

Id. Where such procedures are followed successfully, and the defendant is fully informed of the dangers inherent in simultaneous representation, the client's wishes should generally be respected absent some indication that the conflict is so serious "that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." Cain, 672 F.3d at 294.

The Second Circuit's conclusion that a defendant may knowingly and intelligently waive the conflict presented by an attorney's *simultaneous* representation of co-defendants suggests, *a fortiori*, that the conflict at issue here can be waived. Indeed, Cassano has represented, through counsel, that he does not object to Mr. DiPietro's representation of Crea and that he will release Mr. DiPietro from his duty of loyalty and consent to the use of any privileged and/or confidential information, in so far as may be required for him to zealously advocate on behalf of Crea. Moreover, Crea is represented by not just Mr. DiPietro, but two additional attorneys who were wholly uninvolved in Mr. DiPietro's representation of Cassano. Therefore, even if Cassano were called at trial, Crea is represented by independent counsel who could cross-examine Cassano freely. Accordingly, as things presently stand, a Curcio inquiry is an appropriate and permissible means of addressing the potential conflict.

---

*Handwritten annotations by the Court:*

A *Curcio* hearing as to Mr. Crea will be held on 11/1/18 at 10 am.

It seems to the Court that Mr. Cassano and his counsel should also be present because Mr. Cassano is apparently being asked to waive important rights. The Government shall advise Mr. Mari of the proceeding. If producing Mr. Cassano in person is not practical, the Government should arrange for him to participate by phone.

The Government shall (and Mr. Cassano's or Mr. Crea's counsel may) propose questions to be put to Mr. Cassano. Mr. Crea's counsel may also propose questions for Mr. Crea.

In addition, the Court may take up the recusal motion after the *Curcio* hearing.

SO ORDERED.

*/s/ Cathy Seibel*
CATHY SEIBEL, U.S.D.J.   10/22/18

Hon. Cathy Seibel
October 15, 2018
Page 6 of 6

### D. Conclusion.

For the reasons stated above, the Government respectfully requests that the Court hold a hearing before further proceedings in this case. Enclosed are a set of proposed questions to be posed to Crea regarding the conflict of interest discussed herein.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By: /s/_____
Scott Hartman / Hagan Scotten / Jacqueline Kelly
Assistant United States Attorneys
Tel.: (212) 637-2357/ 2410/ 2456

Enclosure

cc: Robert Franklin, Esq.
 Val Rodriguez, Esq.
 Anthony DiPietro, Esq.
 Matthew Mari, Esq

**Proposed *Curcio* Examination**
**United States v. Steven Crea Sr., 17 Cr. 89 (CS)**

A.  **Introductory Questions To Establish Competence**

   Age

   Education

   Current medications

   Alcohol, drugs, medications within past 24 hours

   Is anything interfering with your ability to understand what is happening here today?

B.  **Questions Regarding Potential Conflict to Be Put to Crea**

   1. Are you satisfied with the services of Mr. DiPietro thus far in the case?

   2. Are you aware that Mr. DiPietro previously represented your co-defendant, Paul Cassano, a/k/a "Paulie Roastbeef," in this case?

   3. How long have you been aware of this issue? Have you discussed this issue with Mr. Franklin and Mr. Rodriguez? Have you discussed it with Mr. DiPietro?

   4. Do you understand that, even if Paul Cassano waives his right to keep as confidential the information that he conveyed to Mr. DiPietro when he represented him, in some cases, Mr. DiPietro may be motivated or required to put Cassano's interests before yours?

   5. Specifically, do you understand that there may be some defenses that Mr. DiPietro may be unable or reluctant to pursue on your behalf because of the fact that he previously represented Cassano?

   6. Do you also understand that if Cassano were to become a witness for the Government in this case, and if he were to testify against you, Mr. DiPietro may be unable or reluctant to ask questions on cross-examination that could be damaging to his credibility and favorable to your defense? And that Mr. DiPietro may be unable to reluctant to provide information to Mr. Franklin and Mr. Rodriguez that may aid in their cross-examination of Cassano?

   7. Do you understand that, if you were convicted in this case, Mr. DiPietro may be reluctant or unable to make certain arguments about your role in the Luchese Family or your alleged involvement in particular conduct, because making those arguments might harm Cassano's legal position?

1

8. Do you understand that the greatest danger to you is that there may be a way in which Mr. DiPietro's representation of you will be impaired by his previous representation of Cassano that is not currently foreseeable?

9. Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

C. **Questions to Be Put to Crea Regarding the Right to Conflict-Free Representation**

10. Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests? In other words, do you understand that you are entitled to attorneys who have only your interests in mind, and not the interests of any other client?

11. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

12. Have you consulted with Mr. DiPietro about the dangers to you of this potential conflict of interest?

13. Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

14. Have you also consulted with Mr. Franklin and Mr. Rodriguez, your counsel of record, about the conflict or potential conflict of interest that I have described to you today? Has counsel fully advised you about the situation? Do you wish to receive additional time to consult with independent counsel?

15. Is there anything that I have said that you wish to have explained further?