UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                       :

UNITED STATES OF AMERICA

                                       :

             -v.-                           S18 17 Cr. 89 (CS)

                                       :

MATTHEW MADONNA, *et al.*,

                                       :

                     Defendants.

                                       :

-------------------------------------------------------------x

## <u>GOVERNMENT'S REQUESTS TO CHARGE</u>

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Celia V. Cohen
Hagan Scotten
Alexandra N. Rothman
Assistant United States Attorneys
     - *Of Counsel* –

## TABLE OF CONTENTS

**Request No.**                                                                                    **Page**

1.   General Requests                                                                          5

2.   Summary of Indictment                                                                  7

3.   "Unlawfully," "Intentionally," and "Knowingly"                             9

4.   Law of Conspiracy                                                                       10

5.   Count One: Racketeering Conspiracy—General Instructions          12

6.   Count One: Racketeering Conspiracy—Elements                          13

7.   Count One: Racketeering Conspiracy—First Element  (Existence of the Enterprise)  14

8.   Count One: Racketeering Conspiracy—Second Element  (Effect on Interstate Commerce)
      15

9.   Count One: Racketeering Conspiracy—Third Element  (Association with the Enterprise)
      16

10.  Count One: Racketeering Conspiracy—Fourth Element  (Agreement to Commit a Pattern
      of Racketeering)                                                                        17

11.  Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
      Racketeering Predicates—Generally                                            21

12.  Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
      Racketeering Predicates—Aiding & Abetting Under New York Law    23

13.  Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
      Racketeering Predicates—Murder Under New York Law                  24

14.  Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
      Racketeering Predicates—Robbery Under New York Law                 25

15.  Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
      Racketeering Predicates—Extortion Under New York Law               26

16.  Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
      Racketeering Predicates—Gambling Under New York & New Jersey Law    27

17.  Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
      Racketeering Predicates—Attempt and Aiding & Abetting Under Federal Law    30

18. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Extortionate Credit Transactions                    32

19. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Mail & Wire Fraud                    35

20. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Witness Tampering                    41

21. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Witness Retaliation                    43

22. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Hobbs Act Robbery & Extortion                    44

23. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Gambling                    48

24. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Trafficking in Contraband Cigarettes                    51

25. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Money Laundering                    53

26. Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—Racketeering Predicates—Distribution of Controlled Substances                    55

27. Count Two: Conspiracy to Murder in Aid of Racketeering—Elements                    59

28. Count Two: Conspiracy to Murder in Aid of Racketeering— Second Element (Murder Conspiracy)                    60

29. Count Two: Conspiracy to Murder in Aid of Racketeering—Third Element  (Purpose to Gain Entrance or Maintain or Increase Position)                    61

30. Count Three: Murder in Aid of Racketeering—Elements                    62

31. Count Three: Murder in Aid of Racketeering — Second Element (Murder)                    63

32. Count Three: Murder in Aid of Racketeering —Third Element  (Purpose to Gain Entrance or Maintain or Increase Position)                    64

33. Count Three: Murder in Aid of Racketeering—Aiding & Abetting and Pinkerton                    65

34. Count Four: Assault and Attempted Murder in Aid of Racketeering—Elements                    67

35. Count Four: Assault and Attempted Murder in Aid of Racketeering — Second Element (Assault & Attempted Murder)                    68

36. Count Four: Assault and Attempted Murder in Aid of Racketeering —Third Element (Purpose to Gain Entrance or Maintain or Increase Position)                    70

37. Count Four: Assault and Attempted Murder in Aid of Racketeering—Aiding & Abetting and Pinkerton                    71

38. Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering—Elements                    72

39. Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering — Second Element (Assault & Attempted Murder)                    73

40. Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering —Third Element  (Purpose to Gain Entrance or Maintain or Increase Position)                    74

41. Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering—Aiding & Abetting and Pinkerton                    75

42. Counts Eight and Nine: Firearms Offenses—General Instructions                    76

43. Count Eight: Firearms Offense—Elements                    77

44. Counts Eight: Firearms Offense—First Element ("Using," "Carrying," or "Possessing")                    78

45. Counts Eight: Firearm Offense—Second Element (During and in Relation to a Crime of Violence)                    80

46. Count Eight: Firearm Offense—Third Element (Knowingly)                    81

47. Count Eight: Firearm Offense—Third Element (Brandish/Discharge)                    82

48. Count Nine: Firearms Offense—Aiding and Abetting and *Pinkerton*                    83

49. Count Seven: Murder Using A Firearm—General Instructions                    85

50. Count Seven: Murder Using A Firearm—Personal Liability                    86

51. Count Seven: Murder Using A Firearm—Aiding and Abetting and *Pinkerton*                    88

52. Count Six: Conspiracy to Distribute Controlled Substances—Elements                    89

53. Count Six: Conspiracy to Distribute Controlled Substances—First Element                    90

54. Count Six: Conspiracy to Distribute Controlled Substances—Second Element                    91

55. Count Ten: Attempted Escape—Elements                    92

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                               :

UNITED STATES OF AMERICA

                                               :

              -v.-                                   S18 17 Cr. 89 (CS)

                                               :

MATTHEW MADONNA, *et al.*,

                                             :

                       Defendants.

                                           :

------------------------------------------------------------x

## <u>REQUESTS TO CHARGE</u>

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government respectfully submits the following proposed jury instructions. Except where noted, the following requests were adapted from the instructions given by this Court in *United States v. Tyrin Gayle*, 16 Cr. 361 (CS).

## REQUEST NO. 1.

### General Requests

The parties respectfully request that the Court give its usual instructions to the jury on the following matters:

    a.   Function of Court and Jury

    b.   Indictment not Evidence

    c.   Statements of Court and Counsel not Evidence

    d.   Burden of Proof and Presumption of Innocence

    e.   Reasonable Doubt

    f.   Government Treated Like Any Other Party

    g.   Inferences

    h.   Definitions and Examples of Direct and Circumstantial Evidence

    i.   Credibility of Witnesses

    j.   Interest in Outcome

    k.   Right to See Exhibits and Have Testimony Read During

    l.   Sympathy:  Oath as Jurors

    m.   Punishment Is Not to Be Considered by the Jury

    n.   Verdict of Guilt or Innocence Must Be Unanimous

    o.   Venue

    p.   Variance in Dates

    q.   Particular Investigative Techniques Not Required

    r.   Charts, Maps, and Summaries

    s.   Use of Recordings

t.  Testimony of Law Enforcement Officers

u.  Testimony of Experts

v.  Cooperating Witnesses

w.  Immunized Witnesses

x.  Stipulations

y.  Preparation of Witnesses

z.  Persons Not on Trial

aa. Uncalled Witnesses—Equally Available

bb. Evidence Obtained from Search Warrant

cc. Redaction of Evidentiary Items

dd. Defendant's Right Not to Testify/Defendant's Testimony

## REQUEST NO. 2.

### Summary of Indictment

The Indictment contains ten counts or charges. In your deliberations and in reaching your verdict, you must consider each count separately.

Count One charges conspiracy to violate the Racketeer Influenced and Corrupt Organizations, or RICO, Act. It alleges that from at least in or about 2000, up to and including in or about May 2017, MATTHEW MADONNA, STEVEN L. CREA, a/k/a "Stevie," a/k/a "Stevie Wonder," CHRISTOPHER LONDONIO, and TERRENCE CALDWELL, a/k/a "T," agreed with others to conduct and to participate in the conduct of the affairs of an enterprise—specifically, La Cosa Nostra—through a series of specific criminal acts alleged to constitute a pattern of racketeering activity.  These acts include murder, the distribution of controlled substances, extortion and extortionate debt collection, robbery, wire and mail fraud, money laundering, gambling, and witness tampering and retaliation.

Count Two charges that in or about November 2013, MADONNA, CREA, a LONDONIO, and CALDWELL conspired to murder Michael Meldish in aid of the activity of La Cosa Nostra.

Count Three charges that in or about November 2013, MADONNA, CREA, a LONDONIO, and CALDWELL murdered, and aided and abetted the murder of, Michael Meldish in aid of the activity of La Cosa Nostra.

Count Four charges that on or about May 29, 2013, CALDWELL assaulted and attempted to murder, and aided and abetted the assault and the attempted murder of, Enzo Stagno in aid of the activity of La Cosa Nostra.

Count Five charges that in or about late-2012, CREA attempted to assault and to murder, and aided and abetted the attempted assault and the attempted murder of, Carl Ulzheimer in aid of the activity of La Cosa Nostra.

Count Six charges that from in or about 2011 up to and including in or about May 2017, LONDONIO conspired (that is, agreed) to distribute and possess with intent to distribute marijuana and oxycodone.

Count Seven charges that on or about November 15, 2013, MADONNA, CREA, LONDONIO, and CALDWELL carried, possessed, brandished, and discharged firearms, and aided and abetted the use, carrying, possession, brandishing, and discharge of firearms, during and in relation to the murder of Michael Meldish charged in Count Three.

Count Eight charges that on or about May 29, 2013, CALDWELL carried, possessed, brandished, and discharged a firearm during and in relation to the assault and attempted murder of Enzo Stagno charged in Count Three.

Count Nine charges that that in or about late-2012, CREA aided and abetted the use, carrying, and possession of a firearm during and in relation to the attempted assault and attempted murder of Carl Ulzheimer charged in Count Five.

Count Ten charges that in or about the summer of 2017, LONDONIO attempted to escape from custody in the Metropolitan Detention Center.

<u>**REQUEST NO. 3.**</u>

**"Unlawfully," "Intentionally," and "Knowingly"**

Throughout these instructions, I will use the terms "Unlawfully," "Intentionally," and "Knowingly."

"Unlawfully" simply means contrary to law. A defendant does not need to have known that he was breaking any particular law, but he must have been aware of the generally unlawful nature of his acts.

The terms "knowingly" and "intentionally" mean that a defendant knew what he was doing; in other words, that the defendant took the actions in question deliberately and voluntarily. An act is done "knowingly" and "intentionally" if it is done deliberately and purposely; that is, the defendant's acts must have been the product of the defendant's conscious objective, rather than the product of a mistake or accident, or mere negligence, or some other innocent reason.

Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. The Government has introduced into evidence certain acts and conversations alleged to have taken place with the defendant or in his presence. The Government contends that these acts and conversations show, beyond a reasonable doubt, the defendants' knowledge. The defendants deny this.

# REQUEST NO. 4.

## Law of Conspiracy

The law of conspiracy applies to Count One, the charge of conspiracy to violate the RICO statute, and Count Six, the charge of conspiracy to distribute and possess with intent to distribute at marijuana and oxycodone.

A conspiracy is a kind of criminal partnership – an agreement of two or more persons to join together to accomplish some unlawful purpose.

Conspiracy simply means agreement, and the crime of conspiracy to violate a federal law is an independent offense, separate and distinct from the actual violation of any specific federal laws. Such actual violations are called "substantive crimes." You may find a defendant guilty of the crime of conspiracy even if you find that the substantive crimes which were the objects of the conspiracy were never actually committed. Congress has deemed conspiracy, standing alone, a separate crime, even if the conspiracy is not successful.

To prove the existence of a conspiracy, the Government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they have formed a conspiracy to violate the law and spelling out all the details. Common sense tells you that when people agree to enter into a criminal conspiracy, much is left to unexpressed understanding. It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

To show that a conspiracy existed, the evidence must show beyond a reasonable doubt that two or more persons, in some way or manner, either explicitly or implicitly, came to an understanding to violate the law and to accomplish an unlawful plan.

In determining whether there has been an unlawful agreement as alleged in the Indictment, you may consider the actions of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose. The only evidence that may be available with respect to the existence of a conspiracy is that of disconnected acts on the part of the alleged individual co-conspirators. When taken all together and considered as a whole, however, you may conclude – or may not, as your good judgment dictates – that that conduct warrants the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express agreement.

It is not necessary for the Government to show that a defendant was fully informed as to all the details of the conspiracy for you to infer knowledge on his part. To have guilty knowledge, a defendant need not know the full extent of the conspiracy, or all of the activities of all of its participants. It is not necessary for a defendant to know every other member of the conspiracy. In fact, a defendant may know only one other member of the conspiracy and still be a co-conspirator. Nor is it necessary for a defendant to receive any monetary benefit from his participation in the conspiracy, or have a financial stake in the outcome. It is enough if he participated as a conspirator unlawfully, intentionally, and knowingly, as I have defined those terms.

## REQUEST NO. 5.

### Count One: Racketeering Conspiracy—General Instructions

Count One alleges that the defendants conspired to violate the RICO statute, Section

1962(c) of Title 18 of the United States Code, which makes it a crime for:

> "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

The RICO statute, in essence, makes it a crime for a person to participate in the conduct of an

enterprise's affairs through a pattern of violating certain laws known as "racketeering acts."

These alleged violations, or racketeering acts, may be violations of federal or state law, and I will

discuss them shortly.

The word "racketeering" may have certain implications in our society. Do not infer

anything from it. The use of the term in the applicable statute and here in this courtroom should

not be regarded as having anything to do with your determination of whether the guilt of the

defendant you are considering has been proven beyond a reasonable doubt. The term is merely a

term used by Congress to describe the statute.

<u>**REQUEST NO. 6.**</u>

**Count One: Racketeering Conspiracy—Elements**

In order to meet its burden of proving that the defendant you are considering is guilty of the racketeering conspiracy charged in Count One of the Indictment, the Government must establish beyond a reasonable doubt each of the following four elements:

<u>First</u>, that the enterprise alleged in the Indictment existed;

<u>Second</u>, that the enterprise's activities affected, or would affect, interstate commerce;

<u>Third</u>, that the defendant was employed by, or associated with, the enterprise;

<u>Fourth</u>, that that the defendant knowingly agreed to participate, either directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity; that is, he agreed to participate in some manner in the overall affairs of the enterprise with the intent that he or another member or members of the conspiracy would commit at least two acts of racketeering activity[1].

---

[1] *United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018) ("RICO conspiracy requires proof: (a) of an agreement to join a racketeering scheme, (b) of the defendant's knowing engagement in the scheme with the intent that its overall goals be effectuated, and (c) that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering.").

13

**REQUEST NO. 7.**

**Count One: Racketeering Conspiracy—First Element
(Existence of the Enterprise)**

The first element the Government must prove beyond a reasonable doubt is that the alleged enterprise—La Cosa Nostra—in fact existed.

Under the RICO statute, an enterprise may be a group of people informally associated together for a common purpose of engaging in a course of conduct. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. In addition to having a common purpose, this group of people must have a core of personnel who function as a continuing unit. It does not have to be a commonly recognized legal entity, such as a corporation, a trade union, a partnership, or the like. The statute makes clear that an enterprise may be "a group of individuals [who are] associated in fact although not a legal entity." Furthermore, the enterprise must continue to exist in a substantially similar form through the period charged. This does not mean that the membership must remain exactly identical, but the enterprise must have a recognizable core that continues during a substantial period within the time frame charged in the Indictment.

Here, the enterprise alleged in the Indictment is comprised of members and associates of La Cosa Nostra, and it is alleged to have existed from at least in or about 2000 up to and including in or about May 2017.

If you find that this was a group of people characterized by (1) a common purpose or purposes, (2) an ongoing formal or informal organization or structure, and (3) core personnel who functioned as a continuing unit during a substantial period within the time frame charged in the Indictment, then an enterprise existed.

## REQUEST NO. 8.

### Count One: Racketeering Conspiracy—Second Element
### (Effect on Interstate Commerce)

The second element the Government must prove beyond a reasonable doubt is that the enterprise was or would be engaged in, or its activities affected or would affect, interstate commerce. Interstate commerce includes the movement of goods, services, money, and individuals between states.

The effect need not be substantial; even a minimal effect is enough. Nor is it necessary that the effect on interstate commerce be negative.

It is not necessary to prove that the personal acts of the defendant you are considering affected interstate commerce, as long as the acts of the enterprise itself had or would have such an effect. It is sufficient, for example, if, in the course of the enterprise's racketeering activities, members of the enterprise traveled interstate, used interstate telephone facilities, or trafficked in narcotics. All narcotics activity, even purely local activity, has an effect on interstate commerce, so if you find that members of the enterprise trafficked in narcotics as part of their membership in the enterprise, you may find this element satisfied.

Finally, the Government is not required to prove that the defendant you are considering knew that interstate commerce was or would be affected. All that is necessary is that you find beyond a reasonable doubt that the activities of the enterprise affected or would affect interstate commerce in some minimal way.

## REQUEST NO. 9.

### Count One: Racketeering Conspiracy—Third Element
### (Association with the Enterprise)

The third element that the Government must prove is that the defendant you are considering was associated with or employed by the enterprise. It is not required that the Government prove that the defendant was associated with or employed by the enterprise for the entire time that the enterprise existed. It is required, however, that the Government prove beyond a reasonable doubt that at some time during the period indicated in the Indictment, the defendant was associated with or was employed by the enterprise.

A defendant cannot be associated with or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities. Thus, to prove this element, the Government prove beyond a reasonable doubt that the defendant knew of the existence of the enterprise and of the general nature of its activities, and was connected to the enterprise in some meaningful way.

However, to prove that a defendant was employed by or associated with an enterprise, it is not necessary to prove that the defendant had a formal position in the enterprise, participated in all the activities of the enterprise, had full knowledge of all the details of the enterprise's activities, or even knew all the other members of the enterprise.[2]

---

[2] *United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989) (collecting cases); *accord United States v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011); *United States v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008); *United States v. Zichettello*, 208 F.3d 72, 99-100 (2d Cir. 2000).

## REQUEST NO. 10.

### Count One: Racketeering Conspiracy—Fourth Element
### (Agreement to Commit a Pattern of Racketeering)

The fourth element the Government must prove beyond a reasonable doubt is that the defendant you are considering knowingly agreed to participate, either directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.  To establish this, the Government must in turn prove each of the following three elements beyond a reasonable doubt:

First, that the defendant you are considering agreed that a conspirator, which could be the defendant or another member of the conspiracy, would intentionally commit, or cause, or aid and abet the commission of, two or more racketeering acts of the types alleged in the Indictment. At the end of this instruction, I will instruct you on the elements regarding each of the charged categories of racketeering activity.

Second, that the racketeering acts had a "nexus" to the enterprise and the racketeering acts are "related" to one another. A racketeering act has a "nexus" to the enterprise if it has a meaningful connection to the enterprise. To be "related," the racketeering acts must have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise. For example, for both "nexus" and "relatedness" purposes, the requisite relationship between the RICO enterprise and a predicate racketeering act may be established by evidence that the defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the defendant's position in the enterprise facilitated

his commission of the racketeering act, or by evidence that the racketeering act benefitted the enterprise, or by evidence that the racketeering act was authorized by the enterprise or by evidence that the racketeering act promoted or furthered the purposes of the enterprise.

Third, that the racketeering acts themselves either extended over a substantial period of time or they posed or would pose a threat of continued criminal activity. The Government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways. For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise. Moreover, in determining whether the Government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts that the defendant you are considering himself is alleged to have committed; rather, in addition to considering such acts, you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

In deciding whether the Government has proved that the defendant you are considering knowingly agreed to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, your focus should be on the defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to personally commit individual acts of racketeering. The Government must prove that the defendant participated in some manner in the overall objective of the conspiracy, and that the conspiracy involved, or would have involved, the commission of two racketeering acts that constituted, or would constitute, a pattern of racketeering. The Government

is not required to prove either that the defendant agreed to commit two racketeering acts or that he actually committed two such acts, although you may conclude that he agreed to participate in the conduct of the enterprise from proof that he agreed to commit or actually committed such acts.  At bottom, the Government must prove that the defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the racketeering conspiracy, which could be the defendant himself or a co-conspirator, would commit at least two racketeering acts in the conduct of the affairs of the enterprise and that those acts would constitute a pattern of racketeering activity as I have defined those terms for you.

Let me also make clear that an enterprise is not the same thing as the pattern of racketeering activity. As I have mentioned, the enterprise in this case is alleged to be a group of individuals who associated together for a common purpose of engaging in a course of conduct. A pattern of racketeering activity, on the other hand, is a series of criminal acts. The existence of the enterprise is proven by evidence of an ongoing organization, formal or informal, with a common purpose and by evidence that various core personnel of the group functioned as a continuing unit. The pattern of racketeering activity, on the other hand, is proven by evidence of a minimum of two acts of racketeering that participants in the enterprise agreed to commit, committed, or aided and abetted. The proof used to establish the existence of the enterprise and the pattern of racketeering activity may be the same or overlapping. For example, if you find that an ongoing enterprise existed, the existence of this enterprise may help establish that the separate racketeering acts were part of a "pattern" of continuing criminal activity. Nevertheless, you should bear in mind that proof of an enterprise does not necessarily establish proof of a pattern of racketeering activity, and vice versa. The enterprise and the defendant's agreement to participate in the conduct of the affairs of the

enterprise through a pattern of racketeering activity are separate elements that must be proven by the Government.

Finally, although you need not decide whether the defendant agreed to the commission of any particular racketeering act in order to convict him of the RICO conspiracy offense charged in Count One, you must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed; for example, at least two acts of murder or attempted murder, two acts of extortion or extortionate debt collection, two acts of gambling, two acts of drug trafficking, or any combination thereof.

Now, let me turn to substantive law of those offenses.

*See also Salinas v. United States*, 522 U.S. 52, 63-66 (1997); *United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018); 3 Modern Federal Jury Instructions-Criminal P 52.05, Instr. 52-31.

## REQUEST NO. 11.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Generally**

For the purposes of Count One, the Indictment alleges that the following categories of

criminal violations were intended to be committed as part of the RICO conspiracy:

  a.  Multiple acts involving murder, in violation of New York law;

  b.  Multiple acts involving robbery, in violation of New York law;

  c.  Multiple acts involving extortion, in violation of New York law;

  d.  Multiple acts involving gambling, in violation of New York law and New Jersey
      law;

  e.  Multiple acts involving making and collecting extortionate extensions of credit,
      more commonly known as "loansharking," in violation of Title 18, United States
      Code, Sections 892 and 894;

  f.  Multiple acts involving mail and wire fraud, in violation of Title 18, United States
      Code, Sections 1341 and 1343;

  g.  Multiple acts involving witness tampering and witness retaliation, in violation of
      Title 18, United States Code, Sections 1512 and 1513;

  h.  Multiple acts involving interfering with commerce by threats of force, in violation
      of Title 18, United States Code, Section 1951;

  i.  Multiple acts involving the management of an illegal gambling business, in
      violation of Title 18, United States Code, Section 1955;

  j.  Multiple acts involving the trafficking in contraband cigarettes, in violation of
      Title 18, United States Code, Sections 2341 and 2342;

  k.  Multiple acts involving money laundering, in violation of Title 18, United States
      Code, Section 1956; and

  l.  Multiple offenses involving the distribution of controlled substances, including
      cocaine, heroin, marijuana and oxycodone, in violation of Title 21, United States,
      Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C).

In a moment, I will instruct you on the substantive law of each of these offenses. Before I

do, let me remind you that the Government must prove beyond a reasonable doubt that the

defendant you are considering agreed that either he or a co-conspirator would commit two acts in violation of these statutes within ten years of each other as part of the charged RICO conspiracy. As I have said, the Government need not prove that the defendant himself committed or agreed to personally commit any of these offenses.

You also will note that, for some of the charged categories of predicate offenses, the Indictment charges a violation of more than one statute. I instruct you that, in order to find a that a given predicate offense was an object of the charged RICO conspiracy, you need not find that the object of the conspiracy involved violations of all the listed statutes; rather, you need only find that the object of the conspiracy involved the violation of at least one of the specified statutes, but for each defendant, you must be unanimous as to which one or ones.

<u>**REQUEST NO. 12.**</u>

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Aiding & Abetting Under New York Law**

The Indictment alleges that some of the offenses that were committed or were intended to be committed as part of the RICO conspiracy include aiding and abetting offenses under New York Penal Law.

Under New York Penal Law Section 20.0, "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes or intentionally aids such person to engage in such conduct."

Under that definition, mere presence at the scene of a crime, even with knowledge that the crime is taking place, (or mere association with a perpetrator of a crime), does not by itself make a defendant criminally liable for that crime. For someone to be held criminally liable for the conduct of another that constitutes an offense, you must find beyond a reasonable doubt:

<u>First</u>, that the individual solicited, requested, commanded, importuned, or intentionally aided that person to engage in the conduct; and

<u>Second</u>, that the individual did so with the state of mind required for the commission of the offense.

Thus, you may find that the RICO conspiracy involved the New York state offenses I will describe for you either because you find that the defendant agreed that he or a co-conspirator would commit those offenses, or because you find that he agreed that he or a co-conspirator would assist a third party in doing so.

### REQUEST NO. 13.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Murder Under New York Law**

The Indictment alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy was murder, and aiding and abetting the same, in violation of New York State law.

The elements of murder under New York state law are:

First, that the perpetrator caused the death of the victim, or aided and abetted the same; and

Second, that the perpetrator did so with the intent to cause the death of the victim or another person.

A person intends to cause the death of another person when his conscious objective is to cause the death of that person. To prove that an individual caused the victim's death, the Government must prove that the individual's conduct was a sufficiently direct cause of the death of the victim or a reasonably foreseeable result of that conduct. Intent does not require premeditation or advance planning, but the intent to cause death must exist at the time the individual engages in the acts that caused death.

In determining whether the defendant you are considering agreed as part of the RICO conspiracy charged in Count One that he or a co-conspirator would commit acts involving murder in violation of New York State law, you may also consider whether the defendant agreed that he or a co-conspirator would aid and abet murder. I have already explained aiding and abetting under New York law, and you should apply those instructions here.

**REQUEST NO. 14.**

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Robbery Under New York Law**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy was robbery, and aiding and abetting the same, in violation of New York State law.

Under New York law, an individual is guilty of robbery when he forcibly steals property. Property includes any money or personal property and any article, substance, or thing of value. To steal property means to wrongfully take, obtain, or withhold property from the person who owns or has lawful custody of the property, and to do so with the intent to deprive that person of the property. For purposes of these New York robbery offenses, intent means conscious objective or purpose. To steal property forcibly requires using or threatening the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of the property or to the retention of the property immediately after the taking, or compelling the owner of the property or another person to deliver up the property, or engaging in other conduct that aids in the commission of the robbery.

I have already instructed you generally as to the meaning of aiding and abetting under New York law, and you should apply those instructions here.

Adapted from the charge given by the Honorable Paul G. Gardephe
in *United States v. Johnson, et. al*, 16 Cr. 281 (PGG).

**REQUEST NO. 15.**
**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—**
**Racketeering Predicates—Extortion Under New York Law**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy was extortion, and aiding and abetting the same, in violation of New York State law.

In order for you to find that a person committed extortion under New York State law, the Government must prove beyond a reasonable doubt that:

<u>First</u>, that the individual took, obtained or withheld property;

<u>Second</u>, that the individual took, obtained or withheld such property from a person, and that the person was an owner thereof;

<u>Third</u>, that the individual acted with intent to deprive another of such property or to appropriate the same to himself or to a third person; and

<u>Fourth</u>, that the individual obtained such property by compelling or inducing such person to deliver such property to himself or to a third person by means of instilling a fear that, if such property was not so delivered, the actor or another would cause physical injury to some person, or damage to property, in the future.

I have already instructed you generally as to the meaning of aiding and abetting under New York law, and you should apply those instructions here.

Adapted from Criminal Jury Instructions 2d [NY] § 155.40(2).

26

**REQUEST NO. 16.**

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Gambling Under New York & New Jersey Law**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy was gambling, and aiding and abetting the same, in violation of New York and New Jersey law.

In order for you to find that a person committed gambling under New York law, the Government must prove beyond a reasonable doubt that:

First, that the person knowingly advanced or profited from unlawful gambling activity;

Second, that the person did so by engaging in bookmaking, to the extent that he received or accepted in any one day more than five bets totaling more than five thousand dollars.

Under New York law, a person "advances gambling activity" when, acting other than as a player, that person engages in conduct which materially aids any form of gambling activity. A person "profits from gambling activity" when, other than as a player, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of gambling activity.

I have already instructed you generally as to the meaning of aiding and abetting under New York law, and you should apply those instructions here.

With respect to gambling under New Jersey law, there are two relevant statutory provisions.

The first prohibits promoting gambling and requires proof of two elements:

First, that the person engaged in conduct that materially aided unlawful gambling activity; and

Second, that the person acted knowingly.

27

The second statutory provision prohibits possession of gambling records and requires proof of three elements:

First, that the person knowingly possessed a particular writing, paper, instrument or article;

Second, that the writing, paper, instrument or article is of a kind commonly used in a bookmaking scheme or enterprise; and

Third, that the person possessed the writing, paper, instrument or article with knowledge of its contents.

Under New Jersey law, "gambling" means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome. The type of gambling activity alleged here is promoting bookmaking. New Jersey law defines "bookmaking" as advancing gambling activity by the unlawful accepting of bets from members of the public based upon the outcome of future contingent events as a business.

The term "materially aids gambling activity" includes conduct directed toward the creating or establishment of the particular game, contest, scheme, device or activity involved; toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefore; toward the solicitation or inducement of persons to participate therein; toward the actual conduct of the playing phases thereof; toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation. It is not necessary for the Government to prove that defendant received any compensation for his conduct.

Under New Jersey law it is also illegal to aid and abet a criminal offense.  Here, in order for you to find that an individual aided and abetted gambling under New Jersey law, Government must prove beyond a reasonable doubt that:

First, the individual solicited another to commit the gambling offense and/or did aid or agree or attempt to aid him in planning or committing the gambling offense;

Second, the individual's purpose was to promote or facilitate the commission of the gambling offense; and

Third, the individual possessed the criminal state of mind that is required to be proved against the person who actually committed the gambling offense.

Adapted from Criminal Jury Instructions 2d [NY] § 225.10; NJ J.I. CRIM 2C:37-2a(2), 2C:37-2a(2), 2C:2-6.

## REQUEST NO. 17.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Attempt and Aiding & Abetting Under Federal Law**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy were violations of federal law. These include aiding and abetting these federal offenses. Before I turn to the particular federal offenses alleged in the Indictment, let me explain aiding and abetting under federal law.

Under the federal aiding and abetting statute, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." In other words, a person who aids and abets another to commit an offense is just as guilty of that offense as if he committed it himself. Accordingly, you may find that an individual is guilty of a crime if you find that the Government has proven beyond a reasonable doubt that another person actually committed the crime and that the individual you are considering aided and abetted that other person in committing the crime.

As you can see, the first requirement is that another person has committed the crime charged. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person. But if you do find that a crime was committed, then you must consider whether the defendant or a co-conspirator aided or abetted the commission of the crime.

To aid and abet another to commit a crime, it is necessary that the person you are considering knowingly associated himself in some way with the crime, and that he knowingly committed some act to contribute to the success of the crime. A person acts "knowingly" if he acts voluntarily and deliberately, and not because of mistake or accident, mere negligence or other

innocent reason.  The Government must prove that the defendant engaged in some affirmative conduct for the specific purpose of bringing about the crime.

The mere presence of a person where a crime is being committed, even coupled with knowledge by that person that a crime is being committed, or the mere acquiescence by a person in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. To be found guilty, the Government must prove that an aider and abettor took some conscious action that furthered the commission of the crime and that he did so with the intent to bring about the crime. To determine whether the person aided and abetting a crime, ask yourself: Did he participate in the crime charged as something he wished to bring about? Did he associate himself with the criminal venture knowingly? Did he seek by his actions to make the criminal venture succeed? If so, then the person is an aider and abettor, and therefore guilty of the offense. If not, then the person is not an aider and abettor, and therefore not guilty under an aiding and abetting theory.

*See also* 1 Modern Federal Jury Instructions-Criminal P 10.01 (2019).

31

<u>**REQUEST NO. 1.**</u>

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Extortionate Credit Transactions**

I will now turn to the federal offenses that the Indictment alleges were committed or were intended to be committed as part of the RICO conspiracy.  The first I will address is extortionate credit transactions, also known as loansharking, in violation of Title 18, United States Code, Sections 892 and 894. I will address Sections 892 and 894 in turn.

<u>18 U.S.C. § 892</u>

Title 18, United States Code, Section 892 provides, in pertinent part, that: "[w]hoever makes any extortionate extension of credit or conspires to do so [is guilty of a crime] . . . " Section 891, in turn, defines an extortionate extension of credit as

> "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person."

In order for you to find that a person committed loansharking under Section 892, the Government must prove beyond a reasonable doubt that:

<u>First</u>, that an individual knowingly made an extension of credit; and

<u>Second</u>, that there was an understanding between the individual and the borrower, express or implied, tacit or otherwise, that if the borrower delayed in making his repayments or if there was a total failure to repay, violence or other criminal means would be used to force repayment.

To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment of a debt or the satisfaction of a claim may or will be deferred.  It makes no difference whether the debt or claim in question is valid or acknowledged,

or how it may have arisen. It further does not matter if the credit was not in fact extended, for the statute is violated if there was a mere agreement to make an extortionate extension of credit.

As I mentioned, the second element requires that it be the understanding of the perpetrator and the borrower, at the time of the extension of credit, that delay or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, or to the reputation or property of some person. In this context, the word "understanding" means merely comprehension or awareness. It must be emphasized that it is the awareness of the parties at the time of the loan which is crucial. The actual fear of the borrower is not relevant to this determination, nor does the statute require proof of express threats. What is required is that the threat of violence exist and that it be comprehended by the victim. If so, the extortionate nature of the transaction is present.

<u>18 U.S.C. § 894</u>

Turning to Title 18, United States Code, Section 894, that statute provides in pertinent part:

> Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means (1) to collect or attempt to collect any extension of credit, or (2) to punish any person for the nonrepayment thereof [commits a crime].

In order for you to find that a person committed loansharking under Section 894, the Government must prove beyond a reasonable doubt that:

<u>First</u>, the individual collected or attempted to collect an extension of credit; and

<u>Second</u>, the individual knowingly used extortionate means to collect or attempt to collect the extension of credit.

I have already explained the meaning of the term "extension of credit."  To "collect" means simply to induce, in any way, a person to make a payment of money.

As to the second element, the statute defines "extortionate means" as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person."  An actual threat of force is not required. Indeed, in the organized crime context, extortionate endeavors can often be accomplished without any explicit or implicit threat, because the necessary fear of retaliation had been instilled over decades.

Moreover, the perpetrator's actions need not generate actual fear. You need only find that the perpetrator intended to take actions which reasonably would induce fear in an ordinary person. This second element, in other words, is directed at the conduct of the perpetrator, not at the state of mind of the victim.

I have already instructed you generally as to the meaning of aiding and abetting under federal law, and you should apply those instructions here.

Adapted from 1 Modern Federal Jury Instructions-Criminal, Instr. 32-1, 32-2, 32-3, 32-4, 32-5, 32-6, 32-7, 32-8, 32-9; *United States v. Coppola*, 671 F.3d 220, 242 (2d Cir. 2012).

## REQUEST NO. 18.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Mail & Wire Fraud**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy charged in Count One was mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

In order for you to find that a person committed mail or wire fraud under Sections 1341 or 1343, the Government must prove beyond a reasonable doubt that:

First, there was a scheme or artifice to defraud others of money or property by materially false or fraudulent pretenses, representations, or promises;

Second, that the individual knowingly and willfully devised or participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

Third, in the execution of that scheme, the individual used or caused the use by others of either the mails, for mail fraud, or interstate or foreign wires, for wire fraud.

I will now instruct you on each of these elements.

### First Element: Scheme or Artifice to Defraud

The first element of mail fraud and wire fraud is that there was a scheme or artifice to defraud others of money or property by materially false or fraudulent pretenses, representations, or promises.

A "scheme or artifice" is a plan, device, or course of conduct to accomplish an objective. "Fraud" is a general term. It is a term that includes all the possible means by which a person seeks to gain some unfair advantage over another person by false representations, false suggestion, false

pretenses, or concealment of the truth.  The unfair advantage sought can involve money, property, or any other thing of value.

Thus, a "scheme to defraud" is a plan to deprive another of money or property by trick, deceit, deception or swindle.  The scheme to defraud is alleged to have been carried out by making material false or fraudulent statements, representations, claims and documents.  A statement, representation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was falsely made with the intention to deceive.  Deceitful statements of half-truths or the concealment of material facts, and the expression of an opinion not honestly entertained may also constitute false or fraudulent statements under the statute.  A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

In order to establish a scheme to defraud, the Government must also prove that the alleged scheme contemplated depriving another of money or property.   In this regard, a person is not deprived of money or property only when someone directly takes money or property from that person, although that is obviously one way that a person or entity can be so deprived.

A person can also be deprived of money or property when that person is provided false or fraudulent information that, if believed, would prevent the person from being able to make informed economic decisions about what to do with his or her money or property.

These false pretenses, representations, and promises must be "material."  We use the word "material" to distinguish between the kinds of statements we care about and those that are of no real importance.  A "material" fact is one which reasonably would be expected to be of concern to a reasonable and prudent person relying on the statement in making a decision.  That means if you find a particular statement of fact to have been untruthful, before you can find that statement or

omission to be material, you must also find that the statement or omission was one that would have mattered to a reasonable person in making such a decision.  In particular, you must find that the statement or omission was one that would have mattered to a reasonable person in a pecuniary or monetary way.

In considering this element of mail fraud and wire fraud, it is not important whether the other person actually relied on a misrepresentation.  It is sufficient if the misrepresentation is one that is merely capable of influencing the person's decision and is intended by the perpetrator.

Because the Government need only show that a scheme to defraud existed, not that it succeeded, it is not necessary for the Government to prove that anyone actually lost money or property as a result of the scheme.  For you to find that an individual committed mail or wire fraud, however, the Government must prove that such a loss was contemplated by that individual.  That is, to carry its burden, the Government must prove that the perpetrator contemplated and intended doing harm to a victim; that he intended to do something more than merely deceive someone.  In considering whether contemplation of the required loss was proved by the Government, keep in mind that the loss of the right to control money or property constitutes deprivation of money or property only when the scheme, if it were to succeed, would result in economic harm to the victim. If all the Government proves is that under the scheme, other persons entered into transactions they would otherwise not have entered into, without proving that those other persons would thereby have suffered economic harm, then the Government will not have met its burden of proof.

### Second Element: Participation with Intent to Defraud

The second element of mail and wire fraud is that the individual executed, attempted to execute, or participated in the scheme or artifice knowingly, willfully, and with the intent to defraud or to obtain money or funds owned or under the custody or control of the victim.

A person acts "knowingly" if he acts voluntarily and deliberately and not mistakenly or inadvertently.  A person acts "willfully" and "intentionally" if he acts purposely and voluntarily and with the specific intent to disobey or disregard the law.  It is not necessary that the perpetrator knew he was violating a particular law.  It is enough if he was aware that what he was doing was, in general, unlawful.

This element requires that the individual engaged in, or participated in, the scheme alleged with an understanding of its fraudulent or deceptive character and with an intention to help it succeed.  It is not required that the individual participate in or have knowledge of all the operations of the scheme.  Whether an individual is guilty of mail or wire fraud is not governed by the extent of his participation.  It also is not necessary that the individual originated the scheme, or that he participated in the alleged scheme from the beginning.  A person who comes in at a later point with knowledge of the scheme's general operation, although not necessarily all of its details, and intentionally acts in a way to further the unlawful goals, becomes a member of the scheme and is legally responsible for all that may have been done in the past in furtherance of the criminal objective and all that is done thereafter.

Even if the individual participated in the scheme to a lesser degree than others, he is nevertheless guilty, so long as he became a member of the scheme to defraud with knowledge of its general scope and purpose.

The questions of whether a person acted knowingly, willfully, and with intent to defraud are questions of fact for you to determine, like any other fact question.  These questions involve the state of mind of the perpetrator.

Direct proof of knowledge and fraudulent intent is often unavailable.  Indeed it is not typical that a person writes or states that as of a given time in the past he or she committed an act

with fraudulent intent.  Such direct proof is not required.  The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

When deciding whether the individual possessed or lacked an intent to defraud, you need not limit yourself to just what the individual said, but you may also look at what the individual did and what others did in relation to the individual and, in general, everything that occurred.

<u>Third Element: Use of the Mails or Interstate or Foreign Wire</u>

The third and final element of mail and wire fraud is use of the mails in furtherance of the scheme, for mail fraud, or use of an interstate or international wire communication in furtherance of the scheme, for wire fraud.

For mail fraud, the use of the mails as I have used it here includes material sent through either the United States Postal Service or a private or commercial interstate carrier.

For wire fraud, the wire communication must pass between two or more states as, for example, a telephone call between New York and New Jersey; or it must pass between the United States and a foreign country, such as a telephone call between New York and Costa Rica.

The mailed matter or use of the wires need not contain a fraudulent representation or purpose or request for money.  It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for the individual to be directly or personally involved in the mailing or wire communication, as long as the mailing or wire communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the individual is accused of participating.  In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the individual caused the mailing or wire communication by others. This

does not mean that the individual must specifically have authorized others to do the mailing or wire communication.  When one does an act with knowledge that the use of the mails or a wire communication will follow in the ordinary course of business or where such use of the mails or wire communication can reasonably be foreseen, even though not actually intended, then he causes the mails to be used or the wire communication.

For wire fraud, only the wire communication must be reasonably foreseeable, not its interstate or foreign component.  Thus, if you find that the wire communication was reasonably foreseeable, and the interstate or foreign wire communications actually took place, then this element is satisfied even if it was not foreseeable that the wire communication would cross state or national lines.

I have already instructed you generally as to the meaning of aiding and abetting under federal law, and you should apply those instructions here.

Adapted from 1 Modern Federal Jury Instructions-Criminal, Instrs. 44-3 through 44-7; the charge of the Hon. Richard J. Sullivan in *United States v. Merlino*, No. S44 16 Cr. 522 (RJS) (S.D.N.Y. 2018); and the charge of the Hon. Valerie E. Caproni in *United States v. Campos*, No. 16 Cr. 395 (VEC) (S.D.N.Y. 2017); *see generally United States v. Blackmon*, 839 F.2d 900, 907–08 (2d Cir. 1988); *United States v. Keats*, 937 F.2d 58 (2d Cir. 1991); *Schmuck v. United States*, 489 U.S. 705 (1989); *United States v. Paccione*, 949 F.2d 1183, 1196 (2d Cir. 1991).

## REQUEST NO. 1.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Witness Tampering**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy charged in Count One was witness tampering, in violation of Title 18, United States Code, Section 1512(b).

In order for you to find that a person tampered with a witness in violation of Section 1512(b, the Government must prove beyond a reasonable doubt that:

First, the individual knowingly used intimidation, threatened, or corruptly persuaded a person, or attempted to do so; and

Second, the individual acted knowingly and with the intent to (a) influence the testimony of a person in an official federal proceeding or to cause; (b) induce a person to withhold testimony or a record or a document from an official proceeding; or (c) hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.

Intimidation includes frightening a person, inspiring or affecting him by fear or deterring him by threats. It does not matter whether or not the person alleged to be the object of the threat is actually frightened, or thinks he is in physical danger. It is enough that the threat had a reasonable tendency to make the person fearful.

To "corruptly persuade" means to act knowingly with a wrongful or evil purpose to convince or induce another person to engage in certain conduct.

To act with the intent to influence the testimony of a witness means to act for the purpose of getting that witness to change or color or shade his or her testimony in some way. It is not

necessary for the Government to prove that the witness's testimony was in fact changed in any way.

An official proceeding means a proceeding before a court, judge or federal agency. The proceeding may be civil or criminal.

The law does not require that a federal proceeding be pending at the time of perpetrator's actions as long as the proceeding was foreseeable such that perpetrator knew that his actions were likely to affect the proceeding. In addition, the Government does not have to prove that perpetrator knew the federal nature of the proceeding.

I have already instructed you generally as to the meaning of aiding and abetting under federal law, and you should apply those instructions here.

Adapted from 1 Modern Federal Jury Instructions-Criminal, Instrs. 46-55 to 46-62.

**REQUEST NO. 19.**

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Witness Retaliation**

The Indictment also alleges that one of the categories of criminal violations that was
committed or was intended to be committed as part of the RICO conspiracy charged in Count
One was witness retaliation, in violation of Title 18, United States Code, Section 1513.

In order for you to find that a person retaliated against a witness in violation of Section
1513, the Government must prove beyond a reasonable doubt that:

First, the individual knowingly killed another person, attempted to kill another person, or
engaged or threatened to engage in conduct that caused or would cause bodily injury or damage
to tangible property of another person; and

Second, the individual acted with the intent to retaliate against a person for (i) the
attendance of a person at an official proceeding; (ii) testimony given or any record, document, or
other object produced by a witness in an official proceeding; or (ii) information given to law
enforcement relating to the commission of a federal offense.

I have already instructed you generally as to the meaning of aiding and abetting under
federal law, and you should apply those instructions here.

Adapted from Sand et al., Modern Federal Jury Instructions, Instr.
46-72 to 46-77

### REQUEST NO. 20.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Hobbs Act Robbery & Extortion**

The Indictment also alleges that one of the categories of criminal violations that was

committed or was intended to be committed as part of the RICO conspiracy charged in Count

One was violations of the Hobbs Act, Title 18, United States Code, Section 1951.  The Hobbs

Act makes it illegal to interfere with commerce through robbery or extortion.  Section 1951

provides, in relevant part:

> Whoever in any way or degree obstructs, delays, or affects
> commerce or the movement of an article or commodity in
> commerce, by robbery or extortion or attempts or conspires so to do,
> or commits or threatens physical violence to any person or property
> in furtherance of a plan or purpose to do anything in violation of this
> section [commits a crime].

In order for you to find that a person committed robbery in violation of Section 1951, the

Government must prove beyond a reasonable doubt that:

First, that the individual knowingly obtained or took the personal property of another, or

from the presence of another;

Second, that the individual took this property against the victim's will, by actual or

threatened force, violence, or fear of injury, whether immediately or in the future; and

Third, that as a result of the individual's actions, interstate commerce, or an item moving

in interstate commerce, was delayed, obstructed, or affected in any way or degree.

With respect to the first element of federal robbery, the term "property" includes money

and other tangible and intangible things of value that are capable of being transferred from one

person to another. With respect to the second element of federal robbery, in considering whether

a perpetrator used or threatened force, violence, or fear of injury, you should give these words

their ordinary meaning. Finally, with respect to the third element of federal robbery, the

44

requirement of an effect on interstate commerce is satisfied if there was any effect at all on interstate commerce. Moreover, a robbery or attempted robbery involving or aimed at drugs such as cocaine, heroin, or marijuana, or proceeds from a sale of such drugs, satisfies this element.

In order for you to find that a person committed extortion in violation of Section 1951, the Government must prove beyond a reasonable doubt that:

First, that the individual wrongfully obtained the property of another;

Second, that the individual obtained this property with the victim's consent, but that this consent was compelled by the wrongful use or threat of force, violence, or fear; and

Third, that, as a result of the individual's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

I have already defined property for you and you should apply that instruction here.

With respect to the second element of federal extortion, it is not necessary that force, violence and fear all were used or threatened. It is enough if any of them were used or threatened. Now let me turn for a moment to the concept of threat. Threats need not be direct. They may be veiled threats made by suggestion, implication or inference, though such inference on the part of the person extorted must be reasonable. Whether an implied or veiled reference amounts to a threat is a matter for you to decide under all the circumstances.

In considering whether force, violence, or fear was used or threatened, you should give those words their common and ordinary meaning, and understand them as you normally would in conversation. The threatened violence does not have to be directed at the person whose property was taken. The use of a threat of force or violence might be aimed at a third person, or at causing economic, rather than physical harm. A threat may be made verbally or by a physical gesture, or,

as I explained earlier, a threat may be veiled or implied.  Whether a statement or physical gesture actually was a threat depends on all of the circumstances.

Fear exists if at least one victim experiences anxiety, concern or worry over expected personal harm, or loss, or financial security.  The existence of fear must be determined by the facts that existed at the time property was taken.  Your decision whether fear or injury has been used or threatened involves a decision about people's state of mind at the time the property is taken.  It is obviously impossible to ascertain or prove directly what a person actually felt.  You cannot look into a person's mind to see what his state of mind actually was, but a careful consideration of the circumstances and the evidence should enable you to decide whether fear reasonably would have been the person's state of mind.

Fear of physical or economic injury or personal harm may be found to be reasonable if, considering the demand for money, the person who would have made the demand, and the nature of the conduct, a reasonable person would get the message clearly.  There need not be an explicit demand for money; the demand may have been implicit in the perpetrator's conduct or other statements.

Looking at the situation and the actions of people involved may help you determine what their state of mind was.  You can consider this kind of evidence in deciding whether property was obtained or sought through the use or threat of fear.

It is not necessary that the fear be a consequence of a direct threat.  It is sufficient that the surrounding circumstances render the person's fear reasonable.  You must find that a reasonable person would have been fearful in the circumstances.

If you decide that force or violence was used or threatened to obtain the property, then that is wrongful.  You do not have to consider whether the person who took or tried to take the

property believed that it was rightfully his.  Using force or violence or threats of force or violence to obtain property is wrong.  The extortion statute charged here is meant to punish any effort to obtain property by inherently wrongful means, such as force or threats of force or criminal prosecution, regardless of the perpetrator's claim of right to the property.

I have already instructed you regarding what affecting interstate commerce means, and you should apply that law here.

I have also already instructed you generally as to the meaning of aiding and abetting under federal law, and you should apply those instructions here with respect to both Hobbs Act robbery and extortion.

Adapted from the charge given by the Honorable Paul G. Gardephe in *United States v. Johnson, et. al*, 16 Cr. 281 (PGG); the charge of the Hon. Katherine B. Forrest in *United States v. Delligatti*, No. 15 Cr. 491 (KBF) (S.D.N.Y. 2018); 3 Modern Federal Jury Instructions-Criminal P 50.01, Inst. 50-3 (2019); 3 Modern Federal Jury Instructions-Criminal P 50.02, Instr. 50-10 through 50-15 (2019); *see also McLaughlin v. Anderson*, 962 F.3d 187 (2d Cir. 1992).

**REQUEST NO. 21.**

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Gambling**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy charged in Count One were acts involving management of an illegal gambling business, in violation of Title 18, United States Code, Section 1955.

In order to prove that a person conducted an illegal gambling business, the Government must prove beyond a reasonable doubt that:

First, the gambling business violated the laws of the state of New York or New Jersey;

Second, the gambling business was in substantially continuous operation for a period in excess of thirty days or had gross revenues of $2,000 or more in any one day; and

Third, five or more persons knowingly conducted, financed, managed, supervised, directed, or owned the gambling business.

With respect to the first element, I have already instructed you regarding the relevant gambling statutes under the laws of New York and New Jersey, and you should follow those instructions here.

With respect to the second element—that the gambling business was in substantially continuous operation for a period in excess of thirty days or had gross revenues of $2,000 or more in any one day—the Government is not required to prove that the business operated on an everyday basis throughout the entire thirty-day period. Instead, the Government must prove that over some period in excess of thirty days, the gambling business was conducted with sufficient regularity that it existed as an ongoing business rather that as a casual non-business activity. The

48

Government is not required to prove that the perpetrator knew that the business was in substantially continuous operation.

With respect to the third element—that five or more persons knowingly conducted, financed, managed, supervised, directed, or owned the gambling business—you should give the terms "financed," "managed," "supervised," "directed" and "owned" their everyday, ordinary meanings.

To conduct a gambling business means to perform any act, function or duty that is necessary or helpful in the regular operation of the business. You may find that a person conducted the gambling business even though he or she was a low-level employee having no part in the management or control of the business and no share in its profits. This includes any employee who was directly involved in gambling activity, like dealers and shufflers, or anyone who knowingly assisted in the operation of the gambling business, like waitresses and security guards. However, someone whose only involvement with the business was as a customer or bettor is not conducting the business and cannot be counted as one of the five.

Five or more people, including the perpetrator, must have participated during the period you found that the gambling business was in substantially continuous operation. The Government does not have to prove that all five were engaged at any particular time in conducting the business, as long as it proves that all five participated in the business during the period you identified. It is not required that all five be charged in the Indictment.

Each of the five persons must have knowingly participated in the business. This means that they knew that they were involved in conducting a gambling business, and were not involved by accident, negligence or mistake. The Government does not have to prove that they knew that the gambling business was illegal.

49

I have already instructed you generally as to the meaning of aiding and abetting under

federal law, and you should apply those instructions here.

> 2 Modern Federal Jury Instructions-Criminal P 39.04, Instr. 39-23,
> 39-25, 39-27 (2019); *United States v. DiCristina*, 726 F.3d 92 (2d
> Cir. 2013).

**REQUEST NO. 22.**

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Trafficking in Contraband Cigarettes**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy was trafficking of contraband cigarettes, in violation of Title 18, United States Code, Sections 2341 and 2342.

In order to prove that a person trafficked in contraband cigarettes, the Government must prove beyond a reasonable doubt that:

First, the person shipped, transported, received, possessed, sold, distributed, or purchased contraband cigarettes; and

Second, that the person acted knowingly.

The words "shipped," "transported," "received," "possessed," "sold," "distributed," and "purchased" have their ordinary meaning.

Under Title 18, United States Code, Sections 2341(2), "contraband cigarettes" are defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local Government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person" other than certain enumerated exemptions that are not applicable here.

I instruct you as a matter of law that the states of New York, New Jersey, Virginia, and Maryland all impose taxes on cigarettes and require that cigarettes possessed for sale in those states bear a stamp indicating that applicable taxes have been paid.

51

I have already instructed you generally as to the meaning of aiding and abetting under federal law, and you should apply those instructions here.

Adapted from the jury charge in *United States v. Alazzam*, S1 11 Cr. 414 (LAP); N.Y. Tax Law § 471; N.J.S.A. 54:40A-l et seq.; Va. Code. §§ 58.1-1001, 58.1-1003; Md. Code §§ 12-102, 12-302.

## REQUEST NO. 23.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Money Laundering**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy was money laundering, in violation of Title 18, United States Code, Section 1956.

The relevant provision, which is referred to as concealment money laundering, is contained in Section 1956(a)(1)(B) and provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity [shall be guilty of a crime].

In order to prove that a person engaged in concealment money laundering, the Government must prove beyond a reasonable doubt that:

First, the individual conducted or attempted to conduct a financial transaction involving property constituting the proceeds of specified unlawful activity;

Second, the individual knew that the property was the proceeds of some form of specified unlawful activity; and

Third, that the individual knew that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

The term "financial transaction" means a transaction involving a financial institution that is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, or a transaction that in any way or degree affects interstate or foreign commerce and

53

involves the movement of funds by wire or other means, or involves one or more monetary instruments, or involves the transfer of title to any real property.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of property, not just money.

The term "specified unlawful activity" means any one of a variety of offenses defined by the statute. In this case, the Government has alleged that the funds in question were the proceeds of mail and wire fraud. I instruct you that, as a matter of law, the alleged unlawful activity falls within that definition. However, it is for you to determine whether the funds were the proceeds of that unlawful activity.

To show that the individual knew that the property was the proceeds of some form of specified unlawful activity, the Government must prove that the individual knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state or federal law. Thus, the Government does not have to prove that the individual specifically knew that the property involved in the transaction represented the proceeds of any specific offense. The Government only has to prove that the perpetrator knew it represented the proceeds of some illegal activity that was a felony.  I instruct you as a matter of law that mail and wire fraud is a felony.

3 Modern Federal Jury Instructions-Criminal P 50A.03 (2019).

## REQUEST NO. 24.

**Count One: Racketeering Conspiracy—Fourth Element (Pattern of Racketeering)—
Racketeering Predicates—Distribution of Controlled Substances**

The Indictment also alleges that one of the categories of criminal violations that was committed or was intended to be committed as part of the RICO conspiracy was the distribution of, and possession with intent to distribute, controlled substances, including cocaine, heroin, marijuana and oxycodone, in violation of Title 21, United States, Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C).

In order to prove that a person distributed, or possessed with intent to distribute, a controlled substance, the Government must prove beyond a reasonable doubt that:

> <u>First</u>, that the person distributed a controlled substance, or possessed a controlled substance with the intent to distribute it;

> <u>Second</u>, that person did so intentionally and knowingly; and

> <u>Third</u>, that the substance involved was in fact a controlled substance. You are instructed that cocaine, heroin, marijuana, and oxycodone are "controlled substances" under the federal statute.

Let me now define some of these terms for you.

<u>"Possession"</u>

The legal concept of "possession" may differ from the everyday usage of the term, so let me explain it in some detail. Actual possession is what most of us think of as possession – that is, having physical custody or control of an object, as I possess this pen. If you find that the person had the controlled substance on his person, then you may find that he had possession of it. A person, however, need not have actual, physical possession – that is, physical custody of an object – to be in legal possession of it. If a person has the ability to exercise substantial control

over an object, even if he does not have the object in his physical custody, and that person has the intent to exercise such control, then the person is in possession of that object. This is called "constructive possession."

More than one person can have control over the same narcotics. In addition, possession and ownership are not the same. A person can possess an object and not be the owner of the object.

The word "distribution" means the actual, constructive, or attempted transfer of a controlled substance. To "distribute" means to deliver, pass, or hand over something to another person, or cause something to be delivered, passed on, or handed over to another person. Distribution does not require a sale.

To "possess with intent to distribute" simply means to have or control a controlled substance with the intention or purpose to "distribute" it to another person or persons. As I explained, to "distribute" means simply to transfer to another.

How can you tell whether a person intended to distribute drugs? Because you cannot read a person's mind, usually you must make an inference from his behavior. You cannot find someone guilty, however, unless these inferences convince you beyond a reasonable doubt that the person had the intention to distribute the controlled substance. If someone conspired to obtain drugs for his personal use, rather than for the purpose of distribution or delivery to another, that person would not be guilty of this offense.

It may be possible to infer an intention to distribute from the quantity of drugs that you find were involved, although the possession of a large quantity of narcotics does not necessarily mean that the possessor intended to distribute them. On the other hand, a person may have intended to distribute a controlled substance even if he did not possess a large amount of it. You

should make your decision whether the Government has proved beyond a reasonable doubt that the Perpetrator conspired to distribute controlled substances from all of the evidence presented in this case.

I have previously defined "knowingly" and "intentionally", and you should apply those definitions here.

I have already instructed you generally as to the meaning of attempt and aiding and abetting under federal law, and you should apply those instructions here.

Special Interrogatory on Drug Type and Quantity

One further point. If, and only if, you find a defendant guilty of Count One, and if and only if you find that the Government has proven beyond a reasonable doubt that the pattern of racketeering activity that that specific defendant agreed would be committed involved acts involving the distribution of controlled substances, then you must then determine the type of controlled substance or controlled substances involved in the conspiracy. The Government has alleged that the controlled substances involved in the conspiracy were cocaine, heroin, marijuana, and oxycodone. You must be unanimous as to which substance or substances the Government has proven beyond a reasonable doubt were part of the conspiracy. You should check "YES" to each substance on which you are unanimous.

There is also a special interrogatory regarding the quantity of cocaine and/or heroin involved. You should reach this question only if you have checked "YES" for cocaine and/or heroin. You need not determine the precise quantity. If you reach the question of quantity as to cocaine and/or heroin, you need only indicate on the verdict form whether the Government has established beyond a reasonable doubt that the conspiracy involved the quantities listed. Your finding on quantity must also be unanimous. A person is responsible for the quantity of drugs

involved in any transaction in which he personally participated as part of the conspiracy, whether or not he knew the specific quantity and whether or not it was foreseeable to him, and he is also responsible for quantities that the conspiracy as a whole involved, as long as those amounts were known or foreseeable to him and within the scope of the criminal activity he jointly undertook.

## REQUEST NO. 25.

### Count Two: Conspiracy to Murder in Aid of Racketeering—Elements

Count Two charges MATTHEW MADONNA, STEVEN L. CREA, CHRISTOPHER LONDONIO, and TERRENCE CALDWELL with conspiracy to murder Michael Meldish in aid of the activity of La Cosa Nostra.  In order to find a defendant guilty of Count Two, the Government must establish beyond a reasonable doubt each of the following elements:

First, that the enterprise charged in Count One existed, that it engaged in racketeering activity, and that it engaged in or its activities affected interstate commerce, as I have already explained those concepts to you.

Second, that the defendant conspired to commit murder; and

Third, that the defendant's general purpose in committing this offense was to gain entrance to the enterprise or to maintain or increase his position in the enterprise.

## REQUEST NO. 26.

### Count Two: Conspiracy to Murder in Aid of Racketeering— Second Element (Murder Conspiracy)

Under New York State law, a person is guilty of conspiracy to commit murder if the Government proves beyond a reasonable doubt:

<u>First</u>, that the individual agreed with one or more other persons to engage in or cause the performance of a murder;

<u>Second</u>, that the individual did so with the intent that such murder be performed;

<u>Third</u>, that the individual, or one of the people with whom he agreed to engage in or cause the performance of the conduct, committed an overt act in furtherance of the conspiracy.

A person acts with intent that a murder be performed when his conscious objective or purpose is that the murder should occur.

The agreement to engage in or cause the performance of a crime is not itself an overt act. The overt act must be an independent act that tends to carry out the conspiracy. The overt act can be, but need not be, the commission of the crime that was the object of the conspiracy.

Under New York law, it is no defense to a charge of conspiracy that one or more of the defendant's co-conspirators could not be guilty of conspiracy or the object crime, whether because of criminal irresponsibility or other legal incapacity or exemption; unawareness of the criminal nature of the agreement or the object conduct or the defendant's criminal purpose; or other factors precluding the mental state required for the commission of conspiracy or the object crime. In other words, a person may be guilty of conspiracy even though one or more or all of the other parties to the agreement are not guilty of the conspiracy or the murder because of some legal insufficiency or defense.

## REQUEST NO. 27.

### Count Two: Conspiracy to Murder in Aid of Racketeering—Third Element
### (Purpose to Gain Entrance or Maintain or Increase Position)

The third element the Government must prove beyond a reasonable doubt is that the defendant's purpose in committing the underlying crime was to gain entrance to the charged enterprise, or to maintain or increase his position within that enterprise. Your focus on this element is on the general purpose of the defendant. The Government does not need to prove that gaining entrance to or maintaining or increasing position in the enterprise was that person's sole or principal motive so long as one of those purposes was a substantial motivating factor in his decision to participate in the underlying crime or crimes. For example, this element is satisfied if you find that the person committed the underlying crime because he knew it was expected of him by reason of his membership in or association with the enterprise, because it would maintain or enhance his position or prestige in the enterprise, or, with respect to a high-ranking member of the enterprise, if he committed or sanctioned the act of violence to protect the enterprise's operations or advance its objectives. This element could also be satisfied if you find that the person committed the underlying crime to enhance his reputation or wealth within the enterprise, or to avoid losing power or prestige within the enterprise. This list of examples is not exhaustive.

## **REQUEST NO. 28.**

### **Count Three: Murder in Aid of Racketeering—Elements**

Count Three charges MATTHEW MADONNA, STEVEN L. CREA, CHRISTOPHER LONDONIO, and TERRENCE CALDWELL with the murder of Michael Meldish, and aiding and abetting the same, in aid of the activity of La Cosa Nostra.  In order to find a defendant guilty of Count Three, the Government must establish beyond a reasonable doubt each of the following elements:

First, that the enterprise charged in Count One existed, that it engaged in racketeering activity, and that it engaged in or its activities affected interstate commerce, as I have already explained those concepts to you.

Second, that the defendant committed murder; and

Third, that the defendant's general purpose in committing this offense was to gain entrance to the enterprise or to maintain or increase his position in the enterprise.

## REQUEST NO. 29.

**Count Three: Murder in Aid of Racketeering — Second Element (Murder)**

I have already instructed you on murder under New York law, and you should apply those instructions here.

## <u>REQUEST NO. 30.</u>

**Count Three: Murder in Aid of Racketeering —Third Element**
**(Purpose to Gain Entrance or Maintain or Increase Position)**

I have already instructed you with respect to the defendant's purpose, and you should

apply those instructions here.

## REQUEST NO. 31.

**Count Three: Murder in Aid of Racketeering—Aiding & Abetting and Pinkerton**

A defendant is guilty of murder in aid of racketeering even if he himself did not commit that act if he aided and abetted it or if *Pinkerton* (also known as co-conspirator) liability applies.

As I have previously instructed you, aiding and abetting liability means that a defendant can be found guilty if the Government proves that the defendant aided and abetted another person who committed the charged offense. I have already instructed you on federal aiding and abetting law, and you should follow those instructions here.

*Pinkerton* liability—that is, the theory under which a defendant who is a member of a conspiracy may be held liable for a crime committed by a co-conspirator. *Pinkerton* liability should be considered by you in connection with Count Three only if you do not find the defendant you are considering personally committed or aided and abetted the commission of that offense.

If you find that a defendant was a part of the RICO conspiracy charged in Count One— that is, if you find that the Government has proven beyond a reasonable doubt the elements as to Count One—then you may but are not required to find that defendant liable for a substantive offense—meaning the offenses charged in Count Three—committed by a co-conspirator, provided that the Government has proven the following elements beyond a reasonable doubt:

First, that a crime charged in the substantive count you are considering was committed;

Second, that the person or persons you find actually committed the crime were members of the RICO conspiracy charged in Count One;

Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

<u>Fourth</u>, that the defendant was a member of the conspiracy at the time the substantive crime you are considering was committed (that is, had entered into the conspiracy); and

<u>Fifth</u>, that the defendant could reasonably have foreseen that the substantive crime you are considering might be committed by his co-conspirators.

If you find that the Government has proven all five of these elements beyond a reasonable doubt, then you may find that defendant guilty of a substantive offense charged against him, even if he did not personally participate in the acts constituting the crime, and even if he did not have actual knowledge of it.

## REQUEST NO. 32.

**Count Four: Assault and Attempted Murder in Aid of Racketeering—Elements**

Count Four charges TERRENCE CALDWELL with assaulting and attempting to murder Enzo Stagno in aid of the activity of La Cosa Nostra.  In order to find the defendant guilty of Count Four, the Government must establish beyond a reasonable doubt each of the following elements:

First, that the enterprise charged in Count One existed, that it engaged in racketeering activity, and that it engaged in or its activities affected interstate commerce, as I have already explained those concepts to you.

Second, that the defendant committed assault with a deadly weapon or committed attempted murder; and

Third, that the defendant's general purpose in committing this offense was to gain entrance to the enterprise or to maintain or increase his position in the enterprise.

**REQUEST NO. 33.**

**Count Four: Assault and Attempted Murder in Aid of Racketeering — Second Element**
**(Assault & Attempted Murder)**

Assault With A Dangerous Weapon

Under New York State law, a person is guilty of assault with a dangerous weapon if the Government proves beyond a reasonable doubt:

First, that the perpetrator intended to cause physical injury to another person; and

Second, that in accordance with that intent, the perpetrator caused physical injury to that person by means of a dangerous weapon.

Under the assault statute, a person intends to cause physical injury to another person when his conscious objective is to cause physical injury to another person. "Physical injury" means impairment of a person's physical condition or substantial pain.

A "dangerous weapon" is any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged. For a firearm to be considered a "deadly weapon," it must be loaded and operable, although there is no requirement that the defendant knew it was loaded or operable at the time he possessed it. Loaded means that the firearm is loaded with ammunition that may be used to discharge such firearm.

A "dangerous instrument" is any instrument, article, or substance that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or other serious physical injury, although death or other serious physical injury need not, in fact, be caused.

Attempted Murder

Under New York State law, a person is guilty of attempted murder if the Government proves beyond a reasonable doubt:

<u>First</u>, that the perpetrator intended to kill another person; and

<u>Second</u>, that the perpetrator attempted to cause the death of that person, meaning that the perpetrator engaged in conduct which tended to effect the death of another person.

Under New York law, you may only find that a person attempted to commit a crime if you find that he was on the verge of actually committing it. Mere preparation is not sufficient. The acts committed by the person must be those acts that are required to carry the project forward within dangerous proximity of the criminal end to be attained.

## REQUEST NO. 34.

**Count Four: Assault and Attempted Murder in Aid of Racketeering —Third Element
(Purpose to Gain Entrance or Maintain or Increase Position)**

I have already instructed you with respect to the defendant's purpose, and you should

apply those instructions here.

## **REQUEST NO. 35.**

**Count Four: Assault and Attempted Murder in Aid of Racketeering—Aiding & Abetting and Pinkerton**

A defendant is guilty of assault with a dangerous weapon and attempted murder in aid of racketeering even if he himself did not commit those acts if he aided and abetted them or if *Pinkerton* liability applies. You should apply my previous instructions on aiding and abetting and *Pinkerton* liability here.

## REQUEST NO. 36.

**Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering—Elements**

Count Five charges STEVEN L. CREA with attempting to assault and to murder Carl Ulzheimer, and aiding and abetting the same, in aid of the activity of La Cosa Nostra.  In order to find the defendant guilty of Count Five, the Government must establish beyond a reasonable doubt each of the following elements:

<u>First</u>, that the enterprise charged in Count One existed, that it engaged in racketeering activity, and that it engaged in or its activities affected interstate commerce, as I have already explained those concepts to you.

<u>Second</u>, that the defendant committed attempted assault with a deadly weapon or attempted murder; and

<u>Third</u>, that the defendant's general purpose in committing this offense was to gain entrance to the enterprise or to maintain or increase his position in the enterprise.

## REQUEST NO. 37.

### Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering — Second Element (Assault & Attempted Murder)

Attempted Assault With a Dangerous Weapon

Under New York State law, a person is guilty of attempted assault with a dangerous weapon if the Government proves beyond a reasonable doubt:

First, that the perpetrator intended to cause physical injury to another person by means of a dangerous weapon; and

Second, that the perpetrator attempted to cause physical injury to another person by means of a dangerous weapon, meaning that the perpetrator engaged in conduct which tended to effect such injury.

Attempted Murder

I have already instructed you on attempted murder, and you should apply those instructions here.

## REQUEST NO. 38.

**Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering —Third Element
(Purpose to Gain Entrance or Maintain or Increase Position)**

I have already instructed you with respect to the defendant's purpose, and you should

apply those instructions here.

## REQUEST NO. 39.

**Count Five: Attempted Assault and Attempted Murder in Aid of Racketeering—Aiding & Abetting and Pinkerton**

A defendant is guilty of attempted assault with a dangerous weapon and attempted murder in aid of racketeering even if he himself did not commit those acts if he aided and abetted them or if *Pinkerton* liability applies. You should apply my previous instructions on aiding and abetting and *Pinkerton* liability here.

## **REQUEST NO. 40.**

### **Counts Eight and Nine: Firearms Offenses—General Instructions**

I'm going to skip Counts Six and Seven for a moment.  Counts Eight and Nine allege

violations of Section 924(c) of Title 18 of United States Code, which provides that:

> any person who, during and in relation to any crime of violence or
> drug trafficking crime . . . for which the person may be prosecuted
> in a court of the United States, uses or carries a firearm, or who, in
> furtherance of any such crime, possesses a firearm, shall [be guilty
> of a crime].

## REQUEST NO. 41.

### Count Eight: Firearms Offense—Elements

Count Eight charges TERRENCE CALDWELL with knowingly using and carrying a firearm during and relation to the assault and attempted murder of Enzo Stagno charged in Count Four.  This means that if you find CALDWELL is not guilty of the assault or attempted murder in Count Four, then you cannot consider Count Eight.

To find that CALDWELL committed the firearms offense charged in Count Eight, the Government must prove beyond a reasonable doubt each of the following elements:

First, that on or about the date alleged in the Indictment, the defendant used or carried or possessed a firearm;

Second, that on that occasion, the defendant used or carried the firearm during and in relation to a crime of violence, or possessed the firearm in furtherance of that crime; and

Third, that the defendant acted knowingly.

## REQUEST NO. 42.

**Counts Eight: Firearms Offense—First Element ("Using," "Carrying," or "Possessing")**

The first element the Government must prove beyond a reasonable doubt for Count Eight is that on or about the date set forth in the Indictment, the defendant used or carried or possessed a firearm.

### "Firearm"

A firearm under Section 924(c) means "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Common sense tells you that a gun meets the statutory definition of a firearm. It does not matter whether the gun was loaded or operable at the time of the crime.

### "Use"

"Use" of a firearm means an active employment of the firearm by the defendant. This does not mean that the defendant must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon. Brandishing, displaying, or even referring to the weapon so that others present know that the defendant has the firearm available if needed all constitute use of the firearm. But the mere possession of a firearm at or near the site of the crime without active employment as I just described it is not sufficient to constitute use of the firearm.

### "Carry"

"Carrying" a firearm is different from "using" it. While "use" requires active employment of a firearm, "carrying" does not. A person "carries" a firearm when he knowingly holds, moves, conveys, or transports it in some manner on his person, in a bag or other container, or in his vehicle.

### "Possess"

Possession of a firearm means that the defendant either had physical possession of the firearm on his person or that he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the firearm. Mere presence in a place where a firearm is located is not enough. A person need not have physical custody of an object to be in legal possession of it, so long as he has the ability to exercise substantial control over an object and the intent to exercise such control, and the firearm is immediately available to him. More than one person can have control over the same firearm. The law recognizes that possession may be sole or joint.

## REQUEST NO. 43.

### Counts Eight: Firearm Offense—Second Element (During and in Relation to a Crime of Violence)

The second element that the Government must prove beyond a reasonable doubt is that the defendant used or carried a firearm during and in relation to a crime of violence or possessed a firearm in furtherance of such a crime. Each of the violent crimes in aid of racketeering charged in Counts Three, Four, and Five qualifies as a crime of violence.

The phrase "during and in relation to" should be given its ordinary meaning.

"Possessed a firearm in furtherance of a crime" requires both that the defendant had possession of the firearm – either physically or because it was within his dominion and control – and that such possession helped forward, advance, or promote the commission of the crime, or was an integral part of the crime. The mere possession of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have played some essential part in furthering the crime for this element to be satisfied on the basis of the defendant's possession of the firearm.

## REQUEST NO. 44.

### Count Eight: Firearm Offense—Third Element (Knowingly)

The final element the Government must prove beyond a reasonable doubt on the firearms count alleged in Count Eight is that the defendant knew that he was using, carrying, or possessing a firearm during and in relation to the underlying crime, or knew that he was possessing a firearm in furtherance of the underlying crime, and that he acted unlawfully and knowingly in doing so. I have already defined "unlawfully" and "knowingly."

To satisfy this element, you must find that the defendant had knowledge that what he was carrying or using or possessing was a firearm as that term is generally used. The Government must also prove that the defendant knew what he was doing – that he knew that he was carrying or using a firearm during and in relation to the commission of acts that constitute a crime of violence. It is not necessary, however, for the Government to prove that the defendant knew that he was violating any particular law.

## REQUEST NO. 45.

### Count Eight: Firearm Offense—Third Element (Brandish/Discharge)

If you find TERRENCE CALDWELL guilty on Count Eight, then you must indicate in the space provided on the verdict form whether you find that the Government has proven beyond a reasonable doubt that the defendant is responsible for brandishing and/or discharging a firearm during the use, carrying, or possession of the firearm. Your finding as to the fact you are considering must be unanimous in the sense that all of you must agree that the defendant is responsible for brandishing and/or discharging a firearm. You must unanimously agree as to the fact you are considering.

"Brandish" means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, to intimidate that person, regardless of whether the weapon was directly visible to that person. The weapon does not have to be directly visible, but it must be present.

To "discharge" means to fire or shoot, whether intentionally or accidentally.

**REQUEST NO. 46.**

**Count Nine: Firearms Offense—Aiding and Abetting and *Pinkerton***

A defendant may be found guilty of violating Section 924(c) under an aiding and abetting theory or under a *Pinkerton* theory.  It is under those theories that Count Nine charges STEVEN L. CREA with the use, carrying, and possession of a firearm during and relation to the attempted assault and attempted murder of Carl Ulzheimer charged in Count Five.  This means that if you find CREA is not guilty of Count Five, then you cannot consider Count Nine.

I have previously described abetting and *Pinkerton* liability and you should follow those instructions here, with the following additional instructions on aiding and abetting a firearms offense.

To convict the defendant of aiding and abetting the firearms offense charged in Count Nine, you must find that the defendant facilitated either the use, carrying, or possession of the firearm or the commission of the attempted assault and attempted murder of Carl Ulzheimer charged in Count Five. It is not necessary that the defendant facilitate both the possession, use, or carrying of the firearm and the crime of violence.

To convict the defendant of the firearms offense charged in Count Nine on an aiding and abetting theory, you must also find that the defendant had advance knowledge that a participant in the crime of violence would use, carry, or possess a firearm in furtherance of that crime. Advance knowledge means knowledge at a time when the defendant can attempt to alter the plan or withdraw from it. Knowledge of the gun may, but does not have to, exist before the underlying crime is begun. It is sufficient if the knowledge is gained in the middle of the underlying crime, so long as the defendant continues to participate in the crime and has a realistic opportunity to withdraw from it. You may, but need not, infer that the defendant had

sufficient foreknowledge if you find that the defendant continued his participation in the crime after learning about the use, carrying, or possession of a gun by a co-conspirator.

In other words, as to aiding and abetting the offense charged in Count Nine, the Government must prove beyond a reasonable doubt that the defendant facilitated either the use, carrying, or possession of the firearm or the commission of the charged crime of violence, and had knowledge of the firearm when he still had a realistic opportunity to withdraw from the crime of violence.  Note that "advance knowledge" is not required with respect to a *Pinkerton* theory.

In applying these instructions, you should follow my previous instructions regarding the terms "use," "carrying," "possession," and "during and in relation to a crime of violence."

## **REQUEST NO. 47.**

### **Count Seven: Murder Using A Firearm—General Instructions**

I will now turn to Count Seven. Count Seven charges MATTHEW MADONNA, STEVEN L. CREA, CHRISTOPHER LONDONIO, and TERRENCE CALDWELL with use of a firearm in connection with the murder of Michael Meldish charged in Count Three.

The Government alleges that CALDWELL is guilty of Count Seven based on a theory of personal liability; that LONDONIO is guilty of Count Seven based on a theory of personal, aiding and abetting, and *Pinkerton* liability; and that MADONNA and CREA are guilty of Count Seven based on aiding and abetting and *Pinkerton* liability.

## REQUEST NO. 48.

### Count Seven: Murder Using A Firearm—Personal Liability

To find a defendant guilty of Count Seven on a theory of personal liability, the Government must prove beyond a reasonable doubt:

First, that the defendant is guilty of participating in the murder of Michael Meldish charged in Count Three;

Second, that the defendant knowingly used or carried a firearm during and in relation to the murder of Michael Meldish charged in Count Three, or possessed a firearm in furtherance of that crime of violence;

Third, that the defendant used the firearm to cause the death of Michael Meldish;

Four, that the death of Michael Meldish qualifies as a murder, as defined under a particular federal statute, Title 18, United States Code, Section 1111.

With respect to the second element—that the defendant knowingly used or carried a firearm during and in relation to the murder, or possessed a firearm in furtherance of that crime of violence, you should apply my previous instructions regarding the terms "use," "carrying," "possession," and "during and in relation to a crime of violence."

With respect to the third element, the defendant's conduct may be found to cause the death of another individual if it had such an effect in producing that individual's death as to lead a reasonable person to regard the defendant's conduct as a cause of death. The death of a person may have one or more than one cause. You need not find that a defendant shot the victim or that he committed the final, fatal act. The Government need only prove that the conduct of the defendant was a substantial factor in causing the victim's death. Another way of putting it is, would a reasonable person regard the defendant's conduct as a cause of death?

Finally, with respect to the fourth element—that that the death of Michael Meldish qualifies as a murder under federal law—murder is defined by 18 U.S.C. § 1111. That law defines murder as "the unlawful killing of a human being, with malice aforethought." A killing is done with "malice aforethought," if it was done consciously with the intent to kill. The Government must prove that the act that caused death was done willfully, with a bad or evil purpose to break the law. However, despite what the words sound like, the Government need not prove spite, malevolence, hatred, or ill will toward the victim in order to prove "malice aforethought."

Adapted from the charge of the Hon. Paul A. Engelmayer in *United States v. Polanco*, 16 Cr. 826 (PAE).

**<u>REQUEST NO. 49.</u>**

**Count Seven: Murder Using A Firearm—Aiding and Abetting and *Pinkerton***

As I said, CHRISTOPHER LONDONIO is charged with Count Seven based not only on a theory of personal liability, but also on aiding and abetting and *Pinkerton* theories. MATTHEW MADONNA and STEVEN L. CREA are charged with Count Seven based on aiding and abetting and *Pinkerton* liability.

I have previously described aiding and abetting and *Pinkerton* liability for firearms offenses and you should follow those instructions here.

## REQUEST NO. 50.

### Count Six: Conspiracy to Distribute Controlled Substances—Elements

Count Six of the Indictment charges CHRISTOPHER LONDONIO with conspiracy to distribute and to possess with intent to distribute marijuana and oxycodone.  I have already the law governing the distribution of controlled substances in connection with the RICO conspiracy.

In order to find the defendant guilty of Count Six, you must find that the Government has proven beyond a reasonable doubt each of the following two elements:

First, that the conspiracy charged in Count Six existed.  That is, that from in or about 2011 up to and including on or about May 2017, there was agreement or understanding among two or more persons to unlawfully, intentionally, and knowingly distribute, or possess with the intent to distribute, controlled substances—here, here, a quantity of marijuana and oxycodone;

Second, that the defendant unlawfully, intentionally, and knowingly became a member of the conspiracy, that is, he knowingly joined in the conspiracy, and intentionally participated in it.

## REQUEST NO. 51.

**Count Six: Conspiracy to Distribute Controlled Substances—First Element**

I have already instructed you regarding finding the existence of a conspiracy, and you should apply those instructions here.

The object of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve. Here, it is the distribution or possession with intent to distribute controlled substances.  I have already instructed you on the law governing the distribution of controlled substances in connection with the RICO conspiracy charged in Count One, and you should follow those instructions here.

<u>**REQUEST NO. 52.**</u>

**Count Six: Conspiracy to Distribute Controlled Substances—Second Element**

If you conclude that the Government has proven beyond a reasonable doubt that the conspiracy you are considering existed, and that the conspiracy had as its object one of the illegal purposes charged in the Indictment, then you must next determine whether the defendant intentionally participated in that conspiracy with knowledge of its unlawful purposes, and with the intent to further its unlawful objectives.

The Government must prove beyond a reasonable doubt that the defendant knowingly and intentionally entered into the conspiracy with criminal intent – that is, with a purpose to violate the law – and that he agreed to take part in the conspiracy to promote and cooperate in its unlawful objectives.

## REQUEST NO. 53.

### Count Ten: Attempted Escape—Elements

Count Ten of the Indictment charges CHRISTOPHER LONDONIO with attempted escape from the Metropolitan Detention Center.

In order to meet its burden of proof, the Government must prove beyond a reasonable doubt each of the following elements:

First, that the defendant was in custody in an institution or facility in which he was confined pursuant to a lawful arrest on a felony charge;

Second, that the defendant attempted to leave custody without permission; and

Third, that the defendant knew he did not have permission to leave federal custody.

"Custody" is defined as the detention of an individual's person by virtue of lawful authority.

1 Modern Federal Jury Instructions-Criminal P 28.01 (2019)

In submitting these requests to charge, the Government reserves the right to submit additional or modified requests at or near the close of evidence.


Dated: White Plains, New York
       September 6, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:    __/s/_____
       Celia V. Cohen
       Hagan Scotten
       Alexandra Rothman
       Assistant United States Attorneys