

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

June 1, 2020

**BY ECF**
The Honorable Cathy Seibel
United States Courthouse
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re:    **United States v. Matthew Madonna, et al.,**
               **17 Cr. 89 (CS)**

Dear Judge Seibel:

     The Government respectfully submits this letter in connection with the sentencing of defendants Matthew Madonna, Steven L. Crea, Christopher Londonio, and Terrence Caldwell, currently scheduled for June 18, 2020 at 9:30 a.m.[1] Consistent with the mandatory sentences that apply in this case, the recommendation of the United States Probation Office ("Probation"), the United States Sentencing Guidelines (the "Guidelines"), and the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), the Court should impose the sentence of life imprisonment plus five years on Madonna, Crea, and Londonio, and life imprisonment plus fifteen years on Caldwell, as required by statute, and where the Court has discretion, should impose additional terms of imprisonment consistent with the recommendation of Probation.

    **I.**    **Background**

     Having presided over this trial and the guilty pleas of 14 co-defendants prior to trial, the Court is familiar with the facts of this case. Madonna, Crea, Londonio, and Caldwell were members of or associated with the Luchese Family of La Cosa Nostra ("LCN"), also known as the mafia. Madonna was the Acting Boss of the Luchese family, and Crea was its Underboss. As such, both were members of the "administration," the leadership at the top of the Family, with Madonna holding the highest position and Crea holding the second-highest position. Londonio was an associate and then soldier in the Luchese family, and Caldwell was a longtime associate of the Luchese family.

     The Luchese Family routinely used violence and the threat of violence to make money and maintain power. As the Government proved at trial, in 2013, Madonna and Crea ordered the murder of longtime Luchese associate Michael Meldish, after Meldish had disrespected Madonna by failing to collect money that Madonna and Meldish had lent. Acting on those orders, on November 15, 2013,

---

[1]    Simultaneously with the filing of this sentencing submission, the parties have asked the Court to adjourn sentencing for up to 60 days so that sentencing can proceed with the defendants in the courtroom in light of COVID-19 safety concerns.

Hon. Cathy Seibel
June 1, 2020
Page **2** of **7**

Londonio enlisted the help of Caldwell, who killed Meldish in an execution-style murder with one bullet directly to Meldish's head. Londonio and Caldwell then fled the scene together.

Several months earlier, on May 29, 2013, at Meldish's direction, Caldwell tried to murder Bonanno soldier Enzo Stagno by shooting him in his car in broad daylight on a busy Manhattan street. Fortunately, the bullets from Caldwell's gun only grazed Stagno in the chest. In addition, in late 2012, Crea ordered that Bonanno associate Carl Ulzheimer be killed, after Ulzheimer had disrespected Crea at the Coddington Club, the Luchese social club. Crea passed the order to his son, Steven D. Crea, a captain in the family, who enlisted Luchese soldier Paul Cassano and associate Vincent Bruno to commit the murder. Cassano and Bruno twice went to Ulzheimer's house with a gun, but fortunately Ulzheimer did not open the door for his visitors.[2]

In addition to these acts of violence, the defendants committed a host of other crimes, including extortion, gambling, fraud, robbery, assault, witness tampering, selling stolen cigarettes, and drug trafficking. Because the Court presided over this trial, the Government will not again detail the extensive evidence regarding each of these crimes. (*See* Tr. 4319-44 (Government closing on these subjects).)

For these actions, the defendants were tried and convicted of conspiracy to commit racketeering as part of the Luchese Family (Count One); conspiracy to commit murder in aid of racketeering, and murder in aid of racketeering in connection with the murder of Michael Meldish (Counts Two and Three); and the use of a firearm in connection with the Meldish murder (Count Seven). In addition, Londonio was convicted of narcotics conspiracy (Count Six), and Caldwell was convicted of a violent crime in aid of racketeering for the attempted murder of Enzo Stagno (Count Four), and the use of a firearm in connection with the attempted murder of Stagno (Count Eight).

As correctly calculated in the Presentence Investigation Reports (Dkt. Nos. 956, 960, 961, 963), the sentence recommended by the Guidelines and the mandatory minimum sentence is life imprisonment, followed by a term of five years in prison for Madonna, Crea and Londonio, and fifteen years in prison for Caldwell. Probation recommends, and the Government agrees, that the Court should impose the following sentences on the defendants on each count of conviction:

|  | Ct. 1 | Ct. 2 | Ct. 3 | Ct. 4 | Ct. 6 | Ct. 7 | Ct. 8 |
|---|---|---|---|---|---|---|---|
| **Madonna** | Life | 10 years | Life | - | - | 5 years consecutive | - |
| **Crea** | Life | 10 years | Life | - | - | 5 years consecutive | - |
| **Londonio** | Life | 10 years | Life | - | 10 years | 5 years consecutive | - |

---

[2]  The Government acknowledges that Crea was acquitted of this conduct at trial. Nevertheless, the Government submits that the evidence at trial was sufficient to prove, at least by a preponderance, that Crea ordered the Ulzheimer attempted murder. (Tr. 3632:24—3633:12; 3790:7—3792:12; 3800:1—3801:13; GX 735A). Regardless, however, of whether the Court finds that Crea ordered this attempted murder, his Guidelines sentence for racketeering conspiracy would remain life imprisonment, based on the murder of Michael Meldish and Crea's criminal history.

| **Caldwell** | Life | 10 years | Life | 20 years | - | 5 years consecutive | 10 years consecutive |

The defendants principally argue the following in advance of sentencing: Madonna asks the Court for a sentence "significantly below the applicable advisory Guidelines range, and which does not involve extensive additional imprisonment," arguing, among other things, that the mandatory life sentence required by Count Three violates the Eighth Amendment's prohibition of cruel and unusual punishment. (Madonna Ltr. 11-21). Londonio similarly asks the Court to declare the mandatory life sentence on Count Three unconstitutional and instead sentence him to 30 years' imprisonment. (Londonio Ltr. 5). Crea concedes that the Court must sentence him to life imprisonment on Count Three but objects to the Guidelines calculation. (Crea Ltr. 5-6). Caldwell also concedes that he faces a mandatory sentence of life plus fifteen years, but argues that such a sentence is more than sufficient to achieve the purposes of sentencing given Caldwell's history and characteristics. (Caldwell Ltr. 1).

## II. Discussion

### A. A Mandatory Sentence of Life Imprisonment On Count Three Is Constitutional

Madonna and Londonio both argue that a sentence of life imprisonment on Count Three would violate the Eighth Amendment's prohibition on cruel and unusual punishment. As set forth below, these arguments are foreclosed by Supreme Court and Second Circuit precedent and should be rejected.

Madonna argues that a sentence of life imprisonment as applied to him—an 84-year-old man with a deteriorating neurological condition and certain physical impairments—violates the Eighth Amendment, citing to *Graham v. Florida*, 560 U.S. 48 (2010), in which the Supreme Court held that a sentence of life without the possibility of parole for a juvenile convicted of a non-homicide offense was unconstitutional. However, the Supreme Court has been clear that the Eighth Amendment does not require an individualized sentencing determination for adults in non-death penalty cases. *See Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) ("Petitioner asks us to extend this so-called 'individualized capital-sentencing doctrine' to an 'individualized mandatory life in prison without parole sentencing doctrine.' We refuse to do so."); *see also Miller v. Alabama*, 567 U.S. 460, 481 (2012) ("So if (as *Harmelin* recognized) 'death is different,' children are different too . . . . Our ruling thus neither overrules nor undermines nor conflicts with *Harmelin*."); *United States v. Gonzalez*, 922 F.2d 1044, 1052 (2d Cir. 1991) ("[T]he Eighth Amendment does not compel individualized assessment of a defendant facing a mandatory sentence of life imprisonment without parole."). Rather, "[t]he Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime." *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003). Thus, Madonna's and Londonio's challenges to the mandatory life sentence as required by 18 U.S.C. § 1959(a)(1) should be rejected.

Here, the Second Circuit's recent decision in *United States v. Sierra*, 933 F.3d 95 (2d Cir. 2019), is instructive. In *Sierra*, three adults – ages 18 to 22 years old – challenged the imposition of a mandatory life sentence after being convicted of murder in aid of racketeering—the same offense as here. In rejecting arguments from the defendants that the Circuit should extend the Supreme Court's decision in *Miller* (which prohibited mandatory life sentences for juveniles) to individuals over the age of eighteen, the Circuit reaffirmed the principle that "the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences." *Sierra*, 933 F.3d at 97. In other words, for

defendants over the age of eighteen—as Madonna and all defendants are—a mandatory life sentence does not run afoul of the Eighth Amendment.

Madonna also seems to be arguing that the imposition of a life sentence in this case would be grossly disproportionate to the crime committed. This argument should be swiftly rejected. Madonna—a grown man and the Acting Boss of the Luchese Family—ordered the cold-blooded execution of Luchese associate Michael Meldish. And because Madonna gave this order, Caldwell and Londonio brought Meldish to the Bronx on the night of November 15, 2013, and as Meldish was exiting his car, Caldwell pulled out a gun and shot him straight in the head, killing him instantly. It is difficult to contemplate a crime more serious than this.[3] Moreover, as the Supreme Court has recognized, this life sentence does not become grossly disproportionate just because it is mandatory. *See Harmelin*, 501 U.S. at 995 ("There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is mandatory.") (internal citations and quotations omitted); *see also Sierra*, 933 F.3d at 98 (affirming imposition of mandatory life sentence for murder in aid of racketeering). Thus, Madonna's Eighth Amendment challenge should be rejected.

Moreover, if there will ever be a case that calls *Harmelin* into question, this is not it. Madonna killed a man in 1954. (PSR ¶ 47). Benefitting from the sort of "reformed" approach to sentencing that he now urges, he was released in 1968. (*Id.*). He then went on to join a massive heroin distribution conspiracy. (PSR ¶ 48). According to his own counsel, this conspiracy "resulted in the addiction of tens of thousands of people, untold number of overdose deaths, theft, and prostitution to which junkies resorted to feed their drug habits" leading to "the multi-generation devastation of an entire community." (Madonna MIL Opp., at 6-7). After being imprisoned for that crime, he was again released from prison, and became the acting head of an organized crime syndicate, where he again committed murder. Defendants like Madonna, in short, are the reason Congress believed mandatory life sentences are necessary.

For similar reasons, the Court should reject Londonio's arguments regarding the Eighth Amendment. Londonio essentially claims that a mandatory life sentence is unconstitutional because such a sentence fails to account for his personal characteristics, including his ability to be rehabilitated. However, as noted above, the Supreme Court in *Harmelin* held that an individualized sentencing determination is not required for adults in non-death penalty cases. *Harmelin*, 501 U.S. at 995. Thus, the Court should reject Londonio's challenge to the imposition of a mandatory life sentence on Count Three.

---

[3] That the jury was charged on a *Pinkerton* theory of liability is irrelevant. *See Sierra*, 933 F.3d at 98-99 (affirming mandatory life sentence for defendant convicted of murder on *Pinkerton* theory in light of Supreme Court precedent in *Harmelin*). As are Meldish's personal characteristics. In this regard, the Court should reject Madonna's suggestion that Meldish's murder was justified or any less deplorable because of Meldish's reputation for violence. (*See* Madonna Ltr. 21 n.10 (noting Meldish's "penchant and reputation for violence presented an authentic threat to Madonna's safety")). Whatever Meldish's reputation, there was no evidence the Meldish had any intent to attack Madonna. At most, Meldish suggested that if Madonna came for him, there would be a fight. That is hardly a justification to have Meldish assassinated.

### B. The PSR Correctly Calculates the Guidelines Using Section 2A1.1 For First-Degree Murder

The Court should also reject Crea's challenge to the calculation of the Guidelines.[4] Crea argues that the Court should use the second-degree murder Guidelines, U.S.S.G. § 2A1.2, not the first-degree murder Guidelines, § 2A1.1, for the Meldish murder because the Court charged *Pinkerton* liability stemming from the racketeering conspiracy charged in Count One and therefore the Meldish murder was not premeditated or intentional. Under Crea's calculation, the base offense level would be 38, not 43 as calculated in the PSR. This argument should be rejected.

As an initial matter, this argument is based on the assumption that the jury convicted Crea (and Madonna) of murder in aid of racketeering on a *Pinkerton* theory of liability. However, there was more than sufficient evidence at trial for the jury to conclude that Madonna ordered the Meldish murder, and that Crea passed the order down the chain of command, making its way to Londonio, the soldier tasked with executing the murder. (*See, e.g.*, Tr. 1018:7-12 (SA Carillo testimony that "[a]n approved murder can only be made, the final decision is by the boss or the acting boss"); Tr. 1021:2-4, 1216:23-25 (SA Carillo testimony that he had never heard of any "murder ordered by the boss . . . where the underboss was not also involved); Tr. 1839:11-21 (Spinelli testimony regarding Madonna and Crea's involvement in the Meldish murder); Tr. 2990:5-23 (Evangelista testimony that "Stevie [i.e., Crea] gave the order" to kill Meldish); Tr. 2989:14-19 (Evangelista testimony that Meldish was killed because "he disrespected the boss"); Tr. 2518:2—2519:21 (Bash testimony regarding phone call between Meldish and Madonna after which Meldish told Bash, in sum and substance, that Meldish was collecting money for Madonna).

In any event, even if the jury had convicted Crea and Madonna on a *Pinkerton* theory of liability, Section 2A1.1 would still be the correct Guideline. To start, the Court—not the jury—finds the relevant facts for purposes of calculating the applicable Guidelines. *See United States v. Johnson*, 762 F. App'x 21, 24 (2d Cir. 2019) (citing *United States v. Garcia*, 413 F.3d 201, 220 n.15 (2d Cir. 2005)). For the reasons stated in the preceding paragraph, this Court should find that Crea and Madonna directly ordered Meldish's murder.

If, however, the Court believes that Crea or Madonna (or both) were liable only on a *Pinkerton* theory, Section 2A1.1 would nonetheless apply. The Guidelines provide that, in the case of a violation of Section 1959(a)(1), Section 2E1.3 of the Guidelines applies. Section 2E1.3(a)(2), in turn, directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity—here, the premeditated murder of Michael Meldish. And Section 2A1.1 of the Guidelines applies in the case of a "premediated killing." U.S.S.G. § 2A1.1, app note 1. That Crea and Madonna may have been convicted on the basis of *Pinkerton* liability is irrelevant. *See United States v. Diaz*, 176 F.3d 52, 123-24 (2d Cir. 1999) (affirming the use of Section 2A1.1 for murders the defendant was found to have committed based on a *Pinkerton* theory of liability); *see also United States v. Salameh*, 261 F.3d 271, 279-80 (2d Cir. 2001) (affirming use of Section 2A1.1 to calculate guidelines for defendant where court instructed the jury that defendant could be convicted under *Pinkerton* liability). Thus, the Court should reject this challenge to the calculation of the Guidelines.

---

[4] Madonna joins in Crea's challenge to the Guidelines calculation.

      C. <u>The Court Should Impose the Mandatory Sentence Required by Statute, and Where the Court Has Discretion, Should Impose Additional Terms of Imprisonment Consistent With the Recommendation of Probation.</u>

In light of the nature and circumstances of the defendants' crimes, as well as the defendants' history and characteristics and the remaining factors set forth in 18 U.S.C. § 3553(a)(2), the Court should impose the mandatory sentences of life plus five or fifteen years, as required by statute, and where the Court has discretion, should impose additional terms of imprisonment consistent with the recommendation of Probation.

*First*, the nature and circumstances of the offense justify sentences of life imprisonment plus additional years in prison. As the Court has previously recognized, the mafia is a "despicable organization" that "does a tremendous amount of harm in the community." (Sent. Tr. of J. DiNapoli at 29). Madonna and Crea were the top two members in this organization, getting rich and profiting from the dirty work and acts of violence of their soldiers and associates. Madonna may not have been in the car with Londonio or Caldwell when Caldwell shot and killed Meldish but, as the evidence at trial established, the order to kill Meldish came from Madonna's mouth. Likewise, Madonna was not traveling to different construction jobs to collect the coffee-boy money but that money, in its manila envelope, always found its way to Madonna's pocket. The same is true for Crea. He ordered others to commit acts of violence on his behalf—whether against his former son-in-law, Edward Davidson, or Bonanno associate Carl Ulzheimer. Crea also took a hands-on approach to financial crimes—participating directly in construction fraud at the Bronx-Lebanon Hospital Center construction project and extorting Luchese associate Joseph Datello.

Londonio was an associate and then soldier in the Luchese family. His actions made money for the family, and his loyalty to this organization caused him to, among other things, beat Thomas Minervino with a baseball bat while Minervino cried for mercy and then later brag about doing so, extort Elliot Hurdy with threats of extreme violence, plan robberies, and most heinously, arrange for the cold-blooded murder of Luchese associate and friend Michael Meldish, and then drive the getaway car away from the murder.

Caldwell was the brazen and ruthless triggerman for the family. Called upon not once by twice to kill for the Luchese family, Caldwell agreed to murder mob rival, Enzo Stagno, in broad daylight on a busy Manhattan street, and then his friend, Meldish, on a quiet residential street in the Bronx. Fortunately, Caldwell's bullets only grazed Stagno. Of course, Meldish was not so lucky. Nor were these standalone events, as evinced by Caldwell riding along with Meldish, Londonio and others, armed and looking for Bonanno associates to abduct and assault more than a year before the Stagno shooting. The seriousness of Caldwell's actions are self-evident—he killed Meldish and tried to kill Stagno because of his affiliation with the Luchese family.

*Second*, the history and characteristics of each defendant justify sentences of life imprisonment plus additional years in prison. Madonna, Crea and Caldwell have lengthy criminal histories going back decades. Each has served significant terms of imprisonment and then, upon release, returned to a life of crime. With respect to Madonna and Crea, their criminal histories reflect past convictions for racketeering activity in connection with the Luchese Family. In other words, Madonna and Crea are unrepentant mobsters with a perpetual loyalty to the mafia that not even prison can break.

Londonio admittedly has a shorter criminal history but that is only because he is much younger than his co-defendants and was arrested earlier in his tenure with the Luchese Family than his co-defendants.  Through his actions, both before trial and at trial, Londonio has demonstrated an intense loyalty to the mafia, even going so far as to perjure himself by submitting a false affidavit claiming, among other things, that he "did not participate in nor commit the murder of Michael Meldish" and that he "had never spoken to Seven L. Crea about any criminal activity." (Dkt. No. 888-1.) The only plausible explanation for these lies are that they were a last ditch effort to save Crea, his Underboss, from likely conviction.  Thus, despite Londonio's claims that he was willing to accept responsibility and plead guilty, Londonio's actions demonstrate the opposite is true and that he has maintained his allegiance to the Luchese Family.

*Third*, the remaining Section 3553(a)(2) factors justify a sentence of life imprisonment plus additional years in prison.  With respect to the mafia—an organization whose members disregard the laws of this country—there is a great need for the sentence imposed to promote respect for the law and deter other individuals from engaging in similar racketeering activity.  Likewise, given the criminal histories of the defendants, there is also a need to incapacitate these defendants in order to protect the public from future crime.  This is as true for Londonio as it is for Caldwell, Crea, or Madonna, who despite their advanced ages, have never lived a law-abiding life and can give the Court no assurance that they will do so now.  In other words, despite arguments that the defendants are unlikely to engage in future criminal conduct given their advanced age or poor health conditions, this is not a mitigating factor. If anything, the fact that Madonna, Crea and Caldwell are older and still committing the most serious of all crimes—i.e., murder—justifies a lengthier sentence.  Each of these men took part in a coldly planned, premeditated murder, and did so as part of a way of life.  This Court should impose the maximum allowable sentences, not only on the counts were the statute requires doing so, but on the discretionary counts where the Guidelines, the Probation Office, and the Section 3553(a) factors all urge that result.

## Conclusion

For all the forgoing reasons, the Government respectfully submits that consistent with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), the Court should impose on the defendants the mandatory minimum sentence of life plus five or fifteen years, as required by statute, and where the Court has discretion, should impose additional terms of imprisonment consistent with the recommendation of Probation.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by:   ___/s/_____
Alexandra N. Rothman
Celia V. Cohen
Hagan Scotten
Assistant United States Attorneys
(212) 637-2580