```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4                              Case No. 17-cr-89
 5      -vs-

 6  MATTHEW MADONNA, et al.

 7                          Defendants.

 8  ------------------------------------x
 9                              United States Courthouse
                                White Plains, New York
10                              November 13, 2019
                                11:10 a.m.
11

12  Before:
                                HONORABLE CATHY SEIBEL
13                              DISTRICT JUDGE
                                and a jury
14  APPEARANCES

15  GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
    HAGAN SCOTTEN
17  CELIA COHEN
    ALEXANDRA ROTHMAN
18  Assistant United States Attorneys

19  ANDREW PATEL
    JOSHUA DRATEL
20  Attorneys for Defendant, Matthew Madonna

21  JOHN MERINGOLO
    LOUIS FREEMAN
22  NADJIA LIMANI
    Attorneys for the Defendant, Christopher Londonio
23
    ALLAN HABER
24  GEORGE GOLTZER
    YING STAFFORD
25  Attorneys for the Defendant, Terrance Caldwell
```

```
 1  APPEARANCES:   (CONTINUED)

 2  LAW OFFICES OF ANTHONY DiPIETRO
    ANTHONY DiPIETRO
 3  and
    BARRY LEVIN
 4  VALENTIN RODRIGUEZ
    Attorneys for the Defendant, Steven Crea, Sr.
 5
    ALSO PRESENT:
 6
    FBI SPECIAL AGENT TED OTTO
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Trial resumed; jury not present)

2          THE COURT:  We have got two notes.  Just for the

3  record, Court Exhibit 15 is the Bash testimony that was sent in,

4  and Court Exhibit 16 is the Zoccolillo testimony that was sent

5  in.  Court Exhibit 17 came at 10:21.  "Can we please get a copy

6  of Evangelista's testimony in regards to the escape?"

7          Ms. Cohen, am I right that the parties have exchanged

8  their segments and somebody's compiling them or checking them to

9  see if there is any conflict?

10         MS. COHEN:  That's correct, Your Honor.

11         (Court Exhibits 15-18 received in Evidence)

12         THE COURT:  All right.  So I will wait on that.

13         Court Exhibit 18 at 10:45 says, "We would like the

14  testimony of Jonathan White, 10/31, and Timothy Geier 10:24

15  regarding the escape attempt."

16         What's the status of that request?

17         MR. FREEMAN:  Your Honor, the defense's position is

18  that direct and cross for both of the witnesses are relevant and

19  responsive to the jurors' note.

20         MS. COHEN:  The government's position is that there

21  are portions of that testimony that could come out.  We are in

22  the process of putting that proposal together.  I think we will

23  have it momentarily, and it may be that once we identify that

24  for defense counsel, there aren't actually any objections

25  because I do think we largely agree the majority of the

1  testimony is responsive.

2         THE COURT:  All that needs to be done on those is to

3  take out the objections and to reconcile whatever this one thing

4  is.  So why don't you try to do that one thing right now?  Then

5  at least we can get that redaction process going.

6         MS. COHEN:  Sure.

7         THE COURT:  We will go off the record and back on once

8  you talk to the other side.

9         (Recess)

10        THE COURT:  I understand that somebody is preparing

11 the White and Geier transcripts as to which there is no dispute.

12        MR. SCOTTEN:  So White, yes.  Geier, no.  There is

13 actually a fair amount of stuff in Geier that's about the drug-

14 dealing in prison or about corroboration for Evangelista's

15 testimony on the murder; and so we weren't just going to send

16 back all of Geier unless Your Honor really feels we should send

17 anything but the objections back, but it is a little broader

18 than the escape.

19        THE COURT:  I don't know why you wouldn't want that,

20 but --

21        MR. SCOTTEN:  No, no, we are happy to do it if the

22 defense wants to.

23        MR. FREEMAN:  Your Honor, it's hard to respond without

24 actually seeing the line that -- where we are discussing, so --

25        MR. SCOTTEN:  Well --

1            THE COURT:  If -- I can't tell if you are asking me to

2   make a ruling or if you are -- you don't care.

3            MR. FREEMAN:  Oh, we care.

4            MR. SCOTTEN:  We don't care.  We can send back Geier

5   in its entirety.  There certainly will be stuff in there that is

6   only connected to the escape attempt in the sense that it's

7   connected to, you know, Evangelista and Londonio being in MDC,

8   but we can send back all of Geier.  We don't see anything

9   problematic in there.

10           THE COURT:  If the defendants want it all, let's just

11  redact out of White and Geier the objections, if there are any,

12  and send it back.  Unless --

13           MR. FREEMAN:  Your Honor, we need a minute on that

14  issue, and that issue only at this point.

15           THE COURT:  Okay.

16           MR. FREEMAN:  There are parts of the testimony of

17  Geier that we may not want.  We believe they may be the same

18  parts that the government doesn't want.  We just need to find

19  them, and we are working on it right now.

20           MR. SCOTTEN:  To be clear, we are happy to have

21  everything go back.  We just --

22           THE COURT:  So you know what happened is, the defense

23  said they want everything to go back.  The government did what

24  lawyers do and said, oh, they want it all?  Then we don't.  And

25  then when the government said we don't -- then when the

1   government said, okay, we don't care, the defense is like, wait.

2   Maybe we don't want it because the government is agreeing to it.

3           MR. SCOTTEN:  We don't have a view.  We never did.  We

4   just thought -- frankly, Your Honor, we thought when Your Honor

5   said it's all about the escape, we thought, gee, a lot of it's

6   just not about the escape so we shouldn't do it, but we are

7   happy to.  More happy than not.  We are not going to fight

8   either way.

9           THE COURT:  What happened here is that you alerted the

10  defense --

11          MR. SCOTTEN:  That is true.

12          THE COURT:  -- that a lot of it corroborates your

13  witness, and now they don't want it.

14          MR. FREEMAN:  Quite frankly, that's not it.  What the

15  problem is, is that there are four sets of lawyers, and they

16  don't all agree.  So we just need a minute.

17          (Pause)

18          MS. ROTHMAN:  Can we start on Evangelista while that's

19  happening?

20          THE COURT:  Can we?

21          MS. ROTHMAN:  The government is ready.  Ms. Stafford?

22          THE COURT:  Ms. Stafford can work on Geier and White,

23  and Ms. Limani is available for Evangelista; but if Ms. Limani

24  and Ms. Stafford are both necessary, then let's finish what the

25  issues are on Geier and White.

1            MS. LIMANI:  We can proceed with Evangelista.

2            THE COURT:  Okay.  Great.  What are the disputes on

3    Evangelista?

4            MS. ROTHMAN:  So I think, actually, before we go to

5    the lines, I think the biggest dispute is the scope of what

6    should go back.  So the government's view is:  This is about the

7    escape, so conversations with Mr. Londonio about the escape,

8    things that Mr. Evangelista saw about the escape should all go

9    back.

10            Mr. Evangelista reporting it to Agent Geier;

11   Mr. Evangelista speaking about it to the FBI; Mr. Evangelista

12   writing a letter to his attorney don't seem to be covered within

13   the request here, which is the escape.  So that's the initial

14   dispute between the parties, and that plays out in a lot of what

15   you see.

16            Second --

17            THE COURT:  Didn't I sort of rule on this yesterday

18   where -- you know, the -- what -- maybe it was -- maybe it was

19   the day before where the request was -- I forget what it was

20   for.  Maybe it was about Meldish, and I said, well, I think we

21   should include what -- not just what the person observed about

22   Meldish, but conversations the person had about Meldish.

23            MS. ROTHMAN:  Right.  But for example, I think with

24   the Foti situation, I think the Court there didn't include the

25   conversations that Foti had with the FBI or NYPD about

1  Londonio's admissions on the Meldish murder; and I think so by

2  extension, we shouldn't be including -- like, for example, let

3  me give one example.  Whether or not SA Geier was taking notes

4  during a meeting with Evangelista about the escape seems to be

5  far afield from the question of the escape.

6            THE COURT:  No.  That, I agree with.

7            MS. ROTHMAN:  Okay.

8            THE COURT:  But testimony about what he told somebody

9  at SIS about the escape I think would be in.

10           MS. ROTHMAN:  All right.  So then going through it,

11 here is what the parties agree upon and then have disagreements.

12           So the parties agree starting on 2962, line 19 going

13 to 2963, line 13, there is agreement there.

14           THE COURT:  Hold on.

15           MS. ROTHMAN:  Okay.  If the Court is going to take a

16 broader view --

17           THE COURT:  2963 --

18           MS. ROTHMAN:  13.

19           THE COURT:  13.  Yes.  I have read that.

20           MS. ROTHMAN:  If the Court is going to take a broader

21 view, the government would propose including 2967, 5 through 11.

22           THE COURT:  2967, 5 through 11.

23           What's the defendant's position on that?

24           MR. FREEMAN:  We are in agreement.

25           MS. ROTHMAN:  And then also similarly, 2968, 12

PROCEEDINGS                                          4870

1  through 16.

2          THE COURT:  Okay.  What's next?

3          MR. FREEMAN:  Excuse me.  Your Honor, that's about

4  Gio.  It's not about --

5          MS. LIMANI:  It's about Mr. Londonio and Gio saying

6  that it would be easy to escape -- Gio -- because of an old man

7  at the front desk.

8          MS. ROTHMAN:  And in the context of discussing the

9  escape, which is how it starts their conversation, I will just

10 note that the same reason that we proposed the prior section,

11 which is Evangelista talking to Londonio about how he was

12 accidentally released and Londonio saying, "I wish that happened

13 to me."  It should be allowed in for the exact same reason.

14 They should go together.

15         THE COURT:  Sounds right to me.

16         MS. ROTHMAN:  So then the next portion starts on 2970.

17 The parties disagree where this should start.

18         THE COURT:  What's the government's view?

19         MS. ROTHMAN:  We think we should start on line 1, and

20 the defense wants to start on line 25.

21         THE COURT:  And do you agree on where to stop?

22         MS. ROTHMAN:  We do.  2983, line 18, and that includes

23 Evangelista reporting it to Geier, as Your Honor ruled.

24         THE COURT:  All right.  So the dispute is really 2970,

25 1 through 24?

1                MS. ROTHMAN:  Correct.

2                MS. STAFFORD:  Should we start at line 3?  It's in the

3     middle of a question.

4                MS. ROTHMAN:  Oh.

5                MS. LIMANI:  No.  The question starts on 2969, line

6     25.

7                MS. ROTHMAN:  I withdraw what I said.  So I think I

8     would start with the "yes or no."

9                MS. LIMANI:  Your Honor, our position --

10               THE COURT:  I am sorry.  2970, line 1 begins a

11    question.  "During that summer" --

12               MS. ROTHMAN:  Yes, Your Honor.

13               THE COURT:  All right.  Let me just read it.

14               Well, I agree with the government except not lines 15

15    through 19.  That's essentially a sustained objection.

16               MS. ROTHMAN:  That's fine.

17               MR. FREEMAN:  Your Honor, this is about the uncle.

18               THE COURT:  This is about a conversation with Londonio

19    about his uncle's escaping from prison, and it's certainly

20    responsive to -- particularly because the witness says -- this

21    was part of the lead-up to the discussion, you know, it seems

22    responsive to me.  It's about the escape.  He was like, I got an

23    uncle who escaped.  Okay.  They asked very generally about

24    anything regarding the escape.  I think it's regarding the

25    escape because it's showing their conversation relating to the

```
1  escape.  I think if it's not what they are interested in, they
2  will gloss over it.
3            Okay.  So then this goes all the way through 2983.
4            MS. ROTHMAN:  Line 18.
5            THE COURT:  All right.  Let me just skim that.  Okay.
6  That looks fine.
7            MS. ROTHMAN:  So the defense wants to begin the next
8  portion on 3012, line 24.  The government disagrees.
9            THE COURT:  Do you disagree on where to start or on
10 the whole thing?
11           MS. ROTHMAN:  We would propose starting on 3017,
12 line 16.  We agree upon the end.
13           THE COURT:  Which is?
14           MS. ROTHMAN:  So we disagree on 3012, line 24 until
15 3017, line 15.
16           THE COURT:  Where do you agree it should end?
17           MS. ROTHMAN:  3018, line 22.
18           THE COURT:  All right.  Let me take a look at 3012,
19 line 24.  3012, line 24 is colloquy, so I'm not sure what you
20 really mean.
21           The defense -- where does the government think it
22 should start?
23           MS. ROTHMAN:  3017, line 16.
24           THE COURT:  And where does the defense think it should
25 start?
```

1          MS. ROTHMAN:  3012, line 24.  It's Mr. Meringolo

2  showing a document to Mr. Evangelista to try to refresh him,

3  which leads into a host of unrelated topics on mental health,

4  and Mr. Capodiferro, who we don't think is relevant.

5          MR. FREEMAN:  Your Honor --

6          THE COURT:  It starts with an attempt to refresh your

7  recollection, which is an odd which way to start, but let me

8  just keep reading.  I don't see how this relates to what they

9  asked for, which is the escape.

10          MS. ROTHMAN:  And actually, I could be misreading Ms.

11  Stafford's handwriting.  It may be 3017.

12          MS. LIMANI:  I believe this is a typo.  It's --

13          MS. ROTHMAN:  So I apologize.  That's me misreading

14  Ms. Stafford's handwriting.  That's okay.  The disagreement then

15  is actually where it begins on 3017, and I apologize for that.

16          THE COURT:  So it's just a matter of line 15

17  through 24?

18          MS. ROTHMAN:  And actually -- correct, the government

19  wants 16 through 23.  The defense wants to start on line 24.

20          THE COURT:  I think it should start at 16.

21          MR. FREEMAN:  We agree.

22          THE COURT:  So there is no disagreement.  3017,

23  line 16 through 3018, line 22.

24          So this little problem we had is a problem that would

25  have been avoided if you just sat side by side and went page by

4874

```
 1   page.  I know you guys would rather retreat into your separate
 2   camps, but it seems inefficient to me.  Luckily for you, I was
 3   busy with something else.  All right.  What's next?
 4            MS. ROTHMAN:  The next one would begin on 3019.  It
 5   should start on line 25.  The defense has proposed line 19, but
 6   that's a sustained objection.
 7            THE COURT:  Yes.
 8            MS. ROTHMAN:  And we agree upon the end, which is
 9   3020, line 15.
10            THE COURT:  Yes.  It should start on 25.
11            Okay.  What's next?
12            MS. ROTHMAN:  3021, the defense wants to start on
13   line 7, going to line 13, and we want to start on line 11, going
14   to line 13.
15            THE COURT:  Well, 7 through 10 is a sustained
16   objection.
17            MS. ROTHMAN:  Exactly.
18            THE COURT:  So let's start at 13, and what did you say
19   you agreed to end at?
20            MS. ROTHMAN:  11 to 13.
21            MS. LIMANI:  That's fine, Your Honor.
22            THE COURT:  Okay.
23            MR. FREEMAN:  Excuse me, Your Honor, can we go back?
24   Does Your Honor have page 3018 as in or out?
25            THE COURT:  I had 3018 through line 22 as in.
```

1          MR. FREEMAN:  That's correct.  Thank you.

2          THE COURT:  Okay.

3          MS. ROTHMAN:  3027, line 14, the parties agree.  And

4  the government would go until 3029, line 17.  The defense wants

5  lines 18 through 19.

6          THE COURT:  Go through page 19 -- through line 19.

7          MS. ROTHMAN:  Okay.

8          THE COURT:  3029, line 19.  Okay?

9          MS. ROTHMAN:  3030 is the next page, Your Honor.

10          THE COURT:  Okay.

11          MS. ROTHMAN:  The defense wants lines beginning on

12  line 14.  We would propose beginning on line 17.

13          THE COURT:  We are going to start on line 17, and what

14  does that go through?

15          MS. ROTHMAN:  That goes -- well, depends upon the

16  party that you ask.  The defense wants to go all the way until

17  3033, line 24, and we think that portions need to be excluded as

18  irrelevant.

19          THE COURT:  So I should keep reading after line 17?

20          MS. ROTHMAN:  So we would go until line 21 and not

21  resume until line -- until page 3033.

22          MS. LIMANI:  So stop at line 3030, line 21?  And then

23  resume on 33?

24          MS. ROTHMAN:  Yes.

25          MR. FREEMAN:  Your Honor, this is 3030 on to 3031 is

1 relevant to the escape as a whole, the fact that people are

2 being searched.

3          MS. ROTHMAN:  I am not sure Evangelista's knowledge of

4 what happens during searches is relevant to the escape, whether

5 he is stripped searched or not.  It seems to be far afield.

6          MR. FREEMAN:  I mean, it's related to the general

7 custom and practice at the MDC as to whether they search because

8 there is an allegation that a dental floss is coming in, also a

9 hacksaw blade.

10          MR. SCOTTEN:  So, Your Honor, we are not opposing -- I

11 think the parties agreed to admit the testimony of both Geier

12 and White on this subject since Your Honor has indicated a

13 comprehensive approach there.  So I am not -- I think that sort

14 of reinforces Ms. Rothman's point that asking Evangelista about

15 search procedures is not related to the escape or anything.

16          MR. FREEMAN:  It goes to his credibility.

17          THE COURT:  You know, if what Geier and White say

18 doesn't match up with what Evangelista says, I think it would be

19 misleading to chop this out.

20          MS. ROTHMAN:  I mean, Evangelista's knowledge of

21 cameras in the visiting room does not seem to be relevant to the

22 escape, Your Honor.  That's on 3032.

23          THE COURT:  Let me just read.  Let's include it all.

24 3030, line 17 through 3033, line 24.  They will weigh it.

25          I mean, look, it was clear from White that people

1   smuggle things into the jail.  If they are going to get that,

2   then they might as well get all of it.  Next?

3            MS. ROTHMAN:  3038, line 15 the parties agree upon,

4   and that should go until 3041.  The only disagreement is at the

5   end the government would stop at line 21, and the defense wants

6   to go until line 25.  This is about Geier's notes.

7            THE COURT:  I agree it should stop at 21.

8            MR. FREEMAN:  Your Honor, the balance of that page

9   again relates to credibility and the fact that there may be a

10  disagreement between what Evangelista says and what Geier and

11  White say.

12           THE COURT:  Right.  But that's not -- that particular

13  fact doesn't relate to the escape.  I mean, the cooperation

14  agreement relates to credibility, too, and we are not including

15  that because they didn't ask for it.

16           MR. DiPIETRO:  Your Honor, on this issue just note Mr.

17  Crea's objection because I do think we took the wrong approach

18  last week.  There is a line of cases, looking at United State v.

19  Escotto, 121 F.3d 84, and that it's very dangerous to start

20  narrowing the scope of what the jury is getting, especially when

21  you send in transcripts because they may place undue emphasis on

22  the limited portions; and usually the Second Circuit has said

23  through a line of cases, Shepardizing that over the weekend,

24  that when you send in more, it's actually more beneficial that

25  you cure the prospect for prejudice that they place an undue

1  burden on little pieces rather than taking the testimony as a

2  whole.

3         So I think our position, as far as Crea Senior, we are

4  maintaining our objection to parsing out pieces that go to

5  credibility.  We think the jury should have more than less.

6         THE COURT:  Oh, as a general proposition, I agree that

7  you should -- if it's a close call whether something is

8  responsive to their note, that they should get it, but I think

9  they know how to ask for the cross on the cooperation agreement

10  if that's what they are after.  If what we send them is not what

11  they are looking for --

12         MR. DiPIETRO:  Your Honor, I agree with that, and

13  that's why I am not talking about the cooperation agreement.

14  This stems from my argument of last week when they had asked for

15  the confession, and Your Honor said impeaching the date of the

16  confession or the calendar or the tapes about when he didn't

17  confess wasn't responsive, and Crea Senior maintains the

18  objection that, on this line, we agree with Your Honor that

19  things about general credibility are not relevant, but whether

20  someone took notes about the escape plan or not, that's

21  relevant.  They should be given that.  It's up to them to weigh

22  it, and we shouldn't be taking those things out.

23         THE COURT:  All right.  Your objection is noted.

24         What else?

25         MS. ROTHMAN:  3134, Your Honor, the parties agree upon

1  the beginning, but disagree upon the end.  We would start on

2  line 5.

3          THE COURT:  3134?

4          MS. ROTHMAN:  That's the next day, Your Honor.

5          THE COURT:  Yes.  I am there.  3134.  Line?

6          MS. ROTHMAN:  Five.

7          THE COURT:  Five.

8          MS. ROTHMAN:  The government would stop at line 15.

9          THE COURT:  Hold on.

10          MS. ROTHMAN:  Sure.

11          THE COURT:  The government would stop on the same page

12  at line 15?

13          MS. ROTHMAN:  Yes, Your Honor.  And the defense would

14  go until 3135, line 2.

15          THE COURT:  Yes, I mean, the rest of it is not about

16  the escape.

17          MS. ROTHMAN:  Okay.

18          MR. FREEMAN:  Except that it is about his -- he is the

19  one who has the history of escape, Evangelista, and he --

20          THE COURT:  Right.  He --

21          MR. FREEMAN:  He is talking about escaping with

22  somebody else as well.

23          THE COURT:  Mr. Meringolo in his cross did what good

24  defense lawyers do, which is, he made arguments in his

25  questions; but that doesn't make the arguments responsive to the

1 note.  It's abundantly clear that nothing about the escape

2 attempt charged in this case came up until after Evangelista was

3 at MDC, and that was certainly after he had done a whole slew of

4 very bad things, but listing all of the very bad things and

5 saying it was after that is good cross.  It's not testimony in

6 regards to the escape.  So we are going to stop at line 15.

7 　　　　　MS. ROTHMAN:  The next section is the defense has

8 proposed 3137, line 4 through 14.  We oppose that.  I actually

9 don't even know -- most of it's just colloquy.  Actually, in

10 light of Your Honor's ruling about him talking to Geier, I think

11 that's fine.

12 　　　　　THE COURT:  Yes.  And I think the portion of this was

13 already read in last week, but I think it should be lines 4 and

14 5, and then 10 through 19 because the 6, 7 and 8 are just

15 colloquy.  Actually, 6 through 9 are just colloquy.

16 　　　　　So 3137, lines 4 to 5 and 10 through 19.

17 　　　　　What's next?

18 　　　　　MR. FREEMAN:  Excuse me, Your Honor, but lines 17 and

19 19, and I quote, "You told him something, a few things about the

20 murder that day, right?  Yes.  The guns and everything else."

21 　　　　　That's not responsive to the note.  It's not about the

22 escape.

23 　　　　　THE COURT:  Well, it's actually interesting because

24 the guns were related to the escape.

25 　　　　　MS. ROTHMAN:  Yes.

PROCEEDINGS                                    4881

```
 1              THE COURT:  It was part of the escape plan, and at the
 2  time, I thought the witness misunderstood the question, but we
 3  can stop at 16.
 4              MS. ROTHMAN:  That's fine, Your Honor.
 5              THE COURT:  All right.  Go on.
 6              MS. ROTHMAN:  The next one is 3156, Your Honor.
 7              THE COURT:  By the way, are White and Geier ready for
 8  the defense to review?
 9              MR. SCOTTEN:  No.  Geier is -- Geier we still didn't
10  decide what's going in.  I think White may be ready.
11              THE COURT:  Maybe somebody else can review the White
12  transcript to make sure it's Kosher.  I didn't realize we had
13  problems with that one, too.  Okay.
14              3156, line?
15              MS. ROTHMAN:  So the defense is proposing 10
16  through 17.  This is about Evangelista sending that email to the
17  psychologist to then report the escape.
18              THE COURT:  Yes.
19              MS. ROTHMAN:  If Your Honor is going to allow this in,
20  I think it has to start sooner because all the defense has
21  carved out is, "You told a lie.  Yes."  With a few other things.
22              THE COURT:  Where do you think it should start?
23              MS. ROTHMAN:  So I mean, I am looking at this sort of
24  on the fly, Your Honor, but I think I probably would start on
25  3155, line -- line 25 probably.
```

1            MS. LIMANI:  No objection from the defense, Your

2  Honor.

3            MS. ROTHMAN:  I mean --

4            MS. STAFFORD:  Okay.  Mr. White is --

5            THE COURT:  I mean, it's a little unclear whether

6  lines 3155, lines 25 through -- 3156, line 9 are about the

7  relevant lie, which is the lie to get to the psych unit to tell

8  them about the escape or about a different lie.

9            MS. ROTHMAN:  I think that's -- I mean, I think -- "So

10  you could tell them about the escape."  That's line 13, and

11  Evangelista says, "Yes, sir."  So I think as a fair reading that

12  this is in connection with the email to the psychologist, and we

13  have included in the direct him sending that email.  So I think

14  it's fair to include this.

15            THE COURT:  And the lawyer not answering the letter

16  was -- the letter included the escape.

17            Yes, Mr. Freeman?

18            MR. FREEMAN:  We have had a chance to review the White

19  testimony as redacted, and it's been approved, and I think it's

20  ready to go back if you are ready to send it back.

21            THE COURT:  Okay.  That's good news.  That will be

22  Court Exhibit 19.

23            (Court Exhibit 19 received in Evidence)

24            THE COURT:  And, Walter, you can tell them when you

25  bring it back that we will have the rest shortly.

1              All right.  We were -- the current debate is whether

2    we should include 3155, line 25 through 3156, line 9 or if we

3    should start at 3156, line 10.  What's the defense position on

4    that?

5              MS. LIMANI:  Your Honor, we agree with the government

6    that it should start on line 25 of 3155.

7              THE COURT:  All right.  3155, 25 through 3156, line 17

8    will be included.  Next?

9              MS. ROTHMAN:  3157, the defense wants line 4

10   through 18.  I think this has to be parsed a little bit.

11             THE COURT:  What do you think it should be?

12             MS. ROTHMAN:  I really think only lines 10 through 11

13   are responsive.  To provide context you could include lines 4

14   through 7, but I don't see why the discussion about ISIS should

15   be coming in in response to their letter, their request.

16             MS. LIMANI:  That's fine, Your Honor.  We included the

17   earlier question solely for context.

18             THE COURT:  I am sorry.  So you are now in agreement?

19   You think it should be what?

20             MS. LIMANI:  Lines 4 through 7, and lines 10

21   through 11.

22             MS. ROTHMAN:  That's fine.

23             THE COURT:  Okay.

24             MS. ROTHMAN:  3171, Your Honor, beginning on line 14,

25   and we agree that this should go until 3174, line 16.

1            THE COURT:  Okay.  Next?

2            MS. ROTHMAN:  The defense wants to begin 3183, line 5,

3   and go until 3184, line 6.  We would stop it on -- we would

4   basically interrupt what they want to do with some exclusions.

5   So we would start 3183, line 5.  The government would stop at

6   line 11 on that page.

7            THE COURT:  And then where do you think it should pick

8   up after --

9            MS. ROTHMAN:  On line 17.

10           THE COURT:  I think it should all be included.

11           MS. ROTHMAN:  Okay.

12           MR. FREEMAN:  Your Honor, we are breaking into a

13  conversation.

14           THE COURT:  I am agreeing with you.

15           MR. FREEMAN:  Sorry.  I didn't hear you.

16           THE COURT:  So 3183, line 5 through 3184, line 6.

17           MS. ROTHMAN:  Well --

18           THE COURT:  Or do you have other --

19           MS. ROTHMAN:  We have other issues with what they have

20  proposed.  So on 31 -- one moment, Your Honor.  Actually, that's

21  fine.  That's fine.  We agree.

22           THE COURT:  All right.  Here is another note.  Oy vey.

23           Well, we are certainly not going in order.  This is

24  going to be Court Exhibit 20.

25           (Court Exhibit 20 received in Evidence)

```
1             THE COURT:  Walter will make copies, but, "We would
2    like transcripts from Foti regarding Londonio and drugs.
3    Evangelista regarding Londonio and drugs.  At the minimum, we
4    would like the pages referenced by Mr. Scotten in his summation,
5    pages 2117, 3174, 2992."
6             Walter will go make the copies.  We will get to that
7    when we are done with this.  You will also be glad to know that
8    our copier is getting repaired today because the copy -- I
9    realize the copies we have been giving you are very hard to
10   read.
11            Okay.  We are at 3184, line 6.  What's next?
12            MS. ROTHMAN:  3225, line 2 through 5.  So basically,
13   the defense has proposed 3225, 2 through 5 and 19 through 24.
14   If Your Honor is going to include this, this is redirect.  I
15   would include the entire page.
16            THE COURT:  All right.  Let me read it.
17            MR. FREEMAN:  Would you repeat that?
18            MS. LIMANI:  We are on this page.
19            THE COURT:  I think the whole thing should be
20   included, 2 through 24.
21            Next?
22            MS. ROTHMAN:  The defense wants 3228, line 7 all the
23   way through 3231, line 5.  I guess that's fine, Your Honor.
24            THE COURT:  Okay.  Next?
25            MS. ROTHMAN:  Okay.  And then 3234, line 22
```

1  through 3235, line 13.  The parties agree.

2            THE COURT:  Okay.  We are almost at the end.  What's

3  next?

4            MS. ROTHMAN:  And then the last section is 3240.  The

5  defense has proposed line 2 going into the next page, line 11.

6            THE COURT:  What's the government's position?

7            MS. ROTHMAN:  I am just looking at that quickly, Your

8  Honor.  That's fine, Your Honor.

9            MS. LIMANI:  Can we get the section?

10            MS. ROTHMAN:  The last proposed by the defense is

11  3240, line 2 until 3241, line 11.

12            MS. LIMANI:  Thank you.

13            MS. ROTHMAN:  The only thing I would pick, Your Honor,

14  is on 3241, line 7 through 11, that's --

15            THE COURT:  Let's leave it in.

16            MS. ROTHMAN:  Okay.

17            THE COURT:  All right.  Does that take care of

18  Mr. Evangelista?

19            MS. ROTHMAN:  I am just checking one thing.  Yes.

20  Yes, Your Honor.  That's everything on Evangelista.

21            THE COURT:  All right.  Then Ms. Becker or her

22  designee can get ready on that.

23            White is done.  That's what we sent in, right?

24            THE DEPUTY CLERK:  Yes, Your Honor.

25            THE COURT:  That was 19.  So now we have to deal with

1  Agent Geier.

2          MR. SCOTTEN:  There are two thoughts, Your Honor:  We

3  can either -- since we haven't really had a chance to confer

4  with defense at all, we can do the page-by-page thing Your Honor

5  proposed or we can do -- if the defense is through, it's all

6  coming in except, and we can each sort of just name the specific

7  exceptions we don't think should come in and fight those out.

8          MS. LIMANI:  Your Honor, just looking over Mr.

9  Meringolo's notes, there appear to be many references.  So it

10 might be easier and more efficient to go page by page.

11         THE COURT:  I am ready to roll.  Mr. Geier.

12         MR. MERINGOLO:  I am looking at page 2885 to 2915.  I

13 don't know if the government wants any of those.

14         MR. SCOTTEN:  2585 --

15         MR. MERINGOLO:  2885 to 2915.

16         MR. SCOTTEN:  I think this is all a side bar, which we

17 definitely don't want in.  So where --

18         MR. MERINGOLO:  There is some testimony within there.

19         THE COURT:  Look, let's --

20         MR. SCOTTEN:  Let's do it page by page.

21         THE COURT:  Let's just move.  We start, the direct

22 examination begins on 3865, line 16.  Does anybody --

23         MR. SCOTTEN:  2865, correct, Your Honor?

24         THE COURT:  Oh, what did I say?

25         MR. SCOTTEN:  I think you said 3865.

1            THE COURT:  Sorry.  2865, line 16 begins with, "Good

2   morning, Mr. Geier."  So I am going to ask either side to tell

3   me what's the first responsive thing they think should go in, or

4   do they just want to send the whole thing in?

5            MR. SCOTTEN:  So if you want to pick a non -- start at

6   the beginning, the government would start at 2866, line 13,

7   which is an element not in dispute, but is an element of the

8   escape account.

9            THE COURT:  2866, line 13 through?

10           MR. SCOTTEN:  Continuing to 2867.  All of 2868.  All

11  of 2869.  All of 2870.  All of 2871.  All of 2872.  All --

12           THE COURT:  Defense should speak up if they disagree.

13           MS. LIMANI:  We agree, Your Honor.

14           MR. SCOTTEN:  All of 2873.  All of 2874.  All of 2875

15  except -- so stopping 2875 at line 12, which is really 2875,

16  line 9, which is the attempted voir dire that the Court ruled

17  improper.

18           MS. LIMANI:  That's fine.

19           THE COURT:  So picking up at 2875.

20           MR. SCOTTEN:  2875.  Well, 2875, line 24 where the

21  Court admits the exhibit.

22           THE COURT:  Yes, and continuing.

23           MR. SCOTTEN:  Through 2876 in its entirety

24  through 2877 in its entirety.  All of 2878.  All of 2879.  All

25  of 2880.  All of 2881.  All of 2882.  All of 2883.  All of 2884.

1   All of 2885.

2          THE COURT:  Well, up to --

3          MR. SCOTTEN:  If we can take -- I was --

4          THE COURT:  Then there is a long side bar beginning on

5   2885.

6          MR. SCOTTEN:  Yes.

7          THE COURT:  So we should stop on 2885, line 9.

8          MR. SCOTTEN:  I think we pick up on 2889 at line 2.

9          THE COURT:  Did we redact it?

10          MR. SCOTTEN:  Yes.  This is the -- yes.  And the jury

11   already has the exhibit itself, which is redacted and was shown

12   in closing without objection.

13          THE COURT:  All right.  So I think what we should do

14   just so they understand what happened, we should go up to 2885,

15   line 9, and then pick up at 30 -- did I say 38?  I meant 2885,

16   line 9, and then start again where the government suggests at

17   2889, line 2, so they understand it was received subject to

18   redaction, and then --

19          MR. FREEMAN:  Your Honor, we would lodge an objection

20   again about the uncle.

21          THE COURT:  Well, I am only up to 2889, line 2.

22          MR. SCOTTEN:  This is the uncle, Your Honor.  The

23   redacted exhibit was Ernie Malizia's prison records

24   corroborating Evangelista that he had, in fact, attempted to

25   escape from prison in 1977.

1          MR. FREEMAN:  And that's what I meant when I said we

2  object to the uncle.

3          THE COURT:  So if you're objecting to the uncle, then

4  your objection started way earlier than 2889.

5          MR. FREEMAN:  Right.

6          THE COURT:  The discussion of Exhibit 505 began on

7  2884.

8          MR. SCOTTEN:  I think Mr. Freeman's preserving

9  objections since you already ruled the uncle issue in with

10 respect to Evangelista.  I am not sure why it wouldn't also come

11 in with respect to Geier.

12         THE COURT:  I mean, we are basically -- yeah, let's

13 just include it.  2889, line 2, continuing.

14         MR. SCOTTEN:  So I think --

15         THE COURT:  I mean, look, if we are going to -- if we

16 are going to do with Geier what we did with Evangelista, a lot

17 of this doesn't come in, but if everybody thinks it should all

18 come in, I am happy to do that.

19         MR. SCOTTEN:  We took Your Honor's sort of initial

20 guidance, which was to basically send it all back, and we

21 started looking for things that were specifically problematic.

22 So it is a more inclusive approach that I think everybody took

23 in reviewing this.

24         THE COURT:  Well, help me out here.  Is it better to

25 keep going page by page and unless somebody speaks up, I assume

1  everything is all Kosher?  Or is it better to just have anybody

2  identify the portions that they think should not go in?

3          MR. SCOTTEN:  So I can tell you the government's first

4  portion is going to come at page 2900.

5          THE COURT:  Okay.  Is there anything before 2900 that

6  there is a defense objection to?

7          MR. FREEMAN:  One second, Your Honor.

8          No objection.

9          THE COURT:  All right.  So the first problem is 2990,

10 what line?

11         MR. SCOTTEN:  2900.

12         THE COURT:  Oh, 2900.

13         MR. SCOTTEN:  Starting at line 2, and it's not a huge

14 problem.  It's just this is testimony about Western Union and

15 inmate commissary accounts, which was about the drug smuggling

16 in the prison and not about the escape, and we just didn't want

17 the jury to try to figure out how this related to the escape

18 since it doesn't really.

19         THE COURT:  So what's the portion you think should be

20 cut?  2900?  2990 -- sorry -- line -- no.  I said it wrong

21 again.  2900, line 2 through what?

22         MR. SCOTTEN:  I am checking, Your Honor.  Give me one

23 second.  2905, line 8.

24         THE COURT:  Does the defense agree?

25         MS. LIMANI:  Yes, Your Honor.

```
 1              THE COURT:  So we are going to pick up again with the
 2  phone calls on 2905, line 10?
 3              MR. SCOTTEN:  I believe so, Your Honor.
 4              THE COURT:  And --
 5              MR. FREEMAN:  Your Honor, we don't think the phone
 6  calls are relevant to the escape.
 7              MR. SCOTTEN:  Well, the difficulty is some are because
 8  they concern the, you know, bran flakes and whatnot.  Some are
 9  not because they concern -- they are really the emails that
10  corroborated Evangelista's timing of the Creas -- of Londonio
11  being upset about rumors that the Creas would get bail.
12              THE COURT:  Well, I think the portions on 2906 and
13  following, which are the foundation for the exhibits, has to be
14  included.  Then if there is specific questioning about
15  particular emails that aren't relevant to the escape, we will
16  cut it out.  It looks like Exhibit 1200 -- I don't know.  I
17  don't remember if that one --
18              MR. SCOTTEN:  That is the summary of email timing,
19  which was most directly relevant to the Crea bail issue.
20              THE COURT:  So if 1200 isn't relevant at all, then
21  maybe we should stop at 2908, line -- well, now that I am
22  looking at it, Jeffrey Herring is about the drugs, too, right?
23              MR. SCOTTEN:  Well, Jeffrey Herring is the drugs and
24  the escape.  He was the third escapee.
25              THE COURT:  Oh, that's right.  So we will go through
```

1    2908, line 5, and then we are going into the Junior and Senior

2    business.  So tell me where you think we should pick up.

3              MR. SCOTTEN:  So if we are going to keep out the

4    Junior and Senior business, which I have no problem with, I

5    actually think we are going to have a very large blockout

6    because that leads directly into us authenticating the Michael

7    Mancuso disk, but not offering it, and then doing the Vic Amuso

8    and Robert Spinelli were bunkmates at one point records, which I

9    think continues all the way through 2915, line 18, which is the

10   end of Ms. Rothman's direct.

11             THE COURT:  So then we pick up with Mr. Meringolo

12   looks like 2016 -- 2916, line 5 where we should start?

13             MR. SCOTTEN:  29 -- yes.  I think that's fine, Your

14   Honor.

15             MS. LIMANI:  Yes, Your Honor.

16             THE COURT:  And tell me where you think we should

17   stop.

18             MR. SCOTTEN:  So when we -- I would like to just -- I

19   don't need to read them aloud, but I would like to just kind of

20   parse through the pages real quickly.

21             THE COURT:  Yes, I am doing the same thing.  So let's

22   all read, and when anybody gets to a stop they think we should

23   stop, speak up.

24             MR. SCOTTEN:  We are going to hit massive sidebar on

25   2930.

```
 1              THE COURT:  Well, it looks like we should stop at
 2  2929, line 24.
 3              MR. SCOTTEN:  Yes.
 4              THE COURT:  And pick it up at 2936, line 19?
 5              MR. SCOTTEN:  Yes, ma'am.  And then I did mark out a
 6  substantive government exception starting at 2937, line 22
 7  running through 2939, line 24.
 8              Well, this is Mr. Meringolo is worried about
 9  "Gangland," which is an attempt to impeach on the murder
10  admission, not on the escape, as I understand it.
11              THE COURT:  Well, that goes through --
12              MR. SCOTTEN:  I think 39, line 24.
13              THE COURT:  Sounds right to me.  So 2936, line 19
14  through 2937, line 21 should come in, and then we pick up on
15  2939, line 25.
16              MR. SCOTTEN:  Our next break is at the end of 2943.  I
17  don't know if the defense has anything before that.
18              THE COURT:  That's the lunch break.  So --
19              MR. SCOTTEN:  Yes.
20              THE COURT:  -- we will go through 2943, line 25 and
21  then pick up again at 2950, line 2.
22              MR. SCOTTEN:  I believe so.
23              MS. LIMANI:  Yes, Your Honor.
24              MR. SCOTTEN:  Then our next cut is at 2955, 13 is on
25  the subject of drugs.
```

1           MS. LIMANI:  Yes, we agree, Your Honor.

2           MR. SCOTTEN:  And I think that's through 2956, line 8.

3           THE COURT:  So we will do 2950, line 2 through 2955,

4    line 12, and then we pick up at 2956, line --

5           MR. SCOTTEN:  11.

6           THE COURT:  -- 11 through 25.  Then we pick up on

7    2957, line 12.

8           MS. LIMANI:  Yes, Your Honor.

9           MR. SCOTTEN:  Yes, Your Honor.

10          And then the government would skip 2959, 21 to the

11   end, which here I understand to be about the drugs, basing that

12   mostly on Mr. Meringolo continuing his, If-you-had-a-

13   credible-person line, which was, as I recall, the theory that if

14   Evangelista was credible, then they would have arrested Londonio

15   for drug smuggling.

16          THE COURT:  And actually, the witness never really

17   answers anything.

18          MR. SCOTTEN:  There is not that much there, anyway.

19   That's correct, Your Honor.

20          THE COURT:  So 2959, line 19 is where we should stop,

21   and then we are done with Agent Geier.  All right.

22          So the government will get to work on Geier and

23   Evangelista; show it to opposing counsel.  When there is

24   agreement, give the copies to Walter, and then we have to turn

25   to Court Exhibit 20.

```
 1           MR. SCOTTEN:  Your Honor --

 2           THE COURT:  At this point, they will have asked for a

 3  hundred percent of Evangelista, basically.  While we are sitting

 4  here, why don't we look at the three pages they have asked for

 5  at a minimum?

 6           MR. SCOTTEN:  Your Honor, do you want to just run

 7  through Foti?

 8           MR. PATEL:  They all relate to drugs, Your Honor.

 9           THE COURT:  They all relate to drugs.

10           MR. SCOTTEN:  We don't --

11           THE COURT:  I mean, this note they want Foti regarding

12  Londonio and drugs, Evangelista regarding Londonio and drugs,

13  and --

14           MR. PATEL:  And Scotten.

15           THE COURT:  Scotten.  Exactly.

16           MR. PATEL:  Sorry.

17           MR. SCOTTEN:  I am offended.  Sometimes they ask for

18  the whole summation, then I feel good.

19           MS. COHEN:  Your Honor, the government is prepared to

20  go through the Foti transcript now if you would like to do that.

21           THE COURT:  Well, I would ideally like to do is for

22  you guys to do what we just did without me sitting here, but

23  with you guys sitting here together in the room and going

24  through page by page and identifying what you agree on so that I

25  only have to look at what you don't agree on.  That's what I
```

```
 1   would ideally like to have happen.
 2          MS. COHEN:  We are ready to do that, Your Honor, on
 3   Mr. Foti.
 4          THE COURT:  So don't retreat into your separate
 5   corners.  Just go.
 6          MS. LIMANI:  Stay right here.
 7          THE COURT:  Everybody stay.  Everybody do what Ms.
 8   Limani just said.
 9          (Recess)
10          THE DEPUTY CLERK:  All rise.
11          THE COURT:  Good afternoon.  Let's see, our crowd has
12   thinned out, but we got --
13          MR. DRATEL:  We have a quorum.
14          THE COURT:  -- have at least one lawyer for every
15   defendant.
16          MR. DRATEL:  We have a quorum.
17          THE COURT:  Are all the defendants waiving their
18   appearance?
19          ALL DEFENSE COUNSEL PRESENT:  Yes, Your Honor.
20          THE COURT:  All right.
21          MS. COHEN:  Status update, Your Honor, if you want?
22          THE COURT :  Please.
23          MS. COHEN:  We have completed the Evangelista escape
24   transcript.  It's being reviewed by defense counsel now.  Once
25   they sign off, we have copies ready to go to the jury.
```

PROCEEDINGS                                          4898

1          THE COURT:  Good.

2          MS. COHEN:  We have conferred with defense counsel on

3  the Foti and Evangelista drug testimony requested in the most

4  recent note.  Full agreement between the parties on Evangelista,

5  so that is in production.  Almost full agreement on Foti.  We

6  have two small issues that we need the Court to resolve.

7          THE COURT:  Okay.  What dates of transcript should I

8  be looking at?

9          MS. COHEN:  The 18th to start, please.

10          THE COURT:  Okay.

11          MS. COHEN:  And it is page 2109.

12          THE COURT:  I am with you.

13          MS. COHEN:  The government would propose lines 20 to

14  22, and I understand that the defense is asking that crimes

15  other than selling pot and pills that are part of the answer in

16  lines 21 and 22 be redacted out.  The government opposes that

17  just because it's embedded in the answer, and the jury has heard

18  this testimony.  It's not as if it's putting before them

19  prejudicial facts they haven't already heard.

20          MR. FREEMAN:  That is accurate as far as it goes, but

21  they did ask for drugs.  They didn't ask for other crimes, and

22  it would not be a problem to redact those other crimes.

23          THE COURT:  I'm not necessarily going to agree to this

24  for everything because it could just become impractical, but for

25  these purposes we can redact loansharking and armed robbery.

```
 1              MS. COHEN:  And murder.

 2              THE COURT:  Oh, and murder.  Yes, oh, that.  Yes.

 3   Okay.

 4              MS. COHEN:  Okay.  Then the other disagreement is I

 5   believe on the 21st Mr. Foti's testimony continued.

 6              THE COURT:  Okay.

 7              MS. COHEN:  Starting at page 2319, and the parties

 8   agree on lines 18 to 22, but defense counsel would like to

 9   continue all the way to 2321, 5, line 5, which is just about

10   what Mr. Foti did with the pills after he got them from

11   Mr. Londonio.  They are not about Mr. Londonio selling drugs.

12              THE COURT:  Let me just read it, and then I want to

13   hear you.

14              MS. STAFFORD:  It's all set.

15              MR. FREEMAN:  Your Honor, it's our decision --

16              THE COURT:  I am agreeing with you, Mr. Freeman.  I

17   think the defendant's portion is correct.  Walter is going to

18   bring in the Evangelista escape testimony, which will be Court

19   Exhibit 21, and let them know that the drug testimony is being

20   copied, being prepared, and will be on its way.

21              (Court Exhibit 21 received in Evidence)

22              MS. COHEN:  And Agent Geier's as well.

23              THE COURT:  Oh, they don't have Geier yet, either?

24              MS. COHEN:  They do not.

25              THE COURT:  Geier is coming soon, and the other two
```

1    after that.

2            Let me ask another question about Evangelista.  Are

3    the three pages that they asked for specifically encompassed

4    within --

5            MS. COHEN:  They are, Your Honor.

6            THE COURT:  Okay.

7            MR. FREEMAN:  They are.  So they are not going to be

8    separated out, but they will be in there.

9            THE COURT:  The jury will be able to --

10           MS. LIMANI:  For the record, the first page is from

11   Foti's testimony, and then pages number 2 and 3 are from

12   Evangelista's testimony.

13           THE COURT:  Okay.  Maybe you guys work better when

14   there is only a few of you.  Why don't you guys go let your

15   lunch?

16           (Lunch recess)

17           THE COURT:  All right.  Just before we get the jury to

18   send them off, I just wanted to put on the record that when

19   Walter went in to bring the transcripts, the jurors asked if

20   they could have external speakers because apparently the audio

21   on the laptop is not very good, and that has occurred since we

22   were last on the record.  So I just wanted to put it on the

23   record.

24           And let's go get them.  I will send them home.

25           MR. SCOTTEN:  The jury notes, our press office has

1  gotten a question as to whether they are public.

2          THE COURT:  I think they are because they are Court

3  exhibits.  I got a request and punted it to the district

4  executive, which apparently punted it to the U.S. attorney,

5  which punted it back to the Court.  They are Court exhibits.  I

6  imagine they are public.

7          THE DEPUTY CLERK:  Jury entering.

8          (Trial resumed; jury present)

9          THE COURT:  Hi, everyone.  You've got some reading

10  material for today.  I just want to mention we have been sending

11  back 12 copies, and we will keep doing that, but if you don't

12  need that many, I am happy to save the trees.  So unless I hear

13  otherwise, when you ask for testimony, we will send back 12, but

14  if you think you need less, tell me, and we will send back less.

15          See you tomorrow at 9:30.  Don't do any research.

16  Don't discuss the case.  Keep an open mind, and I will see you

17  tomorrow.  I guess you don't have to keep quite an open mind,

18  but don't reach any final decision until you are all together.

19          (Jury excused)

20      MR. SCOTTEN:  So --

21          THE COURT:  Just to continue that point, the

22  individual who called chambers seemed to think that my chambers

23  should be emailing all the Court exhibits to this person on a

24  daily basis, which I don't think is -- I think what the person

25  really wanted was the notes.  I guess -- they are Court

1    exhibits.  I think they are public documents.

2          MR. SCOTTEN:  I don't disagree, Your Honor.  I think

3    from our perspective the question is -- I think it's probably

4    the same person and the same desire, either they are Court

5    exhibits, all we really have is a photocopy the Court handed to

6    us, so we are not inclined to give them out because what we have

7    is really not official in any sense.

8          THE COURT:  Well, I mean, what we will do -- I think

9    this is what the district executive routinely does is -- we will

10   send them to the district executive, and the district executive

11   can give them out; but, you know, the Court exhibits include the

12   transcript that we are sending in and all that.  I am not going

13   to routinely do that.  If the person asks for something in

14   particular, I will make it available.

15         MR. FREEMAN:  Your Honor, may I ask -- I'm sorry.

16         MR. SCOTTEN:  Just one question on that matter.

17         Should we be redacting the name of the foreperson or

18   the presumed foreperson?  We have never been told, but I am

19   assume that's why Mr. Doherty is signing.

20         THE COURT:  Yes.  The one thing that's pretty clear to

21   me is that he is signing all the notes; doesn't look like he is

22   writing them, but that's a matter of public record, too.

23         MR. SCOTTEN:  It's really up to Your Honor or the

24   Court.

25         MR. FREEMAN:  I would be in favor of -- subject to

1    hearing from my colleagues -- I would be in favor of not

2    releasing the name of the foreperson during deliberations for

3    fear that the person might be contacted.

4            But my question was -- my question was:  What do you

5    do in the normal course with respect to things like jury notes?

6    I assume that they are not filed immediately on the docket

7    sheet.

8            THE COURT:  Usually, physically what happens, I think

9    at the -- after the verdict, the deputy brings them all

10   downstairs, and then they are physically filed in the clerk's

11   office.

12           MR. FREEMAN:  Well, I would ask you to not change your

13   normal policy and procedure based on a request for a jury note.

14   I don't think that it's appropriate to change the course of

15   action that your chambers usually takes.  At some point, if it

16   would be filed, then it will be filed, and then who's ever

17   asking can get it then.

18           THE COURT:  We will apparently -- I mean, this is not

19   known to me -- but apparently according to the district

20   executive, this sort of request from the press is routinely

21   granted for public documents.  I mean, once something is a Court

22   exhibit, unless I seal it, I think it's a public document,

23   whether it's physically still up here in the courtroom or

24   whether we have brought it downstairs.  I mean, there may be

25   some judges who bring it downstairs on a daily basis.  I don't

1  know.  I am open to discussion.

2          Luckily, I think the person that we are talking about

3  doesn't have a vast readership, so I don't think, you know, it's

4  going to result in something, you know, that could infect the

5  jury, but it's possible because sometimes this individual's

6  stuff is published in a tabloid.

7          MR. DRATEL:  Thursdays in *The Post*.

8          THE COURT:  Well, I wish I had thought of that.  I

9  would have told the jury to make sure they don't read the paper,

10 but --

11          MR. PATEL:  It's a subscription service, Your Honor.

12          THE COURT:  Not when it gets in the tabloids.

13 "Gangland" you have to pay for.  I am not worried that any of

14 them are subscribing to "Gangland," although after this trial,

15 maybe they will; but sometimes something from "Gangland" gets

16 picked up in another paper.

17          I am not really aware of any ground upon which I can

18 withhold it, but --

19          MR. FREEMAN:  I am not asking you to withhold it.  We

20 are just asking you to use your normal procedure and --

21          THE COURT:  Well, I don't think -- I don't think

22 it's -- I think it's public because it's a Court exhibit.

23 Whether it's here or in the clerk's office, it doesn't seem to

24 me to make a difference, but if, you know, I will -- I am open

25 to any authority anybody wants to give me by 5:00, but

1  otherwise, I am going to send the -- today's notes down, not the

2  transcripts, just the notes.

3          MR. SCOTTEN:  The government is with the defense on

4  the business of redacting the foreperson's name.

5          THE COURT:  That's fine.  I think we can just redact

6  that name.  That's easy enough.

7          Also, I want to get straight for the record what all

8  the Court exhibits were.  So 21 was -- 20 was the most recent

9  note.  21 was the testimony we sent in, Evangelista's testimony

10 about the escape.  22 is the Geier escape testimony.  Court

11 Exhibit 23 is the Foti drug testimony, and that must mean 24 is

12 the Evangelista drug testimony.

13          (Court Exhibit 22-24 received in Evidence).

14          THE COURT:  We may be setting a new record for Court

15 exhibits.

16          MR. PATEL:  Did we send in the transcript page

17 numbers?  There were specific pages of the transcript.

18          THE COURT:  The specific pages were included in the --

19          MR. SCOTTEN:  The jury correctly identified pages

20 concerning drug activity, so that all went in there.

21          THE COURT:  Okay.  So we will wait on Court Exhibit 25

22 in the morning.  Have a good evening, everyone.

23          (Time noted:  2:41 p.m.)

24          (Trial proceedings adjourned until 9:30 a.m., November

25 14, 2019)