MANDATE

7:17-cr-00089-CS-1

20-2479-cr (L)
*United States v. Londonio*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 18 2024

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of August, two thousand twenty-four.

PRESENT:

> JOSÉ A. CABRANES,
> MARIA ARAÚJO KAHN,
> *Circuit Judges,*
> KATHERINE POLK FAILLA,
> *District Judge.*\*

————————————————————————

UNITED STATES OF AMERICA,

*Appellee,*

v.    20-2479-cr (L); 20-2714 (CON)
      20-2722 (CON); 20-2980 (CON)

CHRISTOPHER LONDONIO, TERRANCE CALDWELL,
MATTHEW MADONNA, STEVEN CREA, SR.,

————————————————————————

\* Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

1

MANDATE ISSUED ON 12/18/2024

*Defendants-Appellants.*<sup>*</sup>

_____

FOR DEFENDANT-APPELLANT LONDONIO:    CLARA KALHOUS, New York, NY.

FOR DEFENDANT-APPELLANT CALDWELL:    BRIAN A. JACOBS (Daniel P. Gordon, *on the brief*), Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY.

FOR DEFENDANT-APPELLANT MADONNA:    JOSHUA L. DRATEL, Law Offices of Dratel & Lewis, New York, NY (Andrew Patel, White Plains, NY, *on the brief*).

FOR DEFENDANT-APPELLANT CREA, SR.:    BRENDAN WHITE, White & White, New York, NY (Anthony DiPietro, Law Offices of Anthony DiPietro, White Plains, NY, *on the brief*).

FOR APPELLEE:    HAGAN SCOTTEN, Assistant United States Attorney (Alexandra N. Rothman, Celia V. Cohen, David Abramowicz, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from July 30, 2020, judgments of the United States District Court for the Southern District of New York (Cathy Seibel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 30, 2020, judgments of the district court are **AFFIRMED.**

_____

<sup>*</sup> The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Defendants-Appellants Christopher Londonio, Terrance Caldwell, Matthew Madonna, and Steven Crea, Sr. (collectively, "Defendants") appeal from judgments of conviction entered on July 30, 2020, after a jury found them guilty of various crimes related to their participation in the Lucchese[1] Family of La Cosa Nostra.[2] The district court sentenced all four Defendants principally to two consecutive terms of life imprisonment, with Caldwell receiving an additional, consecutive term of ten years' imprisonment.

Defendants raise—either jointly or independently—a myriad of challenges in appealing their convictions. Defendants jointly raise claims relating to the sufficiency of the evidence, the admission of co-conspirator statements, and the district court's denial of their motion for a new trial based on post-trial disclosures. With respect to pre-trial

---

[1] We note that the parties and this Court have at various times referred to the Family as the "Lucchese Family" or the "Luchese Family." *Compare United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999), Crea Br. at 3, Londonio Br. at 6, and Caldwell Br. at 1 ("Lucchese Family") *with United States v. Avellino*, 136 F.3d 249, 251 (2d Cir. 1998), Gov't Br. at 3, and Madonna Br. at 3 ("Luchese Family"). Deferring to the spelling on the docket, we adopt "Lucchese Family" for purposes of this summary order.

[2] Specifically, the jury convicted all Defendants of conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d) (Count One); conspiracy to commit murder in aid of racketeering in violation of id. § 1959(a)(5) (Count Two); murder in aid of racketeering in violation of id. § 1959(a)(1) (Count Three); and use of a firearm resulting in death in furtherance of the murder charged in Count Three in violation of id. § 924(j)(1) (Count Seven). Londonio was also convicted of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 846, 841(b)(1)(C) (Count Six). Caldwell was also convicted of assault and attempted murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(3), (5) (Count Four), and use of a firearm, which was discharged, in furtherance of the assault and attempted murder charged in Count Four in violation of id. § 924(c)(1)(A)(iii) (Count Eight).

motions, Crea challenges the district court's denial of his motion for inspection of grand jury minutes.  Londonio raises an ineffective assistance of counsel claim from the district court's denial of his request for an adjournment of trial because an attorney on his defense team, who died well before trial, was allegedly conflicted.  Crea raises claims relating to the district court's denial of his mid-trial motion for severance.  Madonna and Crea challenge the district court's jury instructions relating to *Pinkerton* liability.  Finally, Madonna, Crea, and Londonio each raise claims of error relating to their respective sentences.  We conclude that all of Defendants' challenges lack merit, and therefore affirm the judgments of the district court.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we recite only as necessary to explain our decision.

### A. Sufficiency of the Evidence Claims

Defendants assert that there was insufficient evidence to convict them of the murder and attempted murder charges.  "Although we review sufficiency of the evidence claims *de novo*, a defendant mounting such a challenge bears a heavy burden."  *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  "[W]e will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Bruno*, 383 F.3d 65, 82 (2d Cir. 2004) (quoting *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001)).

### 1. Murder of Michael Meldish

Defendants argue that there was insufficient evidence to support their convictions for Counts Two, Three, and Seven—the counts related to the murder of Michael Meldish. Madonna and Crea argue that there was insufficient evidence to show that they had any involvement in Meldish's murder. Londonio and Caldwell argue that a rational jury could not have concluded that Caldwell committed the murder to gain or maintain membership in the Lucchese Family, as is required for conviction.

Viewing the evidence as a whole, we conclude that a rational juror could have found that Madonna and Crea ordered the murder of Meldish, which was subsequently carried out by Londonio and Caldwell for the purpose of maintaining their positions in the Lucchese Family. *See id.* ("To convict a defendant of murder in aid of racketeering, the [g]overnment must prove that he committed the charged racketeering acts 'for the purpose of gaining entrance to or maintaining or increasing [his] position' in a racketeering enterprise." (quoting 18 U.S.C. § 1959(a))).

The government presented evidence showing, *inter alia*, that as boss and underboss of the Lucchese Family, Madonna and Crea, respectively, ordered, through a typical Mafia chain of command, Meldish's murder over Meldish's refusal to collect money he owed to Madonna. The evidence also showed that Londonio and Caldwell had long-time dealings with the Lucchese Family, the former as an associate and later a soldier, and the latter as an associate, and would be expected to carry out orders received

from the boss or underboss.  Finally, ample physical evidence showed that Londonio and Caldwell were with Meldish the night that he was murdered, and that Caldwell was the triggerman for the shooting.

### 2.  Attempted Murder of Enzo Stagno

Caldwell challenges his conviction of Counts Four and Eight—the counts related to the attempted murder of Enzo Stagno—arguing again that there was insufficient evidence that his motivation in doing so was in furtherance of the conspiracy.  Evidence showed that the shooting of Stagno occurred as a result of a years-long dispute between the Lucchese Family and its rival, the Bonanno Family.  Caldwell carried out the shooting with the assistance of two Lucchese Family associates.  A jury could reasonably infer that Caldwell committed the Stagno shooting because he was expected to do so as an associate of the Lucchese Family.[3]  *See United States v. Arrington*, 941 F.3d 24, 38 (2d Cir. 2019) ("While [defendant's] position was, to be sure, a low and peripheral one, any position is enough.").

### B.  Challenged Evidentiary Rulings

Defendants challenge several of the district court's evidentiary rulings.  Such rulings are reviewed for abuse of discretion and will be reversed "only when the court has acted arbitrarily or irrationally."  *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir.

---

[3]  Caldwell's challenge to his conviction on Count One, engaging in a racketeering conspiracy, relies on the same arguments he advanced with respect to the Meldish murder and Stagno attempted murder charges and is therefore unavailing.

6

2006) (internal quotation marks omitted). "Alleged violations of the Confrontation Clause are reviewed *de novo*, subject to harmless error analysis." *United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006). An erroneous evidentiary ruling does not warrant a new trial, however, if the error was harmless—that is, if we determine with "fair assurance that the jury's judgment was not substantially swayed by the error." *United States v. Paulino*, 445 F.3d 211, 219 (2d Cir. 2006) (internal quotation marks omitted); *see also* Fed. R. Crim. P. 52(a).

### 1. Admission of Co-Conspirator Statements

#### a. Londonio's Statements to Evangelista

While detained before trial, Londonio made various statements to a fellow inmate, David Evangelista, that implicated his co-Defendants in the Meldish murder. Evangelista testified, over Defendants' objections, to the content of those statements. Madonna, Crea, and Caldwell claim that the district court erred in admitting those statements.

After reviewing the trial transcripts and record, we find that Londonio's statements to Evangelista about the Meldish murder satisfied each element of Fed. R. Evid. 804(b)(3) as statements against interest and were thus properly admitted. We have repeatedly upheld the admission of statements about criminal conduct committed jointly by the declarant and a defendant, including statements about the motive for the crime or a particular defendant's role in the crime. *See United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007) (declarant's statement that murder victim "was killed because the 'Dude

owed' money" was properly admitted as a statement against interest).  The evidence established that Londonio participated directly in a violent crime and made statements to Evangelista implicating himself, as well as Madonna and Crea, who ordered—but did not personally commit—that offense.  The statements were sufficiently self-inculpatory.[4] *See United States v. Olivera*, 797 F. App'x 40, 42–44 (2d Cir. 2019) (summary order) (where declarant committed robbery that resulted in death of victim, there was no error in admitting statement that co-defendant ordered the robbery).

Londonio's statements to Evangelista were also corroborated by other testimony and exhibits introduced at trial.  In addition to a plethora of physical evidence placing Londonio and Caldwell at the scene of the crime on the evening of the Meldish murder, other witnesses testified about the debt owed by Meldish to Madonna as well as Madonna and Crea's roles in ordering the murder.  Furthermore, an expert on the Mafia testified to the chain of command in the Lucchese Family.  *See United States v. Wexler*, 522 F.3d 194, 202–03 (2d Cir. 2008) (evidence found to be more trustworthy when corroborated by non-hearsay testimony and other evidence).

---

[4] Crea also argues that Londonio was available to testify, and thus his testimony, rather than Evangelista's testimony, should have been admitted.  We agree with the district court that Londonio's mid-trial offer to testify was not made in good faith, given that he was unwilling to waive his Fifth Amendment rights unless he was tried separately, and prior to, his co-Defendants.

### b. Londonio's Statements to Foti

During the trial, Joseph Foti testified about statements Londonio made regarding Meldish's debt to Madonna and the relationship between Meldish and Madonna—specifically, Madonna's reaction to a beating of Meldish by members of the Bonanno Family. Madonna challenges the admission of Londonio's statements, claiming that his knowledge of those events was not sufficiently established.

Even if we were to assume that the testimony was improperly admitted, any error was harmless because the same evidence was admitted through other witnesses. Jonathan Bash and Anthony Zoccolillo both testified about Meldish's debt to Madonna, and other witnesses testified that the relationship between Madonna and Meldish had become strained before Meldish's murder. *See Campaneria v. Reid*, 891 F.2d 1014, 1022 (2d Cir. 1989) (finding that where evidence is "entirely cumulative," its admission, even if erroneous, is harmless beyond a reasonable doubt).

### c. Datello's Recorded Statements

Madonna contends that the district court erred by admitting, over Madonna's objection, recorded statements made by Joseph Datello explaining his need to sell drugs in order to repay a $200,000 debt to the Lucchese Family because Madonna and Crea had Meldish killed over his refusal to pay a debt. Datello's recorded statements were admitted as co-conspirator statements, under Fed. R. Evid. 801(d)(2)(E), made in furtherance of the charged racketeering conspiracy. The district court reasoned that

9

Datello and Madonna were co-conspirators insofar as Datello was engaging in drug transactions to get money to repay a debt he was responsible for "under the rules of the enterprise." Supp. App'x at 1754. Madonna argues that Datello's statements were not admissible as co-conspirator statements because there was no specific conspiracy between Datello and Madonna to engage in drug transactions in furtherance of the Lucchese Family enterprise.

We agree with the district court that Datello and Madonna were both part of the charged racketeering conspiracy, and that as a member of that conspiracy, Datello was expected to make payments to the Lucchese Family on his debt arising from that conspiracy. *See United States v. Russo*, 302 F.3d 37, 44 (2d Cir. 2002) ("[A] declarant's statement made in furtherance of a criminal act . . . is not admissible against the defendant under the co-conspirator exception unless the defendant was associated with the declarant in a conspiracy or joint venture having that criminal act as its objective."). As the district court aptly noted, "[i]t's the [Lucchese] Family norms that required Datello to make these payments and the Family has an interest in [(A)] not getting stiffed by people who owe it money, and [(B)] making people aware that bad things can happen if you don't pay." Supp. App'x at 1756. Datello's statements about the need to get money quickly to repay the debt he owed to the Lucchese Family were therefore properly admitted as co-conspirator statements.

10

### d. Caldwell's Recorded Interview

During a New York City Police Department interview of Caldwell after the Meldish murder, the interviewing detective said he was "trying to get an explanation" for the evidence placing Caldwell at the scene of the crime, J. App'x at 1594–96, to which Caldwell responded, "I don't have one," *id*. at 1596. Londonio challenges the admission of that statement for the first time on appeal, so it is reviewed for plain error. *See United States v. Logan*, 419 F.3d 172, 177 (2d Cir. 2005).

Even assuming that the district court erred in admitting Caldwell's statement, Londonio's argument fails because he cannot show, as he must on plain-error review, "a reasonable probability that the error affected the outcome of the trial." *United States v. Marcus*, 560 U.S. 258, 262 (2010). Here, strong evidence—including phone records, cellphone and vehicle location data, video of Londonio's car following Meldish's car in the minutes before the murder, and Londonio's confessions to both Evangelista and Foti—established Londonio's guilt. On this record, Londonio cannot show that admission of Caldwell's statement affected his substantial rights and the outcome of the trial. *See Logan*, 419 F.3d at 177.

### 2. Other Evidentiary Issues

### a. Alternative Suspect Evidence

During trial, the district court sustained objections to certain defense questions that sought to develop a theory that the FBI had failed to adequately investigate the

11

Bonanno Family for its potential role in the Meldish murder.  Londonio argues that the district court abused its discretion by limiting cross-examination and in denying the defense's motion to compel testimony from an FBI Special Agent about alternative suspects.

The district court did not abuse its discretion in concluding that the proffered evidence regarding other alleged suspects was not sufficiently connected to the Meldish murder and was inadmissible hearsay.  Further, the district court did not err in limiting the testimony of the FBI Special Agent after finding that the FBI thoroughly investigated the Meldish murder, including any Bonanno Family involvement, during the three years between the murder and the filing of charges against Londonio.  *See Wade v. Mantello*, 333 F.3d 51, 61–62 (2d Cir. 2003) (explaining that merely showing another's motive and opportunity to commit the charged crime does not necessarily establish admissibility; the defendant must also "show a nexus between the crime charged and the asserted alternative perpetrator" (internal quotation marks omitted)).

### b. Evidence of Crea's Involvement in Construction Rackets

At trial, the government introduced evidence of Crea's involvement in construction-related rackets from the late 1990s until 2008, primarily through the testimony of two witnesses.  The first witness, Sean Richard, who worked with Datello and Crea in the late 1990s until 2000, testified about working on Mafia-backed construction projects that used falsely inflated change orders.  He later cooperated with

state and federal authorities, which led to labor and racketeering charges against Datello and Crea. The second witness, Peter Palmisano, who worked as a project manager on one of Crea's large construction contracts in the Bronx from 2008 to 2014, testified about the intimidation he endured when he raised concerns about false invoices submitted on that project. Crea objects to the introduction of that evidence as prejudicial and improper propensity evidence.

The testimony about Crea's involvement in construction rackets was both relevant and admissible. Palmisano's testimony about vandalism, break-ins, and other acts was admitted as circumstantial evidence that the campaign of intimidation was designed to protect the contractor and ensure the flow of fraudulent proceeds to the Lucchese Family. Richard's testimony about the pre-2000 contracts was admitted as background information to explain the Lucchese Family's long-time control of the construction industry and Crea's influence over that business. Additionally, the district court provided clear limiting instructions[5] that sufficed to prevent any unfair prejudice arising from that challenged evidence. *See United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

---

[5] The limiting instruction relating to Richard's testimony was one requested by Crea and described by his counsel as "perfect." Supp. App'x at 997–98.

### C.  Pre-Trial Motion for Inspection of Grand Jury Minutes

Crea argues that the district court erred in denying his motion to dismiss an earlier indictment or inspect the grand jury minutes that resulted in that indictment claiming that, because the government made misrepresentations during bail hearings, those same misrepresentations must have been made to the grand jury.  After carefully reviewing each of the alleged misrepresentations, the district court concluded that any errors by the government at the bail hearings were not intentional and cautioned the government not to make the same mistakes when it presented the case to a new grand jury.  Because the government sought a new indictment before a new grand jury, the district court denied the request to dismiss the prior indictment with prejudice or to review the grand jury minutes.

We review the denial of a motion to dismiss an indictment for prosecutorial misconduct *de novo*, while deferring to a district court's factual findings unless clearly erroneous.  *See United States v. Walters*, 910 F.3d 11, 22 (2d Cir. 2018).  Whether an indictment should be dismissed with or without prejudice is reviewed for abuse of discretion.  *See United States v. Giambrone*, 920 F.2d 176, 181 (2d Cir. 1990).  Finally, we review a district court's decision whether to inspect grand jury minutes for abuse of discretion.  *See Lawyers' Comm. for 9/11 Inquiry, Inc. v. Garland*, 43 F.4th 276, 285 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 573 (2023).

Because Crea was convicted after a jury trial, his claim that an earlier indictment against him should have been dismissed based on errors in the grand jury process is moot. *See United States v. Mechanik*, 475 U.S. 66, 72–73 (1986). Although Crea argues that "the circumstances here fall outside the rule announced in [*Mechanik*]," Crea Br. at 13, he does not offer any explanation for why that is so. As the Supreme Court noted, "isolated exceptions" to *Mechanik's* harmless-error rule apply where the "structural protections of the grand jury" are compromised by ills such as racial or gender discrimination in selecting grand jurors. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256–57 (1988). But attacks on the presentation of evidence to the grand jury are not exempt from the harmless-error rule. *See id*. Therefore, if any error was made by the district court in failing to inspect the grand jury minutes, we hold that such error was harmless.

### D. Jury Instructions

Madonna and Crea argue that the district court erroneously instructed the jury that it could find them guilty on a *Pinkerton* theory of liability with respect to the Meldish murder charged in Count Three and the use of a firearm resulting in death charged in Count Seven. *See Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946). The *Pinkerton* instruction "informs the jury that it may find a defendant guilty of a substantive offense that he did not personally commit if it was committed by a coconspirator in furtherance of the conspiracy, and if commission of that offense was a reasonably foreseeable

consequence of the conspiratorial agreement." *United States v. Gershman,* 31 F.4th 80, 99

(2d Cir. 2022) (internal quotation marks omitted), *cert denied*, 143 S. Ct. 816 (2023).

We review a preserved challenge to a jury instruction *de novo,* and we will reverse

only if we identify "both error and ensuing prejudice."  *United States v. Sabhnani*, 599 F.3d

215, 237 (2d Cir. 2010) (quoting *United States v. Quinones*, 511 F.3d 289, 313 (2d Cir. 2007)).

Where a challenge is unpreserved, we review only for plain error.  *See United States v.

Nouri*, 711 F.3d 129, 138 (2d Cir. 2013).

We have reviewed the district court's *Pinkerton* instruction and find no error, plain

or otherwise.  There was ample evidence to support the government's theory that

Madonna and Crea shared membership in a RICO conspiracy that condoned acts of

murder with Londonio and Caldwell, the perpetrators of the Meldish murder.  The

district court correctly instructed the jury that to convict a Defendant of the Meldish

murder on a *Pinkerton* theory, it needed to find, among other things, that the Defendant

and the person or persons who actually committed the crime were members of a

conspiracy at the time of the killing, "that the substantive crime was committed pursuant

to the common plan and understanding [the jury] found to exist among the co-

conspirators," and "that the defendant could reasonably have foreseen that the

substantive crime [the jury was] considering might be committed by his co-conspirators."

J. App'x at 1509–10.  Because the record here supports the district court's issuance of the

instruction which clearly conveyed the concept of reasonable foreseeability that *Pinkerton* requires, there was no error.

### E.  Defendants' Rule 33 Motion for a New Trial

Defendants argue that the district court erred in denying their motion for new trial based on certain post-trial disclosures relating to two of the government's witnesses. After the trial, a cooperating witness, John Pennisi, participated in dozens of podcasts where he discussed his association with and activities in organized crime as a "made" member of the Lucchese Family.  The government also disclosed a disc it had obtained, after the trial, from the Metropolitan Detention Center in Brooklyn containing recordings of a cooperating witness, Evangelista's, calls from prison.  Defendants claim this evidence undermines the government's theory that the Meldish murder was committed by the Lucchese Family or required Madonna and Crea's approval and could have been used to impeach those witnesses.[6]  We review the district court's denial of a Rule 33 motion for a new trial for abuse of discretion and the factual findings in support of its ruling for clear error.  *See, e.g., United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009).

---

[6] Separately, Londonio seeks a new trial based on claims of prosecutorial misconduct. After a thorough review of the record, we conclude that any alleged misconduct in the prosecutor's statements was cured by the instructions of the district court.  *See United States v. Millar*, 79 F.3d 338, 343 (2d Cir. 1996) (finding that the district court's "instructions to the jury to disregard the prosecutor's comments were sufficiently curative to eliminate any possible prejudice").

The post-trial disclosures do not warrant a new trial because they do not undermine the government's theory of the case that the Meldish murder was sanctioned by the Lucchese Family.  The jury heard and rejected the defense's theories that murders within La Cosa Nostra are not always orchestrated by the boss (so-called "sneak murders"), and that the Bonanno Family was responsible for the Meldish murder. Further, both witnesses were subject to extensive cross-examination, and any further impeachment based on information disclosed post-trial would have been cumulative.  *See United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or is subject to extensive attack by reason of other evidence, the undisclosed evidence may properly be viewed as cumulative, and hence not material, and not worthy of a new trial.").  There is no "reasonable probability" that the outcome of Defendants' trial would have been different had the post-trial disclosures come to light before trial.  *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 146 (2d Cir. 2008).  For those reasons, we do not find that any of the purported new evidence warrants a new trial under Rule 33.[7]

---

[7] The district court correctly concluded there was no *Brady* violation with respect to either the podcasts created post-trial or the recorded prison calls which were not in the government's possession at the time of trial.  *See Brady v. Maryland*, 373 U.S. 83 (1963).

### F. Sentencing Challenges

Madonna, Crea, and Londonio each raise sentencing challenges.

#### 1. Madonna's Sentencing Challenge

Madonna argues that his sentence should be vacated and remanded for re-sentencing because the mandatory sentence for Count Three, life without parole, violates the Eighth Amendment's prohibition on cruel and unusual punishment due to his age and deteriorating neurological condition.  However, as Madonna concedes in his brief, binding precedent forecloses this argument.  *See Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) ("Petitioner asks us to extend this so-called individualized capital-sentencing doctrine to an individualized mandatory life in prison without parole sentencing doctrine.  We refuse to do so." (internal quotation marks and citation omitted)).  His argument therefore fails.

#### 2. Crea's Sentencing Challenge

Crea argues that the district court erred in sentencing him to life imprisonment on Count One because the jury did not find that he participated in a pattern of racketeering activity that included acts of murder.  The enhanced-penalty provision of Section 1963(a) does "not require proof that the murder that was among the objects of the conspiracy actually came to fruition in order for the maximum penalty to apply."  *United States v. Capers*, 20 F.4th 105, 120 n.11 (2d Cir. 2021).  The verdict form as to Count One included a special interrogatory, which the jury found, that asked the jury to determine whether "the

pattern of racketeering activity that Defendant Steven Crea agreed would be committed include[d] acts involving murder, including attempted murder, conspiracy to murder, or aiding and abetting murder." Supp. App'x 700. That finding was sufficient to trigger the enhanced-penalty provision. Even if the district court erred, the error did not affect Crea's substantial rights due to the life sentences imposed on Counts Three and Seven. *See United States v. Jackson*, 658 F.3d 145, 153 (2d Cir. 2011) (concluding that any error in imposing a 384 months sentence was harmless because the sentence ran concurrently with two sentences of 540 months).

### 3. Londonio's Sentencing Challenges

Londonio challenges the imposition of a consecutive life sentence for his Section 924(j) conviction on Count Seven.[8] At the time of the sentencing, this Court's precedent required a sentence for a Section 924(j) conviction to run consecutively to the sentence imposed on any other count of conviction. *See United States v. Barrett*, 937 F.3d 126, 129 n.2 (2d Cir. 2019). After Defendants' sentencing, however, the Supreme Court abrogated *Barrett* and held that Section 924(j) sentences need not run consecutively. *See Lora v. United States*, 599 U.S. 453, 464 (2023). Because Londonio did not object to the imposition

---

[8] Londonio also argues that his conviction on Count Seven must be vacated because it is predicated on an offense—murder in aid of racketeering activity—that is not a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). That argument is foreclosed by *Stone v. United States*, 37 F.4th 825, 832–33 (2d Cir.), *cert. denied*, 143 S. Ct. 396 (2022). In *Stone*, we held that murder in aid of racketeering based on a completed violation of N.Y. Penal Law § 125.25(1) is categorically a crime of violence. *See id.*; *United States v. Laurent*, 33 F.4th 63, 89 (2d Cir. 2022) (same). Londonio's argument therefore fails.

of a consecutive term on Count Seven before the district court, this Court's review is for plain error. *See Marcus*, 560 U.S. at 262. Londonio claims that because the district court imposed concurrent sentences on all other counts, it must have understood that it did not have the discretion to impose a concurrent sentence and, as such, the sentence is erroneous.

Even assuming the imposition of the consecutive life sentence was erroneous, that error does not meet the plain error standard and is harmless. Londonio was also sentenced to two additional concurrent life sentences on Counts One and Three, and so the imposition of an additional consecutive life sentence does not affect any of his substantial rights, thereby foreclosing a plain error challenge. *See, e.g., United States v. Vernace*, 811 F.3d 609, 620 (2d Cir. 2016); *see generally Kassir v. United States*, 3 F.4th 556, 561-64 (2d Cir. 2021) (discussing concurrent sentence doctrine).

We have considered Defendants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

21