Application for Compassionate Release (Steven L. Crea (48635-066))

| | |
|---|---|
| From: | Anthony DiPietro (dipietrolaw@yahoo.com) |
| To: | bux-execassistant-s@bop.gov |
| Cc: | hendonbgb@gmail.com; creadefense@aol.com |
| Date: | Tuesday, January 14, 2025 at 09:02 AM EST |

Good morning:

Please find attached an application for compassionate release on behalf of our client, Steven L. Crea (48635-066), who suffers from a terminal illness (stage IV lung cancer). The attached application should be forwarded to Warden Scarantino for his review and decision. A hard copy will also be mailed to the Office of the Warden at your facility.

Your time and assistance are appreciated. Thank you.

Anthony DiPietro, Esq.
15 Chester Avenue
White Plains, NY 10601
Tel: (914)-948-3242
Fax: (914)-948-5372
www.anthonydipietro.com

Attorney-Client Communication: This email contains legally privileged and confidential information intended only for the individual or entity named in the message. If you received this communication in error, please notify us by replying to this email and deleting the original message.



Steven L. Crea 48635-066, Request for Compassionate Release (filed 1.14.25).pdf
140.3 KB

# THE LAW OFFICES OF
## ANTHONY DIPIETRO, P.C.

**15 CHESTER AVENUE**  (914) 948 3242
**WHITE PLAINS, NY 10601**  (914) 948 5372 FAX
DIPIETROLAW@YAHOO.COM

January 14, 2025

**By Mail/Email**
Warden Thomas Scarantino
FMC Butner
P.O. Box 1600
Butner, NC 27509
BUX-ExecAssistant-S@bop.gov

> Re: *Request for Compassionate Release*
>     Steven L. Crea, Reg. No. 48635-066

Dear Warden Scarantino:

We respectfully submit this letter on behalf of our client, Steven L. Crea, Reg. No. 48635-066, requesting Mr. Crea's immediate compassionate release under 18 U.S.C. § 3582(c)(1)(A) and Bureau of Prisons (BOP) Policy Statement 5050.50, due to his diagnosis of stage IV lung cancer, which constitutes a terminal illness. *See* 18 U.S.C.S. § 3582(d)(2)(A)(iv) ("The Bureau of Prisons shall…in the case of a defendant diagnosed with a terminal illness…not later than 14 days of receipt of a request for a sentence reduction submitted on the defendant's behalf by the defendant or the defendant's attorney, partner, or family member, process the request"); 18 U.S.C.S. § 3582(d)(1) ("In this subsection, the term 'terminal illness' means a disease or condition with an end-of-life trajectory."); BOP PS 5050.50 § 3(a) ("RIS consideration may be given to inmates who have been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen (18) months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1).").

Mr. Crea has been in Bureau of Prisons custody since his arrest in 2017, is 77 years old, and has been diagnosed with terminal Stage IV lung cancer, thus presenting exceptional circumstances under which compassionate release should be granted. Additionally, Mr. Crea poses no danger to the community and has a release plan for his end-of-life care. If

released, Mr. Crea would remain at his family home, under the care of his wife, Diane Crea, and grown children, all of whom are not just ready and willing, but also fully capable to care for him upon his release, as well as make arrangements for whatever professional care is needed.

Regrettably, after Mr. Crea collapsed in his cell at USP Canaan in September 2023, 16 months ago, he was diagnosed with Stage Four lung cancer, an incurable terminal disease with an end-of-life trajectory and a life expectancy of eighteen (18) months or less, even with the administration of immunotherapy and radiation treatment to manage the effects of his illness to the extent possible. *See* BOP Clinical Encounter Report (3.7.24). Soon thereafter, Mr. Crea was transferred in February 2024, to FMC Butner North Carolina, a designated Federal Medical Facility. The urgency of his situation cannot be overstated.

Unfortunately, in the 16 months since Mr. Crea's terminal diagnosis in September 2023, his condition has only worsened to the point at which the prospect of receiving end-of-life treatment in confinement would be inhumane. As of this date, Mr. Crea has already been rushed to local hospitals on several occasions due to his worsening medical condition. On at least one occasion, emergency medical care was needed to resuscitate Mr. Crea. *See* Clinical Progress Report (11.6.23) (documenting that Mr. Crea "was originally sent to the hospital after he was found on the floor in his jail cell. He was found to have atrial fibrillation and RVR. Patient was resuscitated and admitted to the ICU"). On several other occasions, outside medical attention was sought by Mr. Crea when he was suffering from pain and in need of immediate care. The inhumanity of keeping him in confinement under these circumstances is undeniable.

Recently, Mr. Crea spent more than two weeks in a local hospital in North Carolina after he had again collapsed in BOP custody and appeared to have been suffering from seizures. The impact of his condition on his daily life is profound. It was diagnosed that Mr. Crea had further developed an Undifferentiated Neoplasm of the Jejunum (a malignant mass in the small intestines) and Nephrotic Syndrome, causing complications of worsening anemia and leukocytosis. *See* BOP Clinical Encounter Report (11.04.24) ("77 y.o. male with a history of non-small cell lung cancer treated with Keytruda who was sent to outside hospital due to worsening anemia, leukocytosis, and also nephrotic range proteinuria. Pt's source of anemia was a small bowel mass in the jejunum….Underwent

biopsy of jejunum mass 10/18 with high grade malignant neoplasm and ultimately underwent ex lap with resection of mass and small bowel on 10/25."); BOP Clinical Encounter Report (11.07.24) ("Subjective: 77 y.o. male with history of non-small cell lung cancer, recent hospitalization due to anemia, leukocytosis, proteinuria and noted to have a jejunal mass (malignant s/p resection, who put in a sick call asking questions about his current medication and also ongoing leg swelling, foamy urine.").

As a result of these serious incidents, both blood transfusions and surgical intervention were administered by the hospital physicians on an emergency basis, and all immunotherapy treatments for Mr. Crea's lung cancer were ordered to be put on hold until further notice. In addition, Mr. Crea's scheduled surgery to repair his hernia, which has caused Mr. Crea great pain and discomfort in addition to his dealing with the adverse effects of terminal cancer, was also ordered to be put on hold until 2025, when further determinations can be made by treating physicians as to when such a procedure may be safe to proceed forward. *See* BOP Clinical Encounter Report (11.04.24) ("77 yo male w/hx of Non-small cell Lung Cancer, recently diagnosed small bowel tumor s/p resection with path pending, who just returned from the hospital and is known to have large left inguinal hernia needs surgical intervention. It was previously approved and pt. was scheduled for surgery but due to ongoing issues with anemia, leukocytosis, proteinuria it was cancelled. New consult placed for surgical intervention but notified by URC that consult needs to be changed to routine instead of urgent as per policy."). A PET scan has also been ordered to occur in January 2025 to further monitor the development of metastatic activity in Mr. Crea's intestine. *See* BOP PET History Questionnaire.

The newest medical emergencies leading to Mr. Crea's most recent hospital stays are alarming and strongly militate in favor of the BOP's act of granting compassionate release for Mr. Crea without further ado. *See United States v. Harris*, No. 00-CR-50-JPS, 2020 U.S. Dist. LEXIS 132321, at *4 (E.D. Wis. July 27, 2020) ("[T]he Sentencing Commission explicitly states that a defendant's terminal illness is an extraordinary and compelling reason. Not only does Defendant have a terminal illness with an "end of life trajectory," Defendant has the very first terminal illness mentioned by the Commission: metastatic cancer.") (citing U.S.S.G. § 1B1.13 cmt. n.1(A)(i)).

Indeed, the medical episode underlying his most recent hospital stays, as explained below, creates a serious medical and safety risk within a prison setting that is no longer tenable for the BOP to ignore:

> Regarding the syncope/seizure event: About a week ago, Mr. Crea was sitting outside and had an episode where his eyes rolled back and bystander said he was shaking. He does not remember this event, thinks he passed out and denies falling. Prior to this episode he was experiencing feeling hit and some diaphoresis as well as dizziness….After the episode he vomited.

*See* Consult Report by Surankanti, Sujani Ganga, MD (9.24.24).

Mr. Crea's condition will only continue to deteriorate, causing worsening collateral ailments, and require high medical attention that the BOP cannot realistically provide. By any measure, Mr. Crea's continued imprisonment, while he suffers from a multitude of serious medical conditions and undergoes treatment for terminal cancer and other serious medical ailments, is not humane. The BOP should provide Mr. Crea a death with dignity, which can only occur by granting his compassionate release to his loved ones. *United States v. Bari*, No. 17-CR-681 (VEC), 2024 U.S. Dist. LEXIS 8462, at *3-4 (S.D.N.Y. Jan. 16, 2024) ("Compassionate release recognizes that no criminal defendant is only the worst thing he has done in his life. Compassionate release recognizes that some defendants, even those who have committed terrible crimes, should be allowed to die with dignity surrounded by loved ones.").

The entire purpose of the BOP's authority to seek compassionate release is to do so in circumstances like Mr. Crea's, and the process is designed for the BOP to provide an evaluation of the inmate's current medical posture—not for it to pass independent judgment on the underlying offense conduct:

> Compassionate release theory draws from a fundamental belief, rooted in human dignity, that an inmate's altered and unfortunate circumstances may demand early release from incarceration. Compassionate release's legal justification asserts that impending death, sickness, extreme family responsibilities, or age have canceled a prisoner's debt to society, such that release, prior to the completion of the

> prisoner's sentence, is warranted. Its moral rationale demands that dying prisoners be deemed worthy of a dignified death, indispensable to the fabric of their families as sole caregivers, and/or worthy of experiencing their final living days unconfined by prison walls.

*United States v. Rogers*, No. 5:12-cr-29-Oc-28PRL, 2020 U.S. Dist. LEXIS 144002, at *6 (M.D. Fla. Aug. 11, 2020) (quoting Jalila Jefferson-Bullock, Consensus, Compassion, and Compromise? The First Step Act and Aging Out of Crime, 2019 WL 7766107, at *70, Federal Sentencing Reporter, Vol. 32, No. 2, December 2019 (footnotes omitted)).

Furthermore, the BOP must now realistically consider the heightened resources necessary to continue Mr. Crea's medical care. It is genuinely a wasteful pursuit for taxpayer monies and scarce government resources to continue to provide emergency and end-of-life care to Mr. Crea under these circumstances, especially when continuous cancer care, surgical intervention, and palliative care will be needed until Mr. Crea's death. Such can be provided at the expense of his family, who consents to such a course of action. Moreover, given the several medical emergencies that have already transpired in Mr. Crea's case, where Mr. Crea collapsed while in BOP custody, there are serious individualized safety concerns for his well-being and a heightened need for closer medical monitoring by BOP staff, who are already scarce in numbers and heavily burdened by other institutional concerns.

Given Mr. Crea's advanced age and the acute progression of this metastatic disease, there is also no realistic medical basis for recovery. Indeed, it is evident that Mr. Crea's medical condition will only continue to rapidly worsen and soon reach the point at which he will also be unable to perform basic daily activities and hygiene. *See United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 U.S. Dist. LEXIS 21292, 2020 WL 597393, at *5 (D. Conn. Feb. 7, 2020) (collecting cases emphasizing that compassionate release is appropriate for terminal illnesses and for individuals who could not care for themselves). In this regard, the significant financial, safety, and logistical considerations for the Bureau of Prisons when dealing with a terminally ill patient such as Mr. Crea strongly militate in favor of compassionate release. Accordingly, Mr.

Crea's compassionate release is warranted and necessary to provide humane end-of-life care. Such relief also alleviates the Bureau of Prisons from the high financial, legal, and personnel burden of unnecessarily providing such care here since Mr. Crea's family can undertake such responsibilities.

Finally, Mr. Crea, a lifelong resident of the New York City area, who has been married to his wife Diane for 57 years and raised four children with 14 grandchildren, poses no danger to the community, especially considering his advanced age and terminal illness. *United States v. Rice*, No. 83-CR-150 (LGS), 2020 U.S. Dist. LEXIS 139807, 2020 WL 4505813, at *4 (S.D.N.Y. Aug. 5, 2020) (granting compassionate release despite the defendant's conviction for "very serious crimes" as the defendant's "advanced age and serious health problems" made him "significantly less likely to recidivate"). Moreover, nothing in the evidence introduced at Mr. Crea's trial, the Presentence Investigation Report, or anywhere else suggests that Mr. Crea's release would present a current threat to the community's safety in 2025, particularly in light of his medical condition.

To be sure, Mr. Crea's conduct while imprisoned has also been exemplary, and there is no finding that he has engaged in breach of BOP rules or has engaged in criminal activity of any kind in the eight years since he has been in BOP custody. *See United States v. Perez Alvarado*, Case Nos. 16-cr-00940-BAS, 16-cr-02770-BAS, 17-cr-07017-BAS, 2020 U.S. Dist. LEXIS 159291, 2020 WL 5203386, at *2-3 (S.D. Cal. Sept. 1, 2020) (granting compassionate release where the defendant was diagnosed with stage four colon cancer, which was "likely to be a terminal diagnosis," and which made recidivism "unlikely"); *United States v. Winckler*, No. 13-318, 2020 U.S. Dist. LEXIS 59579, at *2-3 (W.D. Pa. Apr. 3, 2020) (finding that defendant's "age, cancer diagnosis and deteriorating physical condition make it unlikely that Defendant will reoffend" where defendant was 59 years old, had stage four thyroid cancer, and had life expectancy of less than a year).

Moreover, Mr. Crea's co-defendant Joseph Datello (14217-053), who was convicted of the grave offense of attempting to murder an informant, was, <u>on the application of Bureau of Prisons</u> granted compassionate release in 2023, after he was diagnosed with a debilitated medical condition. *United States v. Joseph Datello*, SDNY Dkt. No. 17-cr-00089 (CS), Doc. No. 1275 ("Here, although those factors fully support the

-6-

substantial sentence originally imposed, in the current context of Mr. Datello's debilitated medical condition, the Bureau of Prisons believes compassionate release is appropriate at this time").

Thus, there truly exists no legitimate basis for the Bureau of Prisons not to afford the same humane outcome of providing a compassionate release for Mr. Crea who is 77 years of age, suffers from a terminal disease and presents less of a danger to the community than his co-defendant. *See also see United States v. Coles*, No. 19 CR. 789 (PGG), 2023 WL 1865349, at *2 (S.D.N.Y. Feb. 9, 2023) ("BOP further reported to [the Government] that according to treatment providers, Coles' prognosis is extremely poor, with a life expectancy of five to six months and a 100 percent mortality rate within one year [b]ecause he is considered terminally ill with a poor prognosis, a life expectancy of less than 18 months, and an end-of-life trajectory"); *United States v. Kelley*, 464 F. Supp. 3d 1134, 1135, 1137 (N.D. Cal. 2020) (finding extraordinary and compelling reasons where defendant suffered from terminal prostate cancer with two-year life expectancy); *United States v. Winckler*, Criminal Action No. 13-318, 2020 U.S. Dist. LEXIS 59579, 2020 WL 1666652, at *2 (W.D. Pa. Apr. 3, 2020) (finding extraordinary and compelling circumstances where defendant was diagnosed with "stage-four metastatic thyroid cancer" and had life expectancy of less than twelve months); *United States v. Wong Chi Fai*, 93-CR-1340 (RJD), 2019 U.S. Dist. LEXIS 126774, 2019 WL 3428504, at *1, *3 (E.D.N.Y. July 30, 2019) (finding extraordinary and compelling circumstances where defendant suffered from "metastatic papillary thyroid cancer" with twelve-month life expectancy).

Because of these exceptional circumstances, and for the reasons discussed *supra*, we respectfully request that the BOP grant compassionate release so Mr. Crea can receive the process of a dignified death outside of prison, accompanied by his receipt of appropriate palliative care to be provided in the presence and with the comfort of his attending family.

Respectfully submitted,

*Anthony DiPietro*
Anthony DiPietro, Esq.
Brendan White, Esq.